ORIGINAL

U.S. D. STRICT COURT
PR...

Nov 13   8 15 AM '03

FILED

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

GERTRUDE BAYONNE,                :
      Ms. Bayonne,

                          :      **Civ. Action No.**
                                      **3:03CV0712(WWE)**

v.                               :

PITNEY BOWES, INC.,              :
             Defendant.      **NOVEMBER 12, 2003**
                     :

## PLAINTIFF'S MEMORANDUM OF LAW, NUNC PRO TUNC, IN OPPOSITION TO DEFENDANT'S OBJECTIONS TO FILE AN AMENDED COMPLAINT AND IN SUPPORT OF HER PROPOSED REVISED MOTION TO FILE A PROPOSED REVISED AMENDED COMPLAINT

Plaintiff Gertrude Bayonne ("Ms. Bayonne") files this memorandum of law, nun pro tunc, in opposition to the Defendant Pitney Bowes, Inc.'s Objection to Ms. Bayonne's Motion to file an Amended Complaint dated October 14, 2003. This memorandum of law also supports Ms. Bayonne's Proposed Revised Motion to Amend, filed on this date, and her proposed revised Amended Complaint. The Proposed Revised Amended Complaint seeks to add two additional claims for retaliation under state and federal law, and to cure defects in the previously proposed amended complaint. Plaintiff's proposed revised Amended Complaint does not amend Count One, which is the subject of Defendant's motion to dismiss pending before this Court.

## I.  PRELIMINARY STATEMENT

As far back as the fall of 2002, the Defendant Pitney Bowes took the risk that it could deny Ms. Bayonne short-term disability benefits and terminate her employment

without resistance. With $4.4 billion in revenues in 2002, the Defendant thought it could easily evade any liability to this $13.50 hourly cafeteria employee Ms. Bayonne, when it denied her short and long term disability benefits and further retaliated against her. What the Defendant did not expect was that this $13.50 hourly cafeteria employee would: 1) file a dual charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and Connecticut Commission on Human Rights & Opportunities ("CHRO") to protest the denial of her short term disability benefits, 2) file a claim for long term disability benefits, 3) file suit under the Americans With Disabilities Act ("ADA") for retaliation, 4) file a comprehensive ERISA ("Employee Retirement Income Security Act") Appeal of the denial of such short and long term disability benefits, 5) respond to a motion to dismiss, 6) file a motion to amend the complaint to include her new ERISA claims, 7) file a second charge of discrimination alleging retaliation, and 8) file a revised motion to amend the complaint asserting two additional claims for retaliation under the ADA and Connecticut's Fair Employment Practices Act ("FEPA"). The Ms. Bayonne has effectively established that the limited risk determined by the Defendant was grossly overstated. The Defendant is now being called upon to answer for its unlawful actions before this Court, exactly what the Defendant clearly wants to avoid.

Based on the following arguments in response to the Defendant's objections and legal maneuvering, the Court should overrule the objections and permit Ms. Bayonne to file her proposed revised Amend Complaint to include her ERISA claims and two additional retaliation claims. The proposed revised Amended Complaint seeks to add the Pitney Bowes, Inc. LTD Plan, the Pitney Bowes LTD Plan Administrator, the Pitney

Bowes LTD Plan Benefits Committee and the Pitney Bowes LTD Plan Disability Department as proper defendants in this action.

**II.    STATEMENT OF FACTS**

On November 22, 2002, the Defendant denied Ms. Bayonne's short-term disability benefits. (See Exhibit A attached herein) The medical evidence provided by Ms. Bayonne to the Defendant was used to support both her short and long term disability benefits.  In fact, the Defendant considered the same evidence to deny the long term disability benefits.

On November 27, 2002, Ms. Bayonne filed her initial charge of discrimination with the EEOC and CHRO, alleging retaliation pursuant to the ADA and FEPA.

On November 27, 2002, Ms. Bayonne filed a formal application for long term disability benefits with the Pitney Bowes LTD Plan.

On December 16, 2002, the Defendant, through its Plan Administrator, issued a denial of her application for long-term disability benefits. (Exhibit A attached herein) The denial was allegedly based upon a finding of symptom magnification resulting from a functional capacity examination.  The explanation for denial of the short and long term disability benefits were the same.  The Pitney Bowes employees, and physician consultants, were the same under both claims.  The LTD denial occurred within 19 days of Ms. Bayonne's dual charge of discrimination and application for LTD benefits.

On January 16, 2003, the EEOC issued a notice of right to sue, which was received on January 21, 2003.   However, the CHRO could not issue a release to sue for 210 days from the date the charge was filed, pursuant to state statute.

On April 21, 2003, Ms. Bayonne commenced the instant action alleging retaliation pursuant to the ADA, and a pendent claim since withdrawn.

On June 11, 2003, Ms. Bayonne filed her appeal of the December 16, 2002 denial of long term disability benefits, pursuant to ERISA. (Exhibit B attached herein, not including the appeal record)

On June 23, 2003, Defendant filed its' Motion to Dismiss the original complaint.

On June 25, 2003, the parties filed the initial 16(b) Scheduling Order, which was approved on June 26, 2003 [Doc.#9]. The Scheduling Order set the time for filing any amended complaint for June 30, 2003.  At this time, Ms. Bayonne had no knowledge that the Pitney Bowes LTD Plan would deny her ERISA Appeal, but believed in good faith that the original denial would be reversed.  Ms. Bayonne possessed no good faith knowledge that she should modify the June 30, 2003 deadline for amending the complaint.

On July 15, 2003, Ms. Bayonne filed a request for extension of time to respond to the Defendant's Motion to Dismiss, which was granted on August 18, 2003 [Doc.#10].

On July 22, 2003, the Defendant sent Ms. Bayonne a letter indicating that it was considering her ERISA Appeal on July 28, 2003.

On July 28, 2003, Defendant's corporation counsel, inclusive of counsel for Pitney Bowes LTD Plan, held a settlement conference with Ms. Bayonne's attorney to potentially resolve both the ADA and ERISA claims. The verbal settlement offer was made prior to the August 8, 2003 denial of Ms. Bayonne's ERISA Appeal, followed up with a written offer dated August 8, 2003.  Ms. Bayonne was asked to consider such settlement offer.  During the telephone conference, Ms. Bayonne's counsel notified

4

counsel for the Defendant of her intention to amend the original complaint asserting ERISA violations for the denial of benefits. Ms. Bayonne's counsel also indicated her intent to file a charge of discrimination with the EEOC alleging ADA retaliation. Ms. Bayonne's counsel requested the Defendant's consent to the motion to amend, which was unreasonably withheld. Prior to this date, the Defendant had fully reviewed and defended Ms. Bayonne's ERISA claims through the claims administration process and was made aware of the second retaliation charge filed with the EEOC and responded to the original CHRO charge of retaliation. Thus, the Defendant had full knowledge she could potentially bring a suit under such claims. The Defendant is not prejudiced by the new claims being asserted in the proposed amended complaint (now revised).

