UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

GERTRUDE BAYONNE, : 2003 DEC -8  A 11: 29

PLAINTIFF, :

v. : Docket No. 303 CV 0712 (WWE)

PITNEY BOWES INC., :

DEFENDANT. : DECEMBER 8, 2003

### DEFENDANT'S OPPOSITION TO
### PLAINTIFF'S MOTION TO FILE A REVISED AMENDED COMPLAINT

Pursuant to Federal Rules of Civil Procedure 15 and 16(b), Defendant Pitney Bowes Inc. ("Pitney Bowes") hereby objects to Plaintiff's Motion to File A Revised Amended Complaint dated November 12, 2003 (the "Second Motion to Amend").  In support of this objection, Pitney Bowes avers as follows:

### PRELIMINARY STATEMENT

The Second Motion to Amend is an attempt by Plaintiff to repair the deficiencies inherent in Plaintiff's Motion to File an Amended Complaint dated September 17, 2003 (the "First Motion to Amend").  Nevertheless, the Second Motion to Amend should be denied for substantially the same reasons as the First Motion to Amend[1].  Despite Plaintiff's attempt to create, retroactively, the existence of "good cause" sufficient to satisfy Rule 16(b), it is apparent from even a cursory review of Plaintiff's papers that "good cause" does not exist.  The Second Motion to Amend, similar to the First Motion to Amend, should be denied.

---

[1] To this end, Pitney Bowes adopts and incorporates by reference, Defendant's Objection to Plaintiff's Motion to File a Revised Amended Complaint dated October 14, 2003.

_170343_1/

## FACTUAL BACKGROUND

This action was commenced on April 21, 2003. Pending before this court is Defendant's Motion to Dismiss dated June 23, 2003. The Motion to Dismiss seeks dismissal of Plaintiff's entire Complaint. Plaintiff, after receiving the Motion to Dismiss, chose not to oppose the dismissal of the second count, a state law claim for breach of the implied covenant of good faith and fair dealing. The dismissal of the first count, a claim for retaliation under the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., remains at issue.

The Motion to Dismiss was filed three days before the parties filed a Report of Parties' Planning Meeting dated June 23, 2003 ("Scheduling Report") on June 26, 2003. The court endorsed the Scheduling Report on June 26, 2003[2]. In the Scheduling Report, the parties proposed and the court endorsed June 30, 2003 as the deadline for Plaintiff "to file motions to join additional parties or amend the complaint."

On July 28, 2003, Plaintiff requested consent from Pitney Bowes to amend her Complaint to add claims under the Employer Retirement Income Security Act of 1974 ("ERISA"). See Plaintiff's Second Motion to Amend at 4-5. Plaintiff again requested consent to amend her Complaint on August 12, 2003, this time requesting to amend "the complaint to include the ERISA and ADA retaliation claims . . . ." Id. at 5-6. Both conversations occurred after the original Scheduling Report was filed with the Court and before the parties filed the Amended Report of Parties' Planning Meeting dated August 14, 2003 (the "Amended Scheduling Report ") on August 25, 2003. Thus, Plaintiff cannot claim, in good faith, that the basis for the Motion to Amend was not reasonably foreseeable at the time the parties filed the Amended Scheduling Report.

---

[2] Copies of the Parties Planning Report and the Amended Parties Planning Report, together with copies of the court's order endorsing these reports, is attached as Exhibit A.

_170343_1/

On August 18, 2003, Plaintiff opposed, in part, the Motion to Dismiss via a Memorandum of Law in Opposition to Defendant's Motion to Dismiss. Plaintiff did not oppose the dismissal of Count Two, the state law claim for breach of the implied covenant of good faith and fair dealing. Thus, only one claim, a claim for retaliation under the ADA, remains pending before the Court.

On August 25, 2003 the parties filed the Amended Scheduling Report, which was endorsed by the court on August 25, 2003. In the Amended Scheduling Report, the parties again proposed and the court again endorsed June 30, 2003 as the deadline for Plaintiff "to file motions to join additional parties or amend the complaint." The Amended Scheduling Report was followed by Defendant's Reply to Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss dated September 5, 2003 and filed September 8, 2003.

After the Motion to Dismiss was fully briefed, and over a month after counsel for Plaintiff was informed that consent to amend the Complaint would not be provided, Plaintiff filed the First Motion to Amend dated September 17, 2003. The First Motion to Amend sought to add three ERISA claims, a statutory scheme separate and distinct from the ADA. Not only was the First Motion to Amend untimely, it appeared to be a bad faith attempt to moot the pending Motion to Dismiss.

After Defendant filed an Objection to the First Motion to Amend, Plaintiff filed the Second Motion to Amend dated November 12, 2003. The Second Motion to Amend seeks to correct the deficiencies in the ERISA claims highlighted by Defendant in its Objection and seeks to add two additional causes of action, a second claim for retaliation under the ADA and a state law claim for retaliation under Connecticut's Fair Employment Practices Act ("CFEPA"). The state law claim for retaliation mirrors the original federal ADA retaliation claim, which is the

_170343_1/

subject of the Motion to Dismiss. Each of the "new" retaliation claims, similar to the ERISA claims proposed by the First Motion to Amend, fail to state a claim upon which relief can be granted. Both suffer from the same deficiencies inherent in the original ADA retaliation claim, namely, the decision to deny short or long term disability benefits, whether or not wrongful, is not, in and of itself, sufficient to establish a claim for retaliation upon which relief can be granted.

Notwithstanding the futility of the amendment sought, the Second Motion to Amend is also untimely and prejudicial given the pending Motion to Dismiss and the additional discovery obligations that will necessarily ensue if the Second Motion to Amend is permitted. The June 30, 2003 deadline "to file motions to join additional parties or amend the complaint" was twice agreed to by the parties and twice endorsed by Court. See Defendant's Objection to Plaintiff's Motion to File an Amended Complaint at 2-3. Plaintiff's carelessness in failing to timely request a modification of this deadline should not be excused to the prejudice of Defendant. The Second Motion to Amend should be denied.

## ARGUMENT

The parties are in agreement that Plaintiff must first satisfy Rule 16(b)'s requirement of "a showing of good cause" to excuse Plaintiff from the deadlines agreed to in the scheduling order before the Court will entertain Plaintiff's request for leave to amend her Complaint. See Plaintiff's Second Motion to Amend at 7-13; Lowry v. Eastman Kodak Co., 14 Fed. Appx. 27, 30 (2d Cir. 2001). Moreover, the parties agree that the "good cause" standard under Rule 16(b), which is more onerous than the standard under Rule 15, "requires a particularized showing that the schedule cannot reasonably be met, despite the diligence of the party seeking the modification, for reasons that were not reasonably foreseeable when the parties submitted their

_170343_1/

proposed case management plan." Id. at 8[3]; see also Local Rule 16 (b); Lowry v. Eastman

Kodak Co., 14 Fed. Appx. at 30; Rent-A-Center, Inc. v. 47 Mamaroneck Avenue Corp., 215

F.R.D. 100, 104 (S.D.N.Y. 2003); Corkrey v. Internal Revenue Service, 192 F.R.D. 66, 67

(N.D.N.Y. 2000). Plaintiff's failure to satisfy this showing of "good cause" bars the proposed

Amended Revised Complaint. The Second Motion to Amend should be denied.

## I.  PLAINTIFF'S FAILURE TO DEMONSTRATE "GOOD CAUSE" BARS HER REQUEST TO FILE A REVISED AMENDED COMPLAINT

Plaintiff's attempt to demonstrate "good cause" is somewhat muddled. Plaintiff, while

arguing that she could not have foreseen that her disability benefits appeal would be denied or

that the administrative agencies would release jurisdiction over her claims, also acknowledges

that although "she could have requested a modification to the June 30, 2003 deadline to amend

her complaint," she failed to do so. See Plaintiff's Second Motion to Amend at 11. Plaintiff

characterizes this failure to seek a modification of the June 30th deadline as a "misstep on the part

of Ms. Bayonne's counsel." Id. Moreover, Plaintiff argues that this "misstep" should be excused

because, according to Plaintiff, "Defendant is in no way prejudiced by this nondilatory inaction

on the part of Ms. Bayonne." Id. Plaintiff even argues that this "misstep" should be excused

because she was "entertaining a settlement offer and researching and preparing the Amended

Complaint" at the time the August 20[th] Amended Scheduling Report was filed. Id. at 13; see also

Plaintiff's Second Motion to Amend at 12 (wherein Plaintiff argues that her "original Motion to

Amend was filed on September 17, 2003, less than one month after the date of the Amended

---

[3] While Plaintiff quotes the language of Local Rule 16(b), Plaintiff mistakenly cites to Rule 11 as the source of this language. Rule 11 sanctions have not yet been sought by Defendant in connection with Plaintiff's continued attempts to assert additional frivolous and baseless causes of action to a Complaint that is already the subject of a Rule 12(b)(6) Motion to Dismiss.

Scheduling Order"). These excuses do not suffice to satisfy the showing of "good cause" mandated by Rule 16(b).

The focus of a Rule 16(b) inquiry is the diligence of the moving party. Rent-A-Center, Inc. v. 47 Mamaroneck Avenue Corp., 215 F.R.D. at 104; Corkrey v. Internal Revenue Service, 192 F.R.D. at 67; Lory v. General Electric Co., 179 F.R.D. 86, 88-89 (N.D.N.Y. 1998) (the only relevant consideration under Rule 16(b) "is whether good cause for the late disclosure has been shown by the moving party"). "Factors not relevant to the question of good cause include the length of time since the deadline passed and whether the non-moving party will be prejudiced if the motion is granted. Nor will the mistake or inadvertence of counsel support a finding of good cause." Corkrey v. Internal Revenue Service, 192 F.R.D. at 67; see also Lory v. General Electric Co., 179 F.R.D. at 89. The fact that the parties may have engaged in settlement negotiations is also irrelevant to the "good cause" inquiry. Lory v. General Electric Co., 179 F.R.D. at 89. The focus, under Rule 16(b), is whether the moving party can establish that, despite due diligence, the "schedule cannot reasonably be met . . . for reasons that were not reasonably foreseeable when the parties submitted their proposed case management plan." Local Rule 16(b); Corkrey v. Internal Revenue Service, 192 F.R.D. at 67; Lory v. General Electric Co., 179 F.R.D. at 88-89; Rent-A-Center, Inc. v. 47 Mamaroneck Avenue Corp., 215 F.R.D. at 104 ("If a party was not diligent, the good cause inquiry should end").

As provided by Local Rule 16(b), a lack of diligence will be found if information supporting the proposed amendment was available to the movant at the time the scheduling order was entered. Local Rule 16(b); Corkrey v. Internal Revenue Service, 192 F.R.D. at 67 ("events occurring after the entry of a scheduling order which were *reasonably unforeseeable* may suffice to establish good cause) (emphasis added); Rent-A-Center, Inc. v. 47 Mamaroneck Avenue

Corp., 215 F.R.D. at 104. Once it is determined that the grounds for the proposed amendment were reasonably foreseeable at the time the scheduling order was entered, the inquiry should end and the motion to amend should be denied. Rent-A-Center, Inc. v. 47 Mamaroneck Avenue Corp., 215 F.R.D. at 104; see also Local Rule 16(b). Here, there is no dispute that the grounds for the proposed amendment were reasonably foreseeable. Plaintiff acknowledges discussing with Pitney Bowes, on August 12, 2003, the filing and drafting of an amended "complaint to include the ERISA and ADA retaliation claims . . . ." Plaintiff's Second Motion to Amend at 5; see also Plaintiff's Second Motion to Amend at 4-5 (wherein Plaintiff claims to have also discussed adding the ERISA claims with Defendant on July 28, 2003). This was in advance of filing the Amended Scheduling Report on August 20, 2003. Plaintiff's failure to then diligently pursue a proposed amendment or to seek a modification of the pleading amendment deadline, notwithstanding her plan to file additional claims, bars her attempt to now introduce these claims into this action[4]. See Deghand v. Wal-Mart Stores, Inc., 904 F.Supp. 1218, 1221 (D.Kan. 1995) ("carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief"). The Second Motion to Amend should be denied.

## II.    THE PROPOSED CLAIMS ARE FUTILE, PREJUDICIAL AND FILED IN BAD FAITH

If Plaintiff satisfies her showing of "good cause," the Court must then determine whether the movant has satisfied the requirements of Rule 15(a). Oxaal v. Internet Pictures Corp., 2002 WL 485704 at *2 (N.D.N.Y. 2002) (once the movant satisfies the Rule 16 inquiry, the "question then becomes whether . . . [the movant] has satisfied the requirements of Rule 15(a)"). As set

---

[4] Plaintiff recognizes that she is not completely barred from pursuing these additional claims. See Plaintiff's Second Motion to Amend at 14. Plaintiff may commence a separate action. Id. Plaintiff cannot, however, amend her Complaint to add these claims to this action given the pending dispositive motion and her failure to establish "good cause" for failing to timely seek these amendments.

forth in Defendant's Objection to Motion to Amend dated October 14, 2003, Plaintiff's Motion to Amend should also be denied under Rule 15.

While Rule 15 provides that leave "be freely given when justice so requires," it is within the sound discretion of the court to determine whether to grant leave to amend. John Hancock Mutual Life Insurance Co. v. Amerford International Corp., 22 F.3d 458, 462 (2d Cir. 1994). The right to leave is "far from absolute," and leave will be denied if it will cause prejudice to the opposing party, was the result of undue delay or bad faith on behalf of the party seeking the amendment or simply due to the futility of the amendment sought. Id.; Cooper v. Lubell, 1987 U.S. Dist. LEXIS 6242 at *3-4 (S.D.N.Y. 1987); Reisner v. General Motors Corp., 511 F. Supp. 1167, 1172 (S.D.N.Y. 1981).

**A.      The Proposed Amendments are Futile and Subject to Dismissal**

**(1)      The Proposed Retaliation Claims are Futile and Subject to Dismissal**

A motion to amend will be denied if the proposed amendment is futile and would not withstand a motion to dismiss. Forman v. Davis, 371 U.S. 178, 182, 9 L.Ed. 2d 222, 83 S.Ct. 227 (1962) (leave to amend may be denied where amendments futile); Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2nd Cir. 2001) (motion for leave to file an amended complaint denied as "futile" where the proposed new claims cannot withstand a 12(b)(6) motion to dismiss for failure to state a claim); Absher v. Flexi Intern'l Software, 2003 U.S. Dist. LEXIS 6089, * 7 (D. Conn. March 31, 2003) (a proposed amendment need not be allowed if it is futile and cannot withstand a motion to dismiss); Senich v. American-Republican, 215 F.R.D. 40, 41 (D. Conn. 2003) (a motion for leave to amend the complaint may be denied if the defendant can demonstrate the futility of the amendment). Plaintiff's proposed retaliation claims fail to state a claim upon which relief can be granted and, therefore, are futile.

_170343_1/

Plaintiff's retaliation claim under Connecticut's Fair Employment Practices Act is identical to her original claim for retaliation under the ADA, which is the subject of the pending Motion to Dismiss. Because "the Connecticut Fair Employment Practice Act (CFEPA), General Statutes § 46a-51 et seq. is closely modeled after Title VII of the Civil Rights of 1964, it is appropriate to look to federal case law interpreting Title VII for guidance." Bramwell v. State of Connecticut, 2002 Conn. Super. LEXIS at *12 (2002). The same test used to determine whether a claim for retaliation is sufficient under the ADA is used to determine whether a claim for retaliation is sufficient under the CFEPA. See Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 159 (2d. Cir. 1999); Bramwell v. State of Connecticut, 2002 Conn. Super. LEXIS at *16. Accordingly, because the CFEPA retaliation claim mirrors the original ADA retaliation claim, it should be dismissed for the same reasons outlined in the Motion to Dismiss dated June 23, 2003 and the Reply to Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss dated September 5, 2003.

The second ADA retaliation claim proposed by the Revised Amended Complaint appears to be an expansion of the original ADA retaliation claim. The second ADA retaliation claim concerns not only the denial of short-term disability benefits, but also the denial of long-term disability benefits. Nevertheless, the second ADA retaliation claim suffers from the same deficiencies that rendered the original ADA retaliation claim subject to dismissal. As with the original ADA retaliation claim, Plaintiff does not allege she was "coerced," "threatened," or "intimidated" while attempting to exercise a right provided by the ADA. Nor does Plaintiff identify the "protected activity" she engaged in. Plaintiff alleges only that she sought disability benefits, both short-term and long-term, and that these benefits were denied. This does not

_170343_1/

amount to "protected activity" as defined by the statute[5]. See Motion to Dismiss at 6-11.

Proposed Count Four fails to state a claim upon which relief can be granted.

### (2)  The Revised Proposed Amended Complaint Continues to Assert Futile ERISA Claims

While Plaintiff's new proposed amended complaint attempts to correct some of the

ERISA pleading deficiencies pointed out in Defendant's earlier memoranda, the purported claims

under ERISA Sections 502(a)(3) and 510 remain futile.

### (a)  Plaintiff's Proposed ERISA Section 502(a)(3) Claim Still Asserts That a Benefit Denial Amounts to a Breach

Section 502(a) of ERISA authorizes civil actions to enforce the terms of employee

benefits plans and the statute. It provides, in relevant part:

> (a) Persons empowered to bring a civil action. A civil action may be brought--

> (1) by a participant or beneficiary (A) for relief provided for in subsection (c) of this section, or (B) to recover benefits due to him under the terms of this plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

> (2) by Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;

> (3) by the Secretary, or by a participant, beneficiary or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(1)-(3). The Supreme Court emphasized the exclusivity and precision of

ERISA's remedial system in *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134 (1985),

---

[5] Plaintiff also identified the instant lawsuit as a purported "protected activity." Plaintiff, however, fails to causally link an adverse employment action to the commencement of the instant action. Other than Pitney Bowes asserting a defense to Plaintiff's claims, it is hard to imagine what Plaintiff considers to be the adverse employment action. Asserting a defense is not an adverse employment action. An employer is entitled to exercise its legal rights and engage in legal advocacy in defending itself. Whalley v. Reliance Group Holdings, Inc., 2001 U.S. Dist. LEXIS 427 at *35 (S.D.N.Y. 2001) ("an employer's reasonable defensive measures do not violate the anti-retaliation provisions of the ADA"). Plaintiff's failure to causally link this alleged protected activity to an adverse employment action renders this claim subject to dismissal.

_170343_1/

in which it noted that the "carefully-integrated civil enforcement provisions found in § 502(a) of the statute ... provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly. The assumption of inadvertent omission is rendered especially suspect upon close consideration of ERISA's interlocking, interrelated, and interdependent remedial scheme, which is in turn part of a 'comprehensive and reticulated statute.'"

In *Varity v. Howe*, 516 U.S. 489 (1996), the Court addressed the relief permitted under ERISA Section 502(a)(3), holding that "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" 516 U.S. at 515 (citing *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985)). And, as the Court has recently underscored, ERISA Section 502(a)(3) affords access only to remedies traditionally available in courts of equity (*i.e.*, injunction, equitable restitution, and mandamus). *Great-West Life & Annuity Ins. Co. v. Knudson*, 122 S. Ct. 708, 712-13 (2002).

Plaintiff's proposed Count Two, which purports to seek "benefits" under both ERISA Section 502(a)(1)(B) and 502(a)(3) fails to recognize that ERISA specifically provides a cause of action for benefits under Section 502(a)(1)(B). Given the availability of benefits under that provision, benefits do not constitute "other appropriate equitable relief" under Section 502(a)(3), even if the Court ultimately denied Plaintiff's claim for benefits under the facts of this case. *See, e.g., Tolson v. Avondale Indus., Inc.*, 141 F.3d 604, 610 (5th Cir. 1998). As a result of this observation, courts regularly dismiss claims asserting breaches of fiduciary duty under ERISA Section 502(a)(3) where a plaintiff cannot demonstrate an alleged ERISA violation other than the alleged wrongful denial of benefits. *See Tolson*, 141 F.3d at 610 ; *Wald v. Southwestern Bell*

_170343_1/

*Corp. Customcare Med. Plan,* 83 F.3d 1002, 1006 (8th Cir. 1996); *Bowles v. Reade,* 198 F.3d 752, 759-60 (9th Cir. 1999).

Plaintiff argues that *Devlin v. Empire Blue Cross and Blue Shield,* 274 F.3d 76, 89-90 (2d Cir. 2001), signals a departure by the Second Circuit from all other circuits addressing the issue. She interprets the case as holding that a plaintiff can maintain a breach of fiduciary duty claim based on the wrongful denial of benefits. This characterization fundamentally misreads *Delvin.*

In *Devlin,* the Second Circuit held that the plaintiff could bring an action under both ERISA Sections 502(a)(1)(B) and 502(a)(3) because "should plaintiffs' claim under ERISA § 502(a)(1)(B) … to enforce their rights under the plan fail, plaintiffs' breach of fiduciary duty claim is their only remaining remedy." 274 F.3d at 89. Under the facts before the court, however, the plaintiffs sought more than recovery of their benefits—they also sought relief for the defendants' alleged failure to provide appropriate documentation to employees explaining the terms of the benefit plan at issue. The alleged misrepresentation of plan terms differs substantively from an alleged wrongful denial of benefits, and the two asserted violations can give rise to different remedies. Importantly, equitable relief could address the alleged plan misrepresentation claims, such as via a mandatory injunction to reform communications relating to the plan, irrespective of the court's findings on the claim for benefits. Thus, rather than reject V*arity's* holding that extraordinary equitable relief will be inappropriate if other relief is provided to redress essentially the same conduct, *id.*, 516 U.S. at 515, *Devlin* merely stands for the proposition that "*Varity Corp.* did not eliminate a private cause of action for breach of fiduciary duty when another potential remedy is available…."

In addition to greatly overextending the reach of *Delvin,* Plaintiff's proposed amended complaint fails to present circumstances at all similar to *Delvin.* As evidenced on the face of the

_170343_1/

proposed complaint, Count II seeks only benefits, despite Plaintiff's purportedly bringing it under both Sections 502(a)(1)(B) and 502(a)(3). *Devlin* is inapplicable where Plaintiff seeks benefits under a Section 502(a)(3) claim, making that relief utterly duplicative of the relief sought under the Section 502(a)(1)(B) claim. See *Rubio et al. v. Chock Full O'Nuts Corp. et al.*, 254 F.Supp.2d 413 (S.D.N.Y. 2003) (dismissing claim under § 502(a)(3), despite plaintiffs' argument that relief provided under § 502(a)(1)(B) insufficient because some class members would not file claims "for years," and finding that delay in receipt of benefits insufficient to trigger resort to equitable relief).

To the extent Plaintiff's claim seeks to recover extra-contractual monetary relief under her Second Count (*see* Revised Amended Complaint at ¶ 76, alleging "economic hardship and damages"), that relief is unavailable under ERISA Section 502(a)(3), which, by its explicit terms, provides only equitable relief. *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 211 (2002) (finding claim for monetary restitution unavailable under Section 502(a)(3) because ERISA Section 502(a)(3) provides only those remedies historically available under equity).

### (b)  Plaintiff Does Not Assert the Requisite Basis for an ERISA Section 510 Claim

ERISA Section 510 provides a cause of action for an employee who suffers adverse employment action as a result of asserting rights under ERISA.  The statute provides:

> It shall be *unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate* against a participant or beneficiary *for exercising any right to which he is entitled under the provisions of an employee benefit plan*, this subchapter, section 1201 of this title ... or for the purpose of interfering with the attainment of any [such] right to which such participant may become entitled....
> The provisions of section 1132 [ERISA Section 502] of this title shall be applicable in the enforcement of this section.

_170343_1/

29 U.S.C. Section 1140. By its plain text, the statute prohibits an employer from retaliating against an employee for exercising his or her rights under ERISA or from otherwise interfering with an employee's benefit plan rights.

Plaintiff's proposed amended complaint continues to misunderstand the nature of ERISA Section 510. Proposed Count Three purports to state a claim under ERISA Section 510, but points to the denial of benefits (both short- and long-term disability benefits) and the proclaimed failure to furnish plan documents within 30 days as the adverse employment acts. See Revised Amended Complaint at ¶¶ 81 (alleging "Pitney Bowes denied continuation of short term disability benefits to Ms. Bayonne"), 84 (claiming plan documents provided 50 days after request), 85 (alleged frustration of "efforts to obtain medical coverage"), 86 (claiming the Disability Department "discriminatorily denied Ms. Bayonne's application for LTD benefits"), and 87 (alleging wrongful denial of appeal). Plaintiff sums up her claim by asserting, "Defendant Pitney Bowes arbitrarily and capriciously denies employee claims for LTD benefits...." *Id.* at ¶ 91. Setting aside the merits of the underlying allegations, Plaintiff's claim will necessarily fail because she does not assert an adverse *employment* action arising out of the exercise of ERISA rights.

Simply put, ERISA's main civil enforcement mechanism, ERISA Section 502(a), remedies ERISA violations. *Massachusetts Mutual Life Ins. Co. v. Russell, supra* (the "carefully-integrated civil enforcement provisions found in § 502(a) of the statute ... provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly"). For instance, ERISA Section 502(a)(1)(A), 29 U.S.C. Section 1132(a)(1)(A), provides the exclusive vehicle for enforcing ERISA's disclosure requirements, giving courts discretion to award a penalty for an administrator's refusal to provide a participant

_170343_1/

documents within the requisite period of time. Similarly, ERISA Section 502(a)(1)(B), 29

U.S.C. Section 1132(a)(1)(B), provides the vehicle by which a participant can assert a claim for

benefits. *Edwards v. Akzo Nobel, Inc.*, 103 F.Supp.2d 214 (W.D.N.Y. 2000) (plaintiffs' claim

that incorrect calculation of benefits amounted to discrimination in violation of ERISA Section

510 denied because plaintiffs could seek redress for the alleged conduct under ERISA Section

502(a)(1)(B)).

　　　　Given that ERISA Section 502(a) already provides civil enforcement mechanisms by

which participants can address ERISA violations, Congress created ERISA Section 510 for a

different goal: to remedy adverse *employment* actions which, if permitted to go unredressed,

may interfere with participants' exercise of their rights under ERISA-governed plans. As courts

have repeatedly observed, in enacting Section 510, Congress sought to prevent "'unscrupulous

employers from discharging or harassing their employees in order to keep them from obtaining

vested pension rights' " or other benefits. *Meredith v. Navistar Int'l Transp. Corp.*, 935 F.2d 124,

127 (7th Cir. 1991) (quoting *Conkwright v. Westinghouse Elec. Corp.*, 933 F.2d 231, 237 (4th

Cir. 1991)). Section 510 of ERISA therefore protects employees from dismissal by employers

who attempt to limit costs of benefit plans by preventing access to benefits. See *Lindemann v.*

*Mobil Oil Corp.*, 141 F.3d 290, 295 (7th Cir. 1998).

　　　　The statute spells out the type of conduct it makes unlawful, including to "discharge, fine,

suspend, expel, discipline, or discriminate" against an employee for exercising ERISA rights. 29

U.S.C. Section 1140. While the specified actions may not represent all conduct prohibited by

Section 510, the Supreme Court has found a claim asserting wrongful termination to prevent the

accrual of benefit obligations "prototypical of the kind Congress intended to cover under § 510."

*Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133 (1990). As the Court explained, by its terms,

"Section 510 protects plan participants *from termination* motivated by an employer's desire to prevent a pension from vesting. Congress viewed this section as a crucial part of ERISA because, without it, employers would be able to circumvent the provision of promised benefits." *Id.* (emphasis added), citing to S. Rep. No. 93-127, pp. 35-36 (1973); H.R. Rep. No. 93-533, p. 17 (1973).

Because Plaintiff does not assert an adverse employment action or other conduct violative of Section 510, but rather asserts that Defendants, or some of them, wrongfully denied her claims for benefits and tardily produced plan documents, any assertion of a claim under ERISA Section 510, 29 U.S.C. Section 1140, is futile.

### B.    The Proposed Amendments Will Prejudice Defendant

The proposed amendment will also cause undue prejudice to the defendant. Undue prejudice is frequently found where an amendment seeks to "bring entirely new and separate claims, adds new parties, or at least entails more than an alternative claim or a change in the allegations of the complaint." Conroy Datsun Ltd v. Nissan Motor Corp., 506 F. Supp. 1051, 1054 (N.D.Ill. 1980); see also Cooper v. Lubell, 1987 U.S. Dist. LEXIS 6242 at *5 (S.D.N.Y. 1987) (motion to amend denied where the proposed amendment would open up an entirely new factual area for discovery); McCann v. Frank B. Hall & Co., Inc., 109 F.R.D. 363, 367 (N.D.Ill. 1986) ("where the amendment significantly changes the complaint, thereby necessitating substantial additional discovery, leave to amend should be denied"). Here, not only is Plaintiff attempting to introduce five additional causes of action, three of which are based on an entirely separate statutory scheme under ERISA, she's attempting to introduce three new party defendants, The Pitney Bowes Inc. Long Term Disability Plan, The Pitney Bowes Inc. Long Term Disability Plan Administrator, and The Pitney Bowes Inc. Disability Department.

- 16 -

The present Complaint consists only of one claim, a claim for retaliation under the ADA. The three ERISA claims now proposed by the plaintiff are: (1) a claim for breach of fiduciary duty for an improper denial of benefits under section 502 of ERISA; (2) a claim for retaliation under section 510 of ERISA; and (3) a claim for failure to provide pertinent documents in violation of section 502(c)(1) of ERISA. Plaintiff also proposes two additional retaliation claims, a second ADA retaliation claim and a state law retaliation claim. Each of these proposed claims, in particular, the ERISA claims, will undoubtedly alter the nature and scope of this action, will greatly expand the amount of discovery needed and will inevitably prolong the resolution of the pending case. Pitney Bowes should not now be forced to incur the additional expense and invest the additional resources necessary to defend against the proposed claims given the pending Motion to Dismiss.

The ERISA claims, if joined with the pending ADA claim, will also procedurally complicate the trial of this matter. For instance, unlike the ADA claim, there is no right to a jury trial in connection with the proposed ERISA claims. Muller v. First Unum Life Insurance Company, 341 F.3d 119, 124 (2d Cir. 2003) ("there is no right to a jury trial under ERISA"). Thus, Plaintiff is seeking to join with the ADA claim, for which the plaintiff requests a trial by jury, ERISA claims that are not subject to trial by jury. These claims are not compatible in the same action and will likely be bifurcated at the time of trial. Judicial economy will not be served by joining the two sets of claim. The Second Motion to Amend should be denied.

**C.    The Proposed Amendments Are Pursued in Bad Faith**

Despite Plaintiff's threat to file an amended complaint including additional claims of retaliation under the ADA and claim under ERISA, Plaintiff waited until after the Motion to Dismiss was fully briefed to file her First Motion to Amend. Plaintiff was aware, as of August

12, 2003, that Defendant was withholding its consent because of the pending Motion to Dismiss. Nevertheless, Plaintiff waited until Pitney Bowes prepared and filed its Reply to Plaintiff's Objection to the Motion to Dismiss to seek her First Motion to Amend.  Plaintiff's failure to offer any legitimate explanation for this delay, coupled with her acknowledgement that her ERISA claims could be commenced via a separate action, are evidence of Plaintiff's bad faith attempt to moot Defendant's Motion to Dismiss after forcing Defendant to incur the expense of preparing and filing its Reply brief.

A motion to amend will be denied if the court determines it was filed in bad faith, such as to forestall a ruling on a pending motion.  Reisner v. General Motors Corp., 511 F. Supp. at 1172 (denying a request to amend the complaint where the court found credence in the argument that the proposed pleading was likely "an attempt to forestall a ruling against the plaintiffs on a motion for summary judgment").  The timing of the Motion to Amend suggests it was filed to forestall a ruling on the ADA retaliation claim and the possible end of the case.  Whether made for negotiating leverage or other undisclosed reasons, the timing of plaintiff's Motion to Amend was inappropriate and should not be permitted by this Court.  The Motion to Amend should be denied.

_170343_1/

## CONCLUSION

Based on the foregoing, Defendant Pitney Bowes Inc. respectfully requests that Plaintiff's Second Motion to Amend be denied.

DEFENDANT,

PITNEY BOWES INC.
BY ITS ATTORNEYS

Marc L. Zaken (CT 03110)
mzaken@edwardsangell.com
John G. Stretton (CT 19902)
jstretton@edwardsangell.com
EDWARDS & ANGELL, LLC
Three Stamford Plaza
301 Tresser Boulevard
Stamford, CT 06901
(203) 353-6819

_170343_1/

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a copy of the foregoing Defendant's Opposition To Plaintiff's

Motion To File A Revised Amended Complaint was mailed via first class mail, postage prepaid

to counsel for Plaintiff, addressed as follows:

        Mark P. Carey
        Carey & Associates, P.C.
        71 Old Post Road South, Suite One
        Southport, CT 06890

this 8th day of December, 2003.

                                   John G. Stretton

_170343_1/