29 C.F.R. § 2560.503-1(g)(ii) provides that upon written request a claimant or beneficiary has the right to receive and "review pertinent documents" used as part of the claims review procedures.

Ms. Bayonne now has the right to pursue a federal court injunction to obtain such pertinent documents and have the court assess a $110 fine per each day such documents have not been provided. This letter serves to document such failure on the part of the Plan Administrator for the Pitney Bowes LTD Plan.

55.     On March 10, 2003, Defendant Plan Administrator sent a letter responding to Ms. Bayonne's January 21, 2003 request for pertinent documents by providing such documents. Defendant Plan's response was provided fifty (50) days after it was requested on January 21, 2003.

56.     On March 14, 2003, Ms. Bayonne's attorney sent a letter to Michael Lalli, Defendant Plan's benefits counsel regarding the termination of COBRA coverage. The letter documented the issue and also notified Defendant Plan that Ms. Bayonne had received the STD and LTD claim file,

> I am writing to you in order to document a very important issue concerning Pitney Bowes' refusal to enter Gertrude Bayonne in the COBRA program. Ms. Bayonne sent the completed COBRA forms and payment to the Pitney Bowes Benefit Service Center, P.O. Box 27190, Minneapolis, MN 55427, on February 28, 2003 (bank check People's Bank #7601656). The COBRA forms indicate that Ms. Bayonne was notified on December 14, 2002 and her enrollment deadline was March 6, 2003. Ms. Bayonne telephoned the Pitney Bowes COBRA service center yesterday, March 13, 2003, and discovered that she was not enrolled in the COBRA program. However, she spoke with someone in the COBRA department who indicated she was in fact covered for health insurance continuation. I ask that Pitney Bowes clear up this confusion as soon as possible. Please note, Ms. Bayonne went in for minor surgery on February 14, 2003 and has been notified by the medical provider that she is not covered under COBRA and is financially responsible. An active COBRA benefit would have retroactively taken care of this medical bill.
>
> I request your immediate attention to this very important issue. As you know, Ms. Bayonne has severe health problems, was wrongfully terminated from her employment, wrongfully denied Short & Long Term Disability Benefits, does not currently have any employment and has no other medical insurance. Ms. Bayonne is entitled to received COBRA benefit through her then current medical

18

provider Blue Cross Blue Shield, which she changed from Healthnet in November 2002.

Please respond immediately upon your receipt of this letter and do not let this written request fall to the bottom of your paper file, just as you admitted happened with the written request for Ms. Bayonne's STD/LTD ERISA Claim File, which was received by this office on March 11, 2003.

57.     On April 3, 2003, Ms. Bayonne's attorney sent a letter to Michael Lalli, Defendant Plan's benefits counsel regarding the denial of health coverage. The letter stated,

> I am again writing to you about Ms. Bayonne's health care coverage provided by Pitney Bowes, Inc. On March 14, 2003, I sent you a letter regarding the denial of Ms. Bayonne's COBRA benefits. I specifically mentioned that while Ms. Bayonne was employed, she received health care benefits through Blue Cross Blue Shield. In November 2002, she elected to change coverage from Healthnet to BCBS. Apparently, this fact was not observed by Pitney Bowes because Ms. Bayonne just received her Healthnet insurance identification cards on April 2, 2003. She made the change to BCBS because many of her physicians did not accept Healthnet insurance.
>
> On March 27, 2003, we had a telephone discussion wherein you confirmed for the first time since December 16, 2002 that Ms. Bayonne was still an active employee of the company. To date, I have not received any written confirmation from your office regarding this fact. During the last three and a half months, Pitney Bowes failed to provide any written notices or documentation to Ms. Bayonne that demonstrated she was still an active employee. In essence, your client left a disabled employee with on-going health concerns in limbo, without health insurance from the company or through COBRA. This action is inexcusable and discriminatory. This letter serves to notify Pitney Bowes that Ms. Bayonne is hereby engaging in a protected activity to protest against the discriminatory health insurance/employment practices described herein.
>
> On behalf of my client, I would like this "intentional mess" corrected immediately. Ms. Bayonne is receiving invoices from her medical providers in amounts that she cannot afford to repay. BCBS and Pitney Bowes are the entities responsible for the medical liabilities she has and continues to incur, for as long as you claim she is either an active employee on a disability leave of absence or while receiving Long Term Disability benefits.

58. On April 19, 2003, the Social Security Administration approved Ms. Bayonne's claim for disability benefits, based on the same objective medical evidence provided to the Defendant Plan for purposes of both her short and long term disability benefits. The SSA standard is far more rigorous, i.e. totally disabled from any employment, than the disability standard applied by the Defendant Plan, Defendant Plan Administrator and Defendant Disability Department.

59. On April 30, 2003, Ms. Bayonne's attorney sent a letter to Michael Lalli, Defendant Plan's benefits counsel regarding improper handling of her medical insurance. The letter stated,

> I am again writing to you about Ms. Bayonne's health care coverage provided by Pitney Bowes, Inc. On April 3, 2003, I sent you a letter regarding Ms. Bayonne's medical insurance coverage under the Pitney Bowes Blue Cross Blue Shield policy. I have not received any response from Pitney Bowes, Inc. that has resolved the current dispute. Ms. Bayonne had previously elected medical coverage under the BCBS plan. However, Pitney Bowes, Inc. still cannot confirm that she has such coverage.
>
> In order to facilitate the resolution to this dispute, I have enclosed documents evidencing Ms. Bayonne's BCBS coverage. Also enclosed are recent medical bills that the medical providers are requesting that she pay. Obviously, with current medical coverage, Ms. Bayonne does not have to pay for such medical treatment. On behalf of my client, I request that you "personally" resolve this issue immediately. If I do not receive a prompt response within seven days from the date of this letter, then I can only assume the denial of medical coverage under the BCBS plan is discriminatory.

60. On June 11, 2003, Ms. Bayonne obtained findings from her extensive psychiatric and neurocognitive testing in February. The forensic experts found no evidence of symptom magnification, hypochondrias, or somatization, pursuant to the Diagnostic Statistical Manual IV ("DSM-IV").

61. On June 11, 2003, Ms. Bayonne filed her appeal of the December 16, 2002 denial of long term disability benefits to the Defendant Plan, Defendant Plan Administrator and Defendant Disability Department, inclusive of the June 11, 2003 forensic psychiatric report, pursuant to ERISA.

62. On August 8, 2003, the Defendant's Plan Administrator and Defendant Disability Department issued a written denial of the June 11, 2003 appeal. The denial letter stated in pertinent part ". . .after a full and fair review of the evidence the Committee concluded that the objective evidence was not indicative of a total disability condition." The Defendant Plan's summary plan description for both the short term and long term disability plans do not use the phrase "objective medical evidence" in the term "proof of disability." The denial was based on the same rationale and medical evidence used to deny Ms. Bayonne's non-ERISA STD and ERISA LTD claims. The Defendant Pitney Bowes employees and physician consultants also performed consultive and employment functions for the Defendant Plan Administrator and Defendant Disability Department.

63. On September 22, 2003, Plaintiff filed her second charge of employment discrimination with the EEOC against the Defendant Pitney Bowes, Inc. Plaintiff claims retaliation pursuant to the ADA against Defendant Pitney Bowes, Inc. for discriminatorily denying her LTD benefits as a direct result of her previous protected activities. On September 29, 2003, Plaintiff received a Notice of Right to Sue from the EEOC. (Exhibit A Attached Herein). Plaintiff exhausted her administrative remedies and now files a second timely claim for retaliation pursuant to the ADA.

64.   On October 23, 2003, Plaintiff received a Release to Sue from the CHRO with respect to her November 27, 2003 dually filed charge alleging retaliation pursuant to FEPA. (Exhibit A Attached Herein). Plaintiff has exhausted her administrative remedies and now files her first timely claim for retaliation pursuant to FEPA.

### DEFINITION OF DISABILITY UNDER THE LTD PLAN

65.   The Defendant Plan's Summary Plan Description (SPD) defines "Totally Disabled" or "Total Disability" as follows:

> shall mean that the Participant is unable:
> (a)(i) to perform the material duties of his or her own occupation for a maximum period of twelve (12) months after the Qualifying Period, and (ii) that thereafter the Participant is unable, because of injury or illness, to engage in any gainful occupation or profession for which he is, or could become, reasonably suited by education, experience, or training; provided, however, that the amount of earnings that the Participant would receive from engaging in such occupation or profession would be less than sixty percent of the Participant's annual or annualized earnings immediately prior to the event giving rise to the Total Disability.

66.   The SPD also defines "proof of disability" as follows:

> In accordance with the terms of the Plan and any administrative procedures approved by the Employee Benefits Committee, a Participant shall be required to submit initially and from time to time whatever proof or documentation the Disability Department may require (either directly to itself or to an independent review organization retained by the Disability Department for this purpose), including the medical records and medical analysis of one or more duly qualified physicians or clinical psychologists as evidence of Total Disability and of the continuation of such Total Disability; and, in the case of a Participant Totally Disabled during the first year of participation in the Plan, proof that the disability resulted from a condition other than one for which the Participant received medical treatment or advice during the twelve (12) month period preceding the Participant's date of employment.

22

V.  **COUNT ONE:**   **RETALIATION AGAINST MS. BAYONNE IN VIOLATION OF THE ADA**

67.  Paragraphs 1-66 are hereby incorporated by reference the same as if fully pleaded in Count One.

68.  Ms. Bayonne can successfully establish a prima facie case of retaliation under the ADA by demonstrating the following: 1) participation in a protected activity, i.e. she made requests for reasonable accommodations in the form of her application for short-term disability benefits offered through the Defendant Pitney Bowes; 2) the Defendant Pitney Bowes was aware of this protected activity through verbal communications, written application and letters from Ms. Bayonne's treating physicians and herself; 3) Ms. Bayonne experienced adverse employment actions, i.e., denial of requests for reasonable accommodations in the form of a denial of continued short-term disability benefits and intentional discrimination due to retaliation; 4) there exists a close causal connection (nexus) between Ms. Bayonne's protected activity and the adverse employment actions she experienced.

69.  The Defendant Pitney Bowes should be held liable on this count and Ms. Bayonne should be awarded all appropriate relief.

VI.  **COUNT TWO:**   **CLAIM FOR BENEFITS PURSUANT TO ERISA § 502(a)(1)(B) and (a)(3)**

70.  Paragraphs 1-69 are hereby incorporated by reference the same as if fully pleaded in Count Two.

71.  ERISA § 502(a)(1)(B) and (a)(3), 29 U.S.C. § 1132(a)(1)(B) and (a)(3),

23

permits Ms. Bayonne, participant of a plan, to bring a civil action to recover benefits due to her under the terms of the plan, to enforce her rights under the terms of the plan, and/or to clarify her rights to future benefits under the terms of the plan. Plaintiff asserts these claims as against the Defendant Plan and against the Defendant Plan Administrator and Defendant Disability Department as ERISA fiduciaries.

72. Defendant Plan Administrator and Defendant Disability Department have failed to properly interpret and administer the provisions of the plan as required by ERISA § 404, 29 U.S.C. § 1104.

73. Defendant Plan Administrator and Defendant Disability Department has denied Ms. Bayonne benefits to which she is entitled under the plan and has failed to properly consider the evidence submitted by her, her treating physicians, and psychiatric forensic expert, in support of her claim for long-term disability benefits.

74. At all time relevant herein, the Defendant Plan has acted under a conflict of interest and has placed its pecuniary interests before the interests of the Ms. Bayonne in arbitrarily, capriciously and wrongfully denying her long-term disability benefits in clear violation of the terms of the plan. In addition, the Defendant Plan Administrator and Defendant Disability Plan have acted under a conflict of interest because they failed to conduct a fair, impartial and substantial weight review, in ignoring Ms. Bayonne's substantive medical evidence provided by her treating physicians.

75. The above acts and/or omissions by the Defendant Plan Administrator and Defendant Disability Department constitute a breach of its fiduciary duty to properly administer the plan solely for the benefit of the participant Ms. Bayonne and in

accordance with the provisions of the governing plan documents as required by ERISA § 404, 29 U.S.C. § 1104.

76. As a direct and proximate result of the Defendant Plan Administrator's and Defendant Disability Department's breach of their fiduciary duties owing to Ms. Bayonne pursuant to the provisions of the plan and as imposed by ERISA. She has been unlawfully denied long-term disability benefits to which she is entitled under the plan and has been caused to sustain economic hardship and damages on a continuing basis.

77. Ms. Bayonne is entitled to recover her benefits under the plan and to an Order enforcing the terms of the plan pursuant to ERISA § 502, 29 U.S.C. § 1132(a)(1)(B) and (a)(3).

### VII. COUNT THREE:   ERISA SECTION 510 VIOLATION

78. Paragraphs 1-77 are hereby incorporated by reference the same as if fully pleaded in Count Three.

79. Ms. Bayonne can establish a prima facie case of retaliation under § 510 of ERISA, that: (1) she was engaged in protected activity(s); (ii) the Defendant Pitney Bowes was aware of her participation in that protected activity; (iii) the Defendant Pitney Bowes took deliberate adverse action against her, i.e. discriminatory interference with her attainment of disability benefits; and (iv) a causal connection existed between Ms. Bayonne's protected activity(s) and the adverse action taken by the Defendant.

80. Ms. Bayonne filed a claim for short term disability benefits under the Defendant Pitney Bowes non-ERISA short term disability benefit policy and summary

plan description, a protected activity. The Defendant Pitney Bowes employees, and physician consultants, who administered her STD and LTD claims were the same.

81. Defendant Pitney Bowes denied continuation of short term disability benefits to Ms. Bayonne, an adverse employment action. The STD denial was based on the same identical medical evidence used to support the denial of Ms. Bayonne's LTD claim on December 16, 2002 and August 8, 2003.

82. Ms. Bayonne filed a claim for benefits under the Defendant Plan on November 27, 2002, a protected activity.

83. Ms. Bayonne filed a dual charge of discrimination with the EEOC and CHRO on November 27, 2002, as against the Defendant Pitney Bowes for retaliation in denying short term disability benefits, a protected activity.

84. Defendant Pitney Bowes and Defendant Plan failed to provide a copy of the STD and LTD claim files, along with plan documents, within a timely fashion pursuant to ERISA, an adverse employment action. The Defendant Plan Administrator and Defendant Disability Department only provided the requested documents after 50 days had elapsed, 20 days longer than as required by ERISA.

85. Defendant Pitney Bowes deliberately interrupted Ms. Bayonne's medical coverage pursuant, i.e. intentional and unauthorized change of medical plans, in an attempt to frustrate her efforts to obtain medical coverage and pursuit of her LTD benefits, an adverse employment action.

86. Defendant Pitney Bowes, Defendant Plan, Defendant Plan Administrator and Defendant Disability Deparmtne discriminatorily denied Ms. Bayonne's application for LTD benefits on December 16, 2003, nineteen days after she filed such application

for benefits, an adverse employment action. The denial was based on the same rationale used by Defendant Pitney Bowes employees and physician consultants. The denial was also based on the same medical evidence submitted by Ms. Bayonne and the Defendant Pitney Bowes.

87. Ms. Bayonne commenced her federal action in the United States District Court for the District of Connecticut on April 21, 2003, alleging retaliation pursuant to the ADA against the Defendant Pitney Bowes, a protected activity.

88. On June 11, 2003, Ms. Bayonne filed her appeal of the December 16, 2002 denial of long term disability benefits to the Defendant Plan Administrator and Defendant Disability Department, inclusive of Ms. Bayonne's June 11, 2003 forensic psychiatric report, pursuant to ERISA, a protected activity.

89. On August 8, 2003, Defendant Plan Administrator and Defendant Disability Department denied Ms. Bayonne's June 11, 2003 ERISA appeal to the plan administrator, an adverse employment action. The denial followed in close proximity the original dual charge of discrimination, the commencement of this action and the June 11, 2003 ERISA Appeal, all protected activities. The denial was based on the same rationale used by Defendant Pitney Bowes employees and physician consultants in the November 22, 2002 STD denial and the December 16, 2002 LTD denial. The denial was also based on the same medical evidence submitted by Ms. Bayonne and the Defendant Pitney Bowes in her STD and LTD claims.

90. On information and belief, Defendant Pitney Bowes acted with the specific intent to discriminate against her in the form of retaliation. The Defendant Pitney Bowes appoints the trustee to the Defendant Plan and the Defendant Pitney Bowes

27

employees also perform employment functions for the Defendant Plan, Defendant Plan Administrator and Defendant Disability Department. The Defendant Pitney Bowes possesses the ultimate authority to terminate and amend the Defendant Plan, and proscribe rules, policies and procedures followed by the Defendant Plan Administrator and Defendant Disability Department.

91. On information and belief, Defendant Pitney Bowes maintains a discriminatory policy that has a disproportionate impact upon employees like Ms. Bayonne who request paid disability retirement benefits under the Defendant Pitney Bowes welfare benefit plan. Defendant Pitney Bowes arbitrarily and capriciously denies employee claims for LTD benefits, even though such employees provide adequate and substantial medical evidence from treating physicians, and appeal denials of their LTD claims. Defendant Pitney Bowes is financially motivated to deny LTD claims, as a self insured plan, and represents an inherent conflict of interest. The Defendant Pitney Bowes discriminatorily retaliated against Ms. Bayonne for engaging in her protected activities.

92. Ms. Bayonne requests all available relief, in equity and in law, as the Court may award.

### VIII. COUNT FOUR: PLAINTIFF'S SECOND RETALIATION CLAIM PURSUANT TO THE ADA FOR A DISCRIMINATORY DENIAL OF HER LONG TERM DISABILITY CLAIM FOR BENEFITS

93. Paragraphs 1-92 are hereby incorporated by reference the same as if fully pleaded in Count Four.

94. Ms. Bayonne can successfully establish a prima facie case of retaliation under the ADA by demonstrating the following: 1) participation in a protected activity,

(a) she made requests for reasonable accommodations in the form of her application for short-term disability benefits offered through the Defendant Pitney Bowes (b) filed a claim for long term disability benefits offered through the Defendant Pitney Bowes and administer by the Defendant Plan Administrator and Defendant Disability Department, (c) she filed suit on April 21, 2003 pursuant to the ADA in federal court, and (d) filed an ERISA Appeal on June 11, 2003; 2) the Defendant Pitney Bowes was aware of this protected activity through, (a) verbal communications, (b) written application and letters from Ms. Bayonne's treating physicians and herself, (c) receipt of the two ADA charges of discrimination and defended the same, (d) receipt of the FEPA charge of discrimination and defended the same, (e) receipt of the ADA lawsuit, (f) receipt of the June 11, 2003 ERISA Appeal; 3) Ms. Bayonne experienced adverse employment actions, (a) denial of requests for reasonable accommodations in the form of a denial of continued short-term disability benefits and intentional discrimination due to retaliation, (b) denial of the original LTD application on December 16, 2003, nineteen days after Ms. Bayonne filed the dual charge of discrimination, (c) changing Ms. Bayonne's health plan without her consent, (d) failing to provide requested documents under ERISA when requested, (e) discriminatorily denying Ms. Bayonne's ERISA Appeal for LTD benefits on August 8, 2003; 4) there exists a close causal connection (nexus) between Ms. Bayonne's protected activities and the adverse employment actions she experienced.

    95.    The Defendant Pitney Bowes should be held liable on this count and Ms. Bayonne should be awarded all appropriate relief.

**IX.    COUNT FIVE:    PLAINTIFF'S CLAIM FOR RETALIATION PURSUANT TO CONNECTICUT'S FAIR EMPLOYMENT PRACTICES ACT (FEPA).**

96. Paragraphs 1-95 are hereby incorporated by reference the same as if fully pleaded in Count Five.

97. Ms. Bayonne can successfully establish a prima facie case of retaliation pursuant to FEPA by demonstrating the following: 1) participation in a protected activity, i.e. she made requests for reasonable accommodations in the form of her application for short-term disability benefits offered through the Defendant Pitney Bowes; 2) the Defendant Pitney Bowes was aware of this protected activity through verbal communications, written application and letters from Ms. Bayonne's treating physicians and herself; 3) Ms. Bayonne experienced adverse employment actions, i.e., denial of requests for reasonable accommodations in the form of a denial of continued short-term disability benefits and intentional discrimination due to retaliation; 4) there exists a close causal connection (nexus) between Ms. Bayonne's protected activity and the adverse employment actions she experienced.

98. The Defendant Pitney Bowes should be held liable on this count and Ms. Bayonne should be awarded all appropriate relief.

X. **DEMAND FOR RELIEF**

**WHEREFORE**, Ms. Bayonne requests the following relief:

    A. Declare that the Defendant Pitney Bowes is an employer and a covered entity under Title I of the ADA;

    B. Declare that the Defendant Pitney Bowes failed to provide Ms. Bayonne with reasonable accommodations on a continuous basis

pursuant to Title I of the ADA and wrongfully terminated her employment on account of her physical disability;

C. Declare that the Defendant Pitney Bowes retaliated against Ms. Bayonne for requesting reasonable accommodations, pursuant to Title I of the ADA;

D. Declare that the Defendant Pitney Bowes retaliated against Ms. Bayonne when discriminatorily denied her long term disability benefits, pursuant to Title I of the ADA;

E. Declare that the Defendant Pitney Bowes retaliated against Ms. Bayonne when discriminatorily denied her request for accommodation and claim for short term disability benefits, pursuant to FEPA;

F. For a temporary restraining order, and preliminary and permanent injunctive relief requiring the Defendant Plan reopen and process Ms. Bayonne's appeal of their denial of his benefits on the basis that Defendant Plan's conduct has inflicted and continues to inflict severe financial, physical and emotional hardship on Ms. Bayonne, in the alternative Ms. Bayonne respectfully requests that the Court order the Defendant Plan to pay her Long Term Disability Benefits;

G. For reasonable attorneys' fees and costs pursuant to 29 U.S.C. §§ 1001-1461, and specifically 1132(g);

H. Declare that Defendant Plan violated the terms of the LTD Plan and Ms. Bayonne's rights there under by failing to pay Ms. Bayonne's long-term disability benefits;

31

I. Order Defendant Plan to pay Ms. Bayonne's Long-Term Disability benefits pursuant to the terms of the Plan from November 27, 2002, through the date judgment is entered herein, together with prejudgment interest on each and every such monthly payment through the date of judgment is entered herein;

J. Declare Ms. Bayonne's right to receive future long-term disability benefit payments under the terms of the Plan;

K. Declare that Defendant Pitney Bowes violated Section 510 of ERISA when it retaliated against Ms. Bayonne and award all appropriate relief;

L. Award Ms. Bayonne prejudgment interest on all damages requested herein;

L. Award compensatory and punitive damages to Ms. Bayonne,

M. Award attorney's fees, interest and costs,

N. Award such other relief in law or equity as this Court deems appropriate.

## JURY TRIAL DEMANDED

Ms. Bayonne respectfully requests a jury trial on all questions of fact raised by her complaint pursuant to the ADA and FEPA.

PLAINTIFF,
GERTRUDE BAYONNE

By: /s/ Mark P. Carey

Mark P. Carey (ct17828)
Carey & Associates, P.C.
Attorneys At Law
71 Old Post Road, Suite One
Southport, CT 06490
(203) 255-4150 tel.
(203) 255-0380 fax.
Mcareyesq@MPCAssoc.com

Her Attorney

**CERTIFICATE OF SERVICE**

THIS IS TO CERTIFY, that the foregoing was delivered via first class mail, postage prepaid, this the 12th day of November, 2003 to:

Marc L. Zaken
Edwards & Angell, LLC
Three Stamford Plaza
301 Tresser Boulevard
Stamford, CT 06901

Attorney for Defendant Pitney Bowes

Mark P. Carey

33