On August 8, 2003, the Defendant's Plan Administrator issued a written denial of the June 11, 2003 appeal. (Exhibit A attached herein) The denial letter provided the only objective proof and explanation for the denial of Ms. Bayonne's LTD benefits. At the time of the filing of the Scheduling Order in this case, Ms. Bayonne could not predict whether the Pitney Bowes LTD Plan would approve or deny her claim for benefits. Ms. Bayonne then spent the next month researching and preparing the ERISA claims and filing a second charge of discrimination with the EEOC, inclusive of a position statement and exhibits. Defendant was served with a copy of the charge and position statement, as certified, on September 22, 2003. Thus, it had notice of her additional claim of discrimination.

On August 12, 2003, Ms. Bayonne's counsel participated in a continued settlement discussion with the Defendant. Ms. Bayonne specifically indicated she was preparing and would be filing the Motion to Amend the complaint to include the ERISA

and ADA retaliation claims and made an unsuccessful attempt to obtain Defendant's consent.

On August 15, 2003, Ms. Bayonne's counsel participated in further settlement discussions with the Defendant's counsel, wherein the Defendant stated it would entertain a counter offer to resolve the case.

On August 18, 2003, Ms. Bayonne filed her Memorandum in Opposition to Defendants' Motion to Dismiss. Wherein, Ms. Bayonne provided specific notice that she would be filing an additional charge of discrimination against the Defendant for the denial of the long term disability benefits. Such charge was filed with the U.S. Equal Employment Opportunity Commission and the Connecticut Commission on Human Rights & Opportunities on September 22, 2003. Ms. Bayonne received a notice of right to sue[1] on September 29, 2003 (Exhibit C attached herein), and now moves in her proposed revised Motion to Amend to include the additional charge alleging retaliation pursuant to the ADA.

On August 20, 2003, the parties filed an amended 16(b) Scheduling Order with the Court, which was approved on August 25, 2003 [Doc.#12]. The parties did not change the June 30, 2003 deadline, nor did the Defendant raise this issue to the undersigned. Defendant merely remained silent, hoping Ms. Bayonne would not modify the June 30, 2003 date. During this time, Ms. Bayonne's counsel was researching and preparing the Amended Complaint, inclusive of the ERISA claims now in dispute. Ms. Bayonne's counsel was also preparing an additional charge of discrimination and position

---

[1] Ms. Bayonne has 90 days from the issuance of an EEOC Right to Sue to file a complaint, otherwise she waives the opportunity to litigation her second retaliation claim.

statement to be filed with the EEOC. Clearly, Ms. Bayonne was taking expedient steps to bring her additional claims into this litigation.

On October 23, 2003, Ms. Bayonne received a Release to Sue[2] (Exhibit C attached herein) from the CHRO regarding her original charge dated January 21, 2003 and directly related to Count One of the Original Complaint. Ms. Bayonne was required to await the expiration of 210 days before the CHRO would issue a Release to Sue, which constitutes no ground for delay on her part.

### III.   DEFENDANT'S OBJECTIONS THAT MS. BAYONNE'S MOTION TO AMEND SHOULD BE DENIED BECAUSE IT IS UNTIMELY, PREJUDICIAL AND FILED IN BAD FAITH LACK MERIT AND SHOULD BE OVERRULED

The Defendant has objected to Ms. Bayonne's Motion to Amend on the following grounds, 1) untimely, 2) prejudicial and 3) bad faith. In piercing the legal arguments asserted by the Defendant, the Court must quickly realize the Defendant seeks to avoid and eliminate, through legal technicalities, Ms. Bayonne's legitimate attempt to appeal the unlawful denial of her ERISA Long Term Disability Benefits claim. Under ERISA, Ms. Bayonne was required to exhaust her administrative remedies with the Pitney Bowes LTD Plan. She filed an ERISA Appeal Memorandum on June 11, 2003, (Exhibit B herein attached) which placed the Defendant and the Pitney Bowes LTD Plan/Administrator on notice of her ERISA claims. The Pitney Bowes LTD Plan Administrator (Employee Benefits Committee) and Disability Department reviewed the submission, examined their legal liability and denied the Ms. Bayonne's Appeal on August 8, 2003. (Exhibit A attached herein) The Court must balance F.R.C.P. 16(b)

---

[2] Ms. Bayonne has 90 days to file a complaint for retaliation pursuant to Connecticut's Fair Employment Practices Act (FEPA), otherwise she waives the opportunity to do so.

against Ms. Bayonne's ERISA rights to present her Appeal to a federal court after exhausting the administrative requirements mandated by ERISA. In so balancing such interests, the Court must respectfully grant Ms. Bayonne's Motion to Amend (now revised) and overrule Defendant's objections.

1.    **Defendant's Objection that Amendment is Untimely Must be Overruled**.

Defendant's objection that Ms. Bayonne's Proposed Amended Complaint (now revised) is untimely must be overruled for the following reasons.

First, the Defendant relies upon an unpublished Second Circuit decision of <u>Lowry v. Eastman Kodak Co.</u>, 14 Fed. Appx. 27 (2d Cir. 2001), and failed to provide a copy of such decision to the Ms. Bayonne and the Court. (Courtesy Copy Attached as Exhibit D herein). Defendant cannot rely upon the unpublished decision as precedential authority in this case. For this reason alone, Defendant's first objection must be overruled.

Second, Defendant asserts a technical argument that Ms. Bayonne "made absolutely no attempt to comply with Rule 16(b). The Motion to Amend does not provide the court with any basis from which it could conclude that 'good cause' exists to support the proposed amendment." Memorandum in Support of Defendants' Objections, at p. 5.

Local Civil Rule 11(b)(2) provides "[t]he good cause standard requires a particularized showing that the schedule cannot reasonably be met, despite the diligence of the party seeking the modification, for reasons that were not reasonably foreseeable when the parties submitted their proposed case management plan." [3] Ms. Bayonne now

---

[3] Local Civil Rule 11(b)(2) also states that the rule requiring scheduling orders is not applicable to among other things "appeals from decisions of administrative agencies, including social security disability appeals." Ms. Bayonne asserts that an ERISA appeal to the district court can viewed to fall within this exception. Under ERISA, claimants do not file claims with the U.S. Dept. of Labor but with the Plan

provides a "particularized showing" of good cause, in addition to the motion now in dispute.

Fed.R.Civ.P. 16(b) "provides, however, that in certain cases the court may determine that '[the deadline] cannot reasonably be met despite the diligence of the party seeking the extension.' Id. In such cases, where the moving party has demonstrated good cause, the court may grant leave to amend the scheduling order to extend the deadline." Parker v. Columbia Pictures Industries, 204 F.3d 326, 340 (2d Cir. 2000) (citing Fed.R.Civ.P. 16 advisory committee's note (1983 amendment, discussion of subsection (b)). Wright, Miller & Kane, Federal Practice and Procedure § 1522.1 at 231 (2d ed.1990) (good cause means scheduling deadlines cannot be met despite party's diligence). "Good cause requires the party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension. . . .[t]he inquiry focuses on the moving party's reason for requesting the extension. . .[e]vents occurring after the entry of a scheduling order which were reasonably unforeseeable may suffice to establish good cause." Oxaal v. Internet Pictures Corp., 2002 WL 485704, *1 (March 27, 2002, N.D.N.Y.) (internal citations omitted).  See, e.g., Deghand v. Wal-Mart Stores, Inc., 904 F.Supp. 1218, 1220-21 (D.Kan.1995) (discovery of ground for additional cause of action ten weeks after deadline had passed for amendment of pleadings established good cause for extension); Robinson v. Town of Colonie, 1993 WL 191166, at *3 (good cause to extend deadline to amend pleadings found one year after deadline had passed where party learned of basis for amendment during discovery); Hazeldine v Beverage Media, Ltd. (S.D.N.Y. 1997) 954 F Supp 697,

Administrator.  The Plan Administrator can reasonably be viewed as the "administrative agency" under Local Rule 11(b)(2).  Following this reasonable interpretation, no scheduling order, inclusive of time limitations for amending the pleadings, is required under ERISA cases appeal to the district court.

22 ADD 1033 (Six-month delay after employee discovered that her boss owned her

employer did not warrant denial of leave to amend discrimination complaint to add

individual claims against boss, absent bad faith or prejudice.)

Ms. Bayonne **can establish "good cause"** for granting the Revised Motion to

Amend in order to bring in the ERISA claims and the second ADA and FEPA retaliation

claims.

In Ms. Bayonne's Motion to Amend the original complaint, she specifically stated

the following:

> [Employee Retirement Income Security Act (ERISA) Violations] Ms. Bayonne
> asserts that the Defendant violated ERISA by denying her disability benefits. She
> has exhausted all administrative remedies and now amends her original complaint
> to assert the ERISA violations for breach of fiduciary duties, wrongful denial of
> disability benefits, failure to provide pertinent documents and retaliation.

(Ms. Bayonne's Motion to Amend, dated September 17, 2003, Attached as Exhibit E).

Ms. Bayonne did in fact establish good cause for granting the instant motion, contrary to

the Defendant's myopic view of the federal rules.

Prior to the June 25, 2003 Scheduling Order, Ms. Bayonne possessed no good

faith belief that she would be amending her complaint to include the ERISA claims and

the second ADA retaliation claim. The Pitney Bowes LTD Plan gave no notice to Ms.

Bayonne that her ERISA Appeal would be denied or that the denial was in direct

retaliation for filing the first charge of discrimination and the instant lawsuit.  However,

the Ms. Bayonne was aware the CHRO would eventually come to a resolution on her

original state retaliation charge filed on January 21, 2003, but she could not foresee

whether a Release to Sue would be issue.

On August 8, 2003, the Pitney Bowes LTD Plan denied her claim for a second time. As to the time period prior to the August 20, 2003 Scheduling Order, Ms. Bayonne was participating in settlement discussions with the Defendant and preparing the Amended Complaint and second EEOC charge alleging retaliation under the ADA. Ms. Bayonne admits that she could have requested a modification to the June 30, 2003 deadline to amend her complaint, but failed to do so in good faith. Ms. Bayonne should have listed all the active administrative claims and devised a pleading deadline that encompassed the October 22, 2003 CHRO Release to Sue. An approximate four month extension of the June 30, 2003 deadline. Logically, Ms. Bayonne still could not forsee the October 22, 2003 Release to Sue.

As of June 30, 2003, Ms. Bayonne was unaware she would be filing her ERISA and ADA retaliation claims, because the "transaction or occurrence" had not yet existed before the August 8, 2003 denial of her ERISA Appeal. The Defendant is in no way prejudiced by this nondilatory inaction on the part of Ms. Bayonne, especially when the Defendant has been provided sufficient notice of the claims and defended the same during the administrative exhaustion phase of each claim.

Prior to the August 20, 2003, Ms. Bayonne had a requested the Defendant's consent to the instant Motion to Amend, which was objected to unreasonably. The Defendant remained silent on the issue of modifying the June 30, 2003 Scheduling Order. Defendant merely sent a facsimile copy of the Amended Scheduling Order modifying the dates for the submission of joint trial memoranda and trial readiness.

Defendant now uses this non-dilatory misstep on the part of Ms. Bayonne's counsel and their own silence, to move to eliminate Ms. Bayonne's ERISA claims

entirely. "Pleading is no longer a 'game of skill in which one misstep by counsel may be decisive to the outcome.' <u>Conley v. Gibson</u>, 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). It is now accepted that the purpose of pleading is 'to facilitate a proper decision on the merits.' Id." <u>Russell v. Northrop Grumman Corp.</u>, 921 F.Supp. 143, 148 (E.D.N.Y. March 29, 1996). Ms. Bayonne's original Motion to Amend was filed on September 17, 2003, less than one month after the date of the Amended Scheduling Order. This type of litigation antics evidences bad faith and should not be condoned by this Court. The balance of prejudice clearly weighs in favor of the Ms. Bayonne, because the Defendant should not be rewarded for its bad faith litigation tactics during this case and the ERISA Administrative Process.

Again, the Court's "inquiry focuses on the moving party's reason for requesting the extension. . .[e]vents occurring after the entry of a scheduling order which were reasonably unforeseeable may suffice to establish good cause." <u>Oxaal</u>, 2002 WL 485704, *1. In Ms. Bayonne's Revised Motion to Amend and Revised Amended Complaint, she now asserts two additional causes of action for retaliation pursuant to the ADA and FEPA. Under the two statutory schemes, Ms. Bayonne had no control over the foreseeable future as to when the two agencies would issue a Notice of Right to Sue and Release to Sue. However, when the EEOC and CHRO issued such releases, Ms. Bayonne had 90 days to file a complaint. Ms. Bayonne anticipates the Defendant will argue that she is also foreclosed from asserting these two additional claims because the June 30, 2003 deadline to amend the pleadings have past. The Defendant will again use Fed.R.Civ.P. 16(b) as a sword and shield to unfairly block these additional claims, similar to that asserted in the Defendant's present objections. The Advisory Committee

presumably never intended such a result. Ms. Bayonne concedes, as she must, that Fed.R.Civ.P. 16(b) was designed to offer a measure of certainty in pretrial proceedings that "the pleadings will be fixed." This policy of judicial economy must be balanced with the Congressional and Connecticut General Assembly's intent to provide a statutory remedy for aggrieved employees like the Ms. Bayonne, especially in the presence of good cause and in the absence of delay, bad faith and prejudice.

Even assuming that Ms. Bayonne had allegedly been dilatory in not amending the June 30, 2003 deadline in the August 20, 2003 Amended Scheduling Order, while entertaining a settlement offer and researching and preparing the Amended Complaint, that alone would not warrant denying the motion. Delay, absent bad faith or prejudice, is not a sufficient basis for denying leave to amend. See <u>Parker</u>, 204 F.3d 326, 339; <u>Block v. First Blood Associates</u>, 988 F.2d 344, 350 (2d Cir.1993); <u>Richardson Greenshields Securities, Inc. v. Lau</u>, 825 F.2d 647, 653 n. 6 (2d Cir.1987); <u>In re Horizon Cruises Litigation</u>, 101 F.Supp.2d 204, 215 (S.D.N.Y.2000). As will be discussed below, Defendant cannot establish bad faith or prejudice.

The Defendant's objection should be overruled and Ms. Bayonne should be allowed to assert her claims in the proposed revised Amended Complaint, inclusive of the ERISA, ADA and FEPA claims.

### 2. Defendant's Objection that Proposed Amendment Will Prejudice the Defendant Must be Overruled.

The Defendant's objection that it will be unfairly prejudiced is entirely baseless. Defendant asserts

> the addition of these [ERISA] claims would undoubtedly alter the nature and scope of this action, would greatly expand the amount of discovery needed and

would inevitably prolong the resolution of the pending case. Pitney Bowes should not now be forced to incur the additional expenses and invest the additional resources necessary to defend against the proposed claims given the pending Motion to Dismiss. . . The two claims [ERISA & ADA] are not compatible in the same action and will likely be bifurcated at the time of trial. Judicial economy will not be served by joining the two sets of claim(s).

(Memorandum in Support of Defendant's Objections, p.6).

The Defendant's objection based on expanding discovery is insufficient to deny Ms. Bayonne's Motion to Amend. "The adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading." United States v. Continental Illinois National Bank & Trust Co., 889 F.2d 1248, 1255 (2d Cir.1989) (citation omitted); see also A.V. by Versace, Inc. v. Gianni Versace S.p.A., 87 F.Supp.2d 281, 299 (S.D.N.Y.2000). In addition, discovery in the instant case has not even begun. Neither party has propounded discovery on the other. The majority if not all of the evidence supporting Ms. Bayonne's ERISA claims have been collected in the Administrative Record accompanying the June 11, 2003 ERISA Appeal.(Exhibit B attached herein)[4] A complete copy of which is in the possession of the Defendant, as served on June 11, 2003.

The Defendant's next argument is the addition of the ERISA claims will complicate the present proceedings in the following manner, 1) bifurcation of the case due to an ADA jury trial and an ERISA bench trial, and 2) increase the expenses for the Defendant. As to the later, Defendant and the Pitney Bowes LTD plan cannot legally avoid Ms. Bayonne's attempt to prosecute her ERISA claims. Whether the ERISA claims are added to the present case or brought separately, the Defendant and the Pitney Bowes LTD Plan will still be obligated to defend against the claims.

---

[4] Ms. Bayonne has already bate stamped the Administrative Record pp. 1-431.

14

As to the former argument, the ADA and ERISA claims are derived from the same nucleus of operative fact and apply similar law.  The ERISA denial of benefit claims and the ADA retaliation claims are all based on the same factual and medical evidence.  Ms. Bayonne's original ADA retaliation claim, the second ADA and FEPA retaliation claims, and the ERISA Section 510 claims are similar if not identical in their methods of legal proofs. "As was noted in <u>Saxholm AS v. Dynal, Inc.</u>, 938 F.Supp. 120 (S.D.N.Y.1996), 'since [Ms. Bayonne] has indicated its intention to initiate a second action if leave to amend be denied, and since such an action would involve most of the exact same facts, circumstances, and questions of law as this action, denying leave to amend would simply multiply proceedings in this court with no apparent benefit to the parties.' Id. at 124." <u>Topps Co., Inc. v. Cadbury Stani S.A.I.C.</u>, 2002 WL 31014833, *3 (Sept. 10, 2002, S.D.N.Y.)(holding that plaintiff established good cause to amend the complaint three years after the filing of the initial complaint). Denying Ms. Bayonne leave to amend her complaint to include the ERISA, ADA and FEPA retaliation claims would simply multiply these proceedings with no apparent benefits to the parties.

The Defendant's objection should be overruled and Ms. Bayonne should be allowed to assert her claims in the proposed revised Amended Complaint, inclusive of the ERISA, ADA and FEPA claims.

3.    **Defendant's Objection that Proposed Amendment is Pursued in Bad Faith Must be Overruled.**

It is entirely unclear what the Defendant is arguing when it asserted that Ms. Bayonne filed her Motion to Amend to include the ERISA claims to "forestall a ruling on a pending motion." The original complaint asserted a retaliation claim pursuant to the ADA. The proposed amended complaint seeks claims pursuant to ERISA for an unlawful denial of disability benefits. The Defendant offers no further information as how the Motion to Amend would forestall the pending motion to dismiss, it merely concludes that it would. Similarly, Ms. Bayonne's proposed revised Amended Complaint is also not asserted in bad faith, as discussed herein, and is not filed to forestall a ruling on a pending motion nor modify Count One of the original complaint. As to Defendant's pending motion to dismiss, the Court could conceivably deny the motion and permit the Ms. Bayonne to file the proposed revised Amended Complaint, pursuant to Fed.R.Civ.P. 12(b)(6).

Ms. Bayonne has previously explained herein why she filed her Motion to Amend the complaint a little over a month after the August 8, 2003 denial of her ERISA Appeal and under one month after the filing of the Amended Scheduling Order. Of course Ms. Bayonne had to file the Motion to Amend in order to begin the prosecution of her ERISA claims, as result of the August 8, 2003 denial of her ERISA Appeal. Does the Defendant not want her to bring such claims before this Court? Yes. But even through the Objections, the Defendant cannot forestall her ability to prosecute the ERISA claims in a separate action, although the Defendant has now attempted to do so. Ms. Bayonne could have easily filed an entirely new separate action against the proposed defendant Pitney

16

Bowes LTD Plan before this Court.  The new defendant would still spend resources to defend the litigation and conduct discovery.  What Ms. Bayonne did was to promote judicial economy by combining the two sets of claims against both defendants in one case.  The proposed revised Amended Complaint also seeks to bring in the Pitney Bowes LTD Plan Administrator (Employee Benefits Committee) and the Disability Department.  This makes sense because the original retaliation claim for denial of short term disability benefits, the ERISA LTD benefits denial claims, the Section 510 claim and the two additional retaliation claims under the ADA and FEPA, all arise from the same common nucleus of operative facts and occurrences. Where is the bad faith? Where's the evidence?  None of these exist and Defendant only offers self-serving conclusions to support the objection currently asserted.

Defendants objection on grounds of bad faith must be overruled for the aforementioned reasons.  Ms. Bayonne should be allowed to assert her claims in the proposed revised Amended Complaint, inclusive of the ERISA, ADA and FEPA claims.


## IV.   DEFENDANT'S OBJECTION THAT THE PROPOSED AMENDMENTS ALLEGING ERISA CLAIMS ARE FUTILE AND SUBJECT TO DISMISSAL MUST BE OVERRULED

The Defendant's objections seeks relief only permitted pursuant to a motion to dismiss under Fed.R.Civ.P. 12(b)(6). Based on the following arguments, Defendant's objections must be overruled. In the alternative and permitted by this Court, Ms. Bayonne respectfully requests permission to file her revised proposed Amended Complaint, attached as Exhibit A to her Revised Motion to Amend filed on this date.

In deciding a motion to dismiss, a court must accept as true the factual allegations

17

set forth in the Complaint and must draw all reasonable inferences in favor of the non-movant. Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232 (1984); Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683 (1974); Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir.1996); Marisol A. By Forbes v. Giuliani, 1996 WL 337209 (S.D.N.Y.1996); Presnick v. Santoro, 832 F.Supp.521(D.Conn.1993)("A court must determine whether the plaintiff has a valid claim under any possible theory upon which relief may be granted."); Northup v. Connecticut Commission on Human Rights & Opportunities, WL 3:97CV211(DJS)(D.Conn.1998); Steiner v. Shawmut Nat'l Corp., 776 F.Supp.1236, 1241 (D.Conn.1991). "On such a motion, the defendant bears the burden of persuasion. . .;" Allen v. WestPoint-Pepperell, Inc., 945 F2d 40, 44 (2d Cir.1994)l Cadelinia v. Hilton International, WL 95CV10393(S.D.N.Y.1996).

The Court, therefore, "may dismiss a complaint only if it is clear that no relief could be granted under set of facts that could be proved consistent with the allegations." Hishon, 467 U.S. at 73, 104 S.Ct. 2232; Conley, 355 U.S. 41.  Further, "a court must construe pleadings liberally, and mere vagueness or lack of detail does not constitute sufficient grounds for a motion to dismiss." Aristotle P. v. Johnson, 721 S.Supp. 1002, 1004 (N.D. Ill.1989). In civil rights actions, courts must apply this standard with even greater force. See Bernheim, 79 F.3d at 321; Aristotle P, 721 F.Supp. at 1004.

The motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted. See Afrons v. E.I. DuPont de Nemours & Co., 261 F.2d 434 (2d Cir.1958). Moreover, the courts are reluctant to dispose of the complaint on technical grounds in view of the policy of the federal rules to determine actions on their merits. Afrons, 261 F.2d 434; Nagler v. Admiral Corp., 248 F2d 319 (2d Cir.1957). Courts also

hesitate to dismiss because of the possible waste of judicial time if on appeal the dismissal is reversed and remanded. See <u>Cook v. Nichol, Inc. v. Plimsoll Club</u>, 451 F.2d 505(5th Cir.1971). A court should be especially reluctant to dismiss on the basis of the pleadings when the asserted theory of liability is novel or extreme, since it is important that new legal theories be explored and assayed in the light of actual facts rather than a pleader's supposition. See <u>Sherman v. St. Barnabas Hosp.</u>, 535 F.Supp.564, 572 (D.C.N.Y.1982).

**1.    Defendant's Objection that Proposed Count Two Alleging Breach of Fiduciary Duty for Failure to Pay Benefits is Not a Viable Claim Must be Overruled.**

The Defendant seeks to misconstrue Ms. Bayonne's claim as one of a breach of fiduciary duty claim instead, as pleaded, "a claim for benefits." Defendant even admits the same, "Although Ms. Bayonne labeled it as a claim for benefits, Ms. Bayonne pleads a breach of fiduciary duty claim for wrongful failure to pay benefits." (Defendant's Memorandum in Support of Objections, at p. 8). Defendant's sole purpose here is to mislead the Court as what Ms. Bayonne has "specifically" pled in her Amended Complaint.

"An amendment may be denied if it would be futile, and in order to determine whether a proposed amendment is futile, a court applies the same standard as it does in ruling on a motion to dismiss. See <u>Milanese v. Rust- Oleum Corp.</u>, 244 F.3d 104, 110 (2d Cir.2001); <u>Nettis v. Levitt</u>, 241 F.3d 186, 193 (2d Cir.2001); <u>Smith v. CPC International, Inc.</u>, 104 F.Supp.2d 272, 274 (S.D.N.Y.2000), aff'd, No. 01 Civ. 7381, 2002 WL 731774

(2d Cir. April 26, 2002)." <u>Rikhy v. AMC Computer Corp.</u>, 2002 WL 1424596, *2

(S.D.N.Y.).

Count Two specifically states,

ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), permits Ms. Bayonne, participant of a plan, to bring a civil action to recover benefits due to her under the terms of the plan, to enforce her rights under the terms of the plan, and/or to clarify her rights to future benefits under the terms of the plan.

Amended Complaint at ¶ 65, p. 20. In her proposed Amended Complaint, Ms.

Bayonne specifically and properly identifies the Pitney Bowes LTD Plan as the defendant

for which she files her ERISA causes of action. Ms. Bayonne successfully pleads a claim

for relief against the Pitney Bowes LTD Plan for denial of benefits, pursuant to

Fed.R.Civ.P. 12(b)(6). Id.

The Second Circuit recently ruled on this exact issue in <u>Chapman v. Choicecare</u>

<u>Long Island Term Disability Plan</u>, 288 F.3d 506, (2d Cir. April 29, 2002) (Courtesy Copy

Attached as Exhibit ___). In <u>Chapman</u>, the Court held:

ERISA expressly provides that a 'participant or beneficiary' may bring suit 'to recover benefits due. . .under the terms of [a] plan' or 'to enforce. . .rights under the terms of the plan.' 29 U.S.C. § 1132(a)(1)(B) (1994). It goes on to provide in 29 U.S.C. § 1132 (d)(1) that 'an employee benefit plan may sue or be sued under this subchapter as an entity,' and in subsection (d)(2) that 'any money judgment. . .against an employee benefit plan shall be enforceable only against the plan as an entity.' §§ 1132(d)(1) & (2). <u>These provisions of the statute make plain that a plan can be held liable in its own name for a money judgment. We see no reason why such a liability should not arise upon a beneficiary's claim of entitlement to receive benefits from the plan.</u>

Id. at 509. (Emphasis added). In her proposed and now revised Amended Complaint, Ms.

Bayonne has pled a claim of entitlement to receive benefits against the Pitney Bowes

LTD Plan.

In addressing the breach of fiduciary duty objection, Ms. Bayonne asserts she identified in good faith the Pitney Bowes LTD Plan as the administrator and fiduciary. Although not stated clearly, Ms. Bayonne identified in good faith the Pitney Bowes LTD Plan to include all appropriate fiduciaries that administer the Plan. Without waiving and preserving all rights to the same, Ms. Bayonne now submits a proposed revised Amended Complaint to include both the Employee Benefits Committee (Plan Administrator of the Pitney Bowes LTD Plan and fiduciary) and the Disability Department (an ERISA fiduciary) as additional named defendants. The revised complaint will specifically eliminate any reference to the Pitney Bowes LTD Plan as an ERISA fiduciary. The proposed revised Amended Complaint renders the Defendant's objection on this issue moot.

The Employee Benefits Committee and the Disability Department exercised apparent discretion to administer and interpret the Pitney Bowes LTD Plan, pursuant to ERISA § 3(21), 29 U.S.C. § 1002(21)(A).[5] The January 1, 1998 Pitney Bowes LTD Plan (attached as Exhibit B to Ms. Bayonne's Motion to Amend), reveals that the Pitney Bowes LTD Plan specified "The Employee Benefits Committee" as the Plan Administrator.  In addition, the Employee Benefits Committee "has delegated to the Disability Department the day-to-day, on-going administrative responsibilities of the Plan." (Exhibit B to Ms. Bayonne's Motion to Amend, Appeal Record p. 50). Ms.

---

[5] The Pitney Bowes LTD Plan, as amended on January 1, 1998, states that the Plan intends "that neither the Disability Department . . .shall have discretion such that individuals performing services in these Departments with respect to the Plan would be considered 'fiduciaries' with the meaning of Section (3)(21) of ERISA." Ms. Bayonne asserts that the Disability Department rendered the initial denial of her LTD application for benefits, based on the medical evidence submitted by her. The Disability Department employees maintained the apparent authority to communicate the terms of the plan to the Ms. Bayonne and actually rendered the decision to deny benefits. No where in the December 16, 2002 initial denial, does it state that the Benefits Committee made the denial determination. In fact, the letter was signed by an employee identifying herself as the "Plan Administrator."

Bayonne has attempted to cure any and all defects in the proposed revised Amended Complaint, to now include the Plan Administrator and the Disability Department as proposed additional named defendants.

As to Defendant's objection that Ms. Bayonne cannot maintain 29 U.S.C. § 1132(a)(1)(B) and (a)(3) claims simultaneously is deliberately misleading. Defendant's counsel failed to bring to this Court's attention a controlling Second Circuit decision, and asserts a false legal argument that can only be seen as asserted in bad faith. Due to this misrepresentation, the Defendant's objection must be overruled.

The Second Circuit recently held that <u>a participant can maintain an action grounded in both 502(a)(1)(B) and 502(a)(3)</u>:

> Finally, we disagree with Empire's contention that "there is no private action for breach of fiduciary duty under ERISA when another remedy is available under 29 U.S.C. § 1132." Appellee's Br. at 41. Ms. Bayonnes' cause of action for their breach of fiduciary duty claims arises from ERISA § 502(a)(3), which allows plan participants, beneficiaries or fiduciaries to bring a civil action "to enjoin any act or practice which violates any provision of this subchapter or terms of the plan, or ... obtain other appropriate equitable relief." 29 U.S.C. § 1132(a)(3). In <u>Varity Corp.</u>, the Supreme Court held that such claims alleging breach of fiduciary duty could be brought by individual Ms. Bayonnes because ERISA § 502(a)(3) "act [s] as a safety net, offering appropriate equitable relief for injuries caused by [ERISA] violations that § 502 does not elsewhere adequately remedy." <u>Varity Corp.</u>, 516 U.S. at 512, 116 S.Ct. 1065. The Supreme Court further noted that, given ERISA's requirement that fiduciaries act "solely in the interest of the participants and beneficiaries," 29 U.S.C. § 1104(a)(1), "it is hard to imagine why Congress would want to immunize breaches of fiduciary obligation that harm individuals by denying injured beneficiaries a remedy." Id. at 513, 116 S.Ct. 1065. We note that should Ms. Bayonnes' claim under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), to enforce their rights under the plan fail, Ms. Bayonnes' breach of fiduciary duty claim is their only remaining remedy. <u>Varity Corp.</u> clearly provides that, where a plan participant has no remedy under another section of ERISA, she can assert a claim for breach of fiduciary duty under § 502(a)(3). Id. at 515, 116 S.Ct. 1065 (noting that ERISA's purposes would be furthered by granting a remedy where no other remedy is available); see also <u>Strom</u>, 202 F.3d at 149 ("[<u>Varity Corp.</u>] evidences a clear intention to avoid construing ERISA in a manner that would leave beneficiaries ... without any remedy at all."). <u>Varity Corp.</u> further explained, however, that "where Congress

elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.' " Varity Corp., 516 U.S. at 515, 116 S.Ct. 1065 (emphasis added). The Supreme Court in Varity Corp. did not eliminate the possibility of a Ms. Bayonne successfully asserting a claim under both § 502(a)(1)(B), to enforce the terms of a plan, and § 502(a)(3) for breach of fiduciary duty; instead, the Court indicated that equitable relief under § 502(a)(3) would "normally" not be appropriate. Ultimately, we believe that the determination of "appropriate equitable relief" rests with the district court should Ms. Bayonnes succeed on both claims. This determination must be based on ERISA policy and the "special nature and purpose of employee benefit plans." Id. (internal quotation marks omitted). We therefore hold that Varity Corp. did not eliminate a private cause of action for breach of fiduciary duty when another potential remedy is available; instead, the district court's remedy is limited to such equitable relief as is considered appropriate.

Devlin v. Empire Blue Cross and Blue Shield, 274 F.3d 76, 89-90 (2d Cir. 2001).

The Devlin decision is controlling in this case and permits Ms. Bayonne to maintain both causes of action in the same case. Defendant's citation to Massachusetts Mutual Life Ins. Co. v. Russell, 473 U.S. 134 (1985) precedes the Varity and Devlin decisions, and thus has been abrogated to a large extent. The Massachusetts decision can also be differentiated because the plaintiff in that case sought "extracontractual damages" in the form of consequential and punitive damages. Ms. Bayonne never sought such damages in this case.

The Court respectfully must overrule Defendant's objection because Ms. Bayonne has stated a claim for which relief can be granted.

2.    **Defendant's Objection that Proposed Count Three Under ERISA Section 510 Fails to State a Claim Must be Overruled**

Defendant has filed an objection pursuant to Fed.R.Civ.P. 12(b)(6) supported by conclusory and baseless statements. Defendant's intent here is merely to confuse and misrepresent to this Court what Ms. Bayonne has "clearly" alleged in her Section 510

23

claim. More specifically, this objection like the others refuted herein were clearly designed to drive up Ms. Bayonne's expenses with needless motion practice. For the following reasons, the Defendant's objection must be overruled.

The Defendant ***conclusively*** argues that Ms. Bayonne's Section 510 claim is futile because: 1) Ms. Bayonne allegedly did not plead adverse employment actions "affecting the employer-employee relationship" (which she did); 2) Ms. Bayonne alleged failure to establish "specific intent" (which she did and discrimination can be proven by circumstantial evidence); 3) "none of the alleged adverse actions logically could have been taken for the intentional purpose of interfering with plaintiff's right to long-term disability benefits." (all of the actions taken together can logically be seen as intentional interference) and 4) Pitney Bowes did not make the decision to deny benefits. (yes they did, LTD denial based on actions by employer's Disability Department in the non-ERISA STD claim/denial) (Defendant's Memo. In Support of Objections at pp. 10-12).

Section 510 of ERISA, 29 U.S.C. § 1140, provides in part that "[i]t shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan." Devlin v. Transportation Communications Intern. Union, 173 F.3d 94, 103 (2d Cir. 1999). Section 510 also includes "for the purposes of interfering with the attainment of any right which such participant may become entitled under the plan." 29 U.S.C. § 1140. Here, Defendant Pitney Bowes discriminatorily interfered with Ms. Bayonne's attainment of her LTD benefits.

"To state a claim under § 510, the 'plaintiff must show that an employer had a specific intent to violate ERISA. (citation omitted) In the absence of direct evidence of

such discriminatory intent, the plaintiff can state a prima facie case by showing the existence of '(1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled. (citations omitted)" Smith v. Ameritech, 129 F.3d 857, 865(6th Cir.1997). In Ms. Bayonne's Proposed Amended Complaint, she alleged, "On information and belief, Defendant Pitney Bowes acted with the specific intent to discriminate against her in the form of retaliation." (Proposed Amended Complaint at ¶ 84). The Defendant's argument implies that she did not so allege specific intent.

"Section 510 was designed primarily to prevent 'unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining [disability benefits]." Dister v. Continental Group, Inc., 859 F.2d 1108, 1111 (2d Cir.1988). This Court must recognize that the Defendant Pitney Bowes is the sine qua non of unscrupulous employers. As Ms. Bayonne alleges in her Proposed Amended Complaint (now revised), the Defendant Pitney Bowes took every conceivable action to harass and frustrate her attempts to seek long term disability benefits, i.e. actions that "effect the employee-employer relationship. The types of conduct alleged in the complaint, "as well as the conduct specifically proscribed by the statute, i.e., 'to discharge, fine, suspend, expel, discipline, or discriminate' against a participant, connote some type of coercion or unilateral action by the employer." Swanson v. U.A. Local 13 Pension Plan, 779 F.Supp. 690, 702 (W.D.N.Y. 1991).

The Defendant Pitney Bowes fundamentally altered the employment relationship with its own discrimination. The Second Circuit has held that adverse employment actions include pecuniary and non-pecuniary emoluments. See Lovejoy-Wilson v. NOCO

25

Motor Fuel, Inc., 263 F.3d 208, 223 (2d Cir. 2001) ("And we have held that adverse employment actions are not limited to "pecuniary emoluments.").

First, Defendant Pitney Bowes denied Ms. Bayonne's non-ERISA STD benefits based on or substantially motivated by a discriminatory intent. (Proposed Amended Complaint at ¶¶ 1-86). The company Disability Department, a division of the employer, administered the STD claim for benefits and denied the claim, by deliberately ignoring Ms. Bayonne's treating physician's opinion that she was totally disabled. However, Defendant had previously approved her STD claim for approximately 20 weeks, on the same medical documentation submitted, but prior to her completing the "qualifying period" under the LTD plan on November 22, 2002. (Exhibit B to Proposed Amended Complaint at p. 34). Contrary to the Defendant's myopic view of the law, Ms. Bayonne must have satisfied the STD qualifying period of proven total disability for 22 weeks in order to obtain LTD benefits.[6] Thus, Defendant's discriminatory action to arbitrarily cut off the STD claim, adversely and fundamentally impacting Ms. Bayonne's attainment of her LTD benefits.

Second, the Defendant Pitney Bowes summarily denied Ms. Bayonne's initial LTD application on December 16, 2003, nineteen days after she filed such claim and her first EEOC dual charge of discrimination on November 27, 2003, sent via facsimile to the employer and plan administrator. (Proposed Amended Complaint at ¶¶ 1-86). Ms. Bayonne asserts the temporal proximity is close and evidences a specific intent. See Russell v. Northrop Grumman Corp., 921 F.Supp. 143, 149 (E.D.N.Y. 1996)(holding that specific intent present where employee was discharged only seven months prior to

---

[6] Under the amended Pitney Bowes LTD Plan, employees must satisfy the first 22 weeks of total disability leave in order to qualify for LTD benefits, "Qualifying Period shall mean, with respect to a Participant, a period beginning on the first day of Total Disability

vesting in benefits). The rationale and denial of the LTD claim were based "exactly" on the same medical information contained in the STD claim denial, which was controlled and administered by the employer Pitney Bowes.

Third, Defendant Pitney Bowes deliberately changed Ms. Bayonne's medical provider under the point of service plan, without her consent. (Complaint at ¶¶ 1-86). Ms. Bayonne could not afford to pay her treating physicians that were not covered under the changed plan. Defendant never offered an explanation, other than to say in words or substance, "sorry for the confusion, we don't know what happened."

Fourth, the Defendant Pitney Bowes influenced the decision to deny the Ms. Bayonne's June 11, 2003 ERISA Appeal. (Proposed Amended Complaint at ¶¶ 1-86). The same Pitney Bowes employees and physician consultants were used in forming the denial of the ERISA Appeal on August 8, 2003 and the November 22, 2002 denial of Ms. Bayonne's STD benefits. (Proposed Amended Complaint at ¶ 39). The same medical evidence was used in both claims, except that Ms. Bayonne provided additional forensic psychiatric evidence to rule out a somatoform disorder, an alleged basis for the STD and LTD denials. The rationale used in the denial of the STD claim was the same as used in the LTD denial on December 16, 2002 and August 8, 2003. The timing of the August 8, 2003 LTD denial came roughly eight months after the initial EEOC charge filing dated November 27, 2002 and little over three months after Ms. Bayonne commenced this action. Thus, there is a close causal nexus between the protected activity and the adverse action, i.e. evidence of specific intent.

Ms. Bayonne presumes the Defendant will assert legitimate reasons for its actions, none of which was discriminatory or intended to interfere with her attainment of

disability benefits. Defendant may assert that its actions to deny the short term and long term disability benefits was based on a fair and substantial weight review. Specifically, Ms. Bayonne allegedly did not proffer "enough" medical evidence.

Ms. Bayonne is required to demonstrated that the Defendant's explanation is pretextual. The United States Supreme Court recently addressed the pretext proof issue in Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 141 (June 12, 2000). The Court's holding sent a shockwave through many companies because it established a presumption of proof that favors all employees:

> In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as 'affirmative evidence of guilt.' (citations omitted). Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision. . . Thus, a Ms. Bayonne's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit a trier of fact to conclude that the employer unlawfully discriminated.

Id. at 147-148. Ms. Bayonne will prevail on the pretext argument because the totality of the Defendant's actions clearly evidence an intent to dissemble and cover up its discriminatory intent. The totality of the evidence is quite persuasive. As previously argued herein, Defendant adduced no new additional evidence that substantiated a denial of the LTD claim. The non-ERISA STD and LTD claims denials were based on the same medical evidence. The Pitney Bowes employees in the Disability Department were the same ones who evaluated and rendered the non-ERISA STD and LTD claim denials. Ms. Bayonne even proffered additional psychiatric forensic evidence that she did not possess a somatoform psychiatric condition. However, the Defendant never requested a

psychiatric independent medical examination, but merely offered a functional capacity evaluation report that Ms. Bayonne can perform sedentary work and an opinion of a consulting neurologist who was not a psychiatrist. This was contrary to the Social Security Administration ruling awarding disability benefits on April 19, 2003, based on the same medical evidence. In addition, there exists a temporal proximity between Ms. Bayonne's November 27, 2002 EEOC/CHRO charge filing and the December 16, 2002 original denial of her LTD claim. There also exists a temporal proximity between the November 27, 2002 charge filing, the commencement of litigation, the filing of the ERISA Appeal on June 11, 2003 and the August 8, 2003 denial of Ms. Bayonne's LTD claim.

Taking the allegations in the complaint as true, it cannot be said that "it appears beyond doubt that the Ms. Bayonne can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.

Defendant Pitney Bowes' objection must be overruled. Ms. Bayonne should be allowed to assert her claims in the proposed revised Amended Complaint, inclusive of the ERISA, ADA and FEPA claims.

### 3.    Defendant's Objection that Proposed Count Four Alleging Violations of ERISA Section 502(c)(1) Fails to State A Claim.

Defendant objects to the Section 502(c)(1) violation. Although Ms. Bayonne could have filed a proposed revised Amended Complaint on this claim, to remove the plan and add the plan administrator, such action is unnecessary for the following reasons.

Section 502(c )(1)(B) provides that "[a]ny administrator. . .who fails or refuses to comply with a request for any information which such administrator is required by this

subchapter to furnish to a participant. . .within 30 days after such request may in the court's discretion be personally liable to such participant. . .in the amount of up to $[110] a day from the date of such failure or refusal." 29 U.S.C. § 1132(c)(1)(B).

The Second Circuit has held, "[i]n assessing a claim for penalties, courts have considered various factors, including 'bad faith or intentional conduct on the part of the administrator, the length of the delay, the number of requests made and documents withheld, and the existence of any prejudice to the participant or beneficiary.' Pagovich v. Moskowitz, 865 F.Supp. 130, 137 (S.D.N.Y.1994)(citing cases)." Devlin, 274 F.3d at 90.

In reviewing the Defendant's objections, Ms. Bayonne asserts the Defendant **did admit** to the delay in providing the requested plan documents and claim file, pursuant to Section 502(c). There was a violation of the statute and the Court must respectfully find the same. However, Ms. Bayonne acknowledges that there was no prejudice caused by such delay, since she eventually filed her ERISA Appeal on June 11, 2003. Notwithstanding, Ms. Bayonne does not waive her right to argue that the delay played a role in this case, under ERISA, ADA or FEPA.

Ms. Bayonne will not assert her Section 502(c) claim, if the Court permits her to file the proposed revised Amended Complaint. Ms. Bayonne points out that when a party can no longer maintain a valid claim or argument in good faith, such party must refrain from any further representation to the Court. See generally, Fed.R.Civ.P. Rule 11. Ms. Bayonne's discontinuance of the Section 502(c) claim is an example of proper practice before this Court. Similarly, Fed.R.Civ.P. Rule 11 also requires Ms. Bayonne to cure inadvertent defects in the pleadings. Ms. Bayonne has complied with such rule and filed a

30

proposed revised Amended Complaint on this date (See Exhibit A to Revise Motion to Amend).

However, Ms. Bayonne asserts that many of the objections and supporting arguments asserted by the Defendant and its counsel were not in keeping with good practice before this Court. As Ms. Bayonne has demonstrated herein, the Defendant made unsupported objections that were clearly designed to harass and frustrate. Not to mention the intent to drive up legal costs in this case.

## IV.    CONCLUSION

Ms. Bayonne respectfully requests that the Court overrule the Defendant's Objections to Ms. Bayonne's Motion to file an Amended Complaint based on the foregoing arguments. Ms. Bayonne requests that the Court grant her revised motion to file a proposed revised Amended Complaint.

Dated: Southport, CT
November 12, 2003

PLAINTIFF,
GERTRUDE BAYONNE

By: _____
    Mark P. Carey (ct17828)
    Carey & Associates, P.C.
    Attorneys At Law
    71 Old Post Road, Suite One
    Southport, CT 06490
    (203) 255-4150 tel.
    (203) 255-0380 fax.
    Mcarey@capclaw.com

    Attorney for Plaintiff

## CERTIFICATE OF SERVICE

THIS IS TO CERTIFY, that the foregoing was delivered via first class mail, postage prepaid, this the 12th day of November, 2003 to:

Marc L. Zaken
Edwards & Angell, LLC
Three Stamford Plaza
301 Tresser Boulevard
Stamford, CT 06901

_____
Mark P. Carey