Plan, 287 F.3d 96, 104 (2d Cir.2002); Kinstler, 181 F.3d at 251-52.

"Ordinary contract principles require that, where one party is granted discretion under the terms of the contract, that discretion must be exercised in good faith –a requirement that includes the duty to exercise the discretion reasonably." Goldstein v. Johnson & Johnson, 251 F.3d 433 (3d Cir. 2001)(Citing, Restatement (Second) of Contracts §205 & cmta; Berger v. Edgewater Steel Co., 911 F.2d 911, 919 (3d Cir. 1990).

The Employee Benefits Committee and the Disability Department exercised apparent discretion to administer and interpret the Pitney Bowes LTD Plan, pursuant to ERISA § 3(21), 29 U.S.C. § 1002(21)(A).  (Plaintiff's Statement of Facts ¶¶ 6, 16, 17, 18, 19, 20, 21, 22).  The January 1, 1998 Pitney Bowes LTD Plan (Revised Amended Complaint, Exhibit B) reveals that the Pitney Bowes LTD Plan specified "The Employee Benefits Committee" as the Plan Administrator (Plaintiff's Statement of Facts ¶ 15), and "has delegated to the Disability Department the day-to-day, on-going administrative responsibilities of the Plan." (Plaintiff's Statement of Facts ¶ 18); (Revised Amended Complaint, Exhibit B).

In light of Ms. Bayonne's Statement of Facts and the full administrative record (Appendix A & B), under the arbitrary and capricious or "abuse of discretion" standard this Court can and should overturn the Defendants decision to deny Ms. Bayonne benefits because it was 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" Pagan, 52 F.3d at 442. Thus, Defendants determination must be disturbed because it was inconsistent with the plan's terms, and not "based on a consideration of the relevant factors" and supported "by substantial evidence." Miller v. United Welfare Fund, 72 F.3d 1066, 1072 (2d Cir. 1995); Motor Vehicle Manufacturers

Association v. State Farm Mutual Automobile Insur. Co., 463 U.S. 29, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983) Substantial evidence means "such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decision maker," and "requires more than a scintilla but less than a preponderance" of evidence. Id. However, the Defendants cannot provide substantial evidence to support its decisions. A reasonable mind cannot accept the fact that Defendants presumption/conclusion that Ms. Bayonne had symptom magnification, in full view of objectively supported medical complaints, without obtaining and providing properly supporting psychiatric and neurocognitive evidence.

This narrowly circumscribed scope of review prevents court from substituting their own judgment for that of the administrator. See Bowman Transp., Inc. v. Arkansas-Best Freight Sys., 419 U.S. 281, 285 (1974); Pagan, 52 F.3d at 442. However, any highly deferential standard of review found applicable to this case does not automatically mandate adherence to Defendants decision:

> Review under [the arbitrary and capricious] standard is extremely deferential and has been described as the least demanding form of judicial review. It is not, however, without some teeth." Cozzie v. Metropolitan Life Ins. Co., 140 F.3d 1104, 1107-08 (7th Cir.1998)(internal citation omitted). " 'Deferential review is not no review,' and 'deference need not be abject.'"

Hess v. Hartford Life & Accident Ins. Co., 274 F.3d 456, 461 (7th Cir.2001)(quoting Gallo v Amoco Corp, 102 F.3d 918, 922 (7th Cir.1996).

In the instant case, this Court has an obligation under ERISA to review the administrative record, as prepared by Ms. Bayonne in Appendix A & B, in order to determine whether the Defendants acted arbitrarily and capriciously in making its ERISA benefits determination. This obligation inherently includes some review of the quality

and quantity of the medical evidence provided by Ms. Bayonne, and the opinions on both

sides of the issues. Without this type of review, this Court would be rendered to nothing

more than a rubber stamp for Defendants decision as long as the plan was able to find a

single piece of evidence, no matter how obscure or untrustworthy, to support a denial of

Ms. Bayonne's claim for benefits. See Hackett v. Xerox Corp. Long-Term Disability

Income Plan, 315 F.3d 771, 774-775 (7th Cir.2003)("Review under the deferential

arbitrary and capricious standard is not a rubber stamp and deference need not be abject.

Even under the deferential review we will not uphold a termination when there is an

absence of reasoning in the record to support it.")

In the instant case, there was an absence of reasoning why the Defendants failed

to request and conduct a psychiatric/neurocognitive IME, but used to two neurologists

and one functional capacity evaluation to conclude that Ms. Bayonne was consciously

forcing her symptoms and was controlled by symptom magnification. This Court cannot

reasonably defer to the opinions of Defendants physician consultants Drs. Broder,

Griffin, Gross and Sweet, because each opinion was tainted with the presumption Ms.

Bayonne was faking her illness for the singular purpose of denying the claim. The

Defendants decision to deny benefits was an abuse of discretion.

There was also an absence of reasoning by the Defendants, because even their

own physician consultants admitted and agreed with Ms. Bayonne's treating physicians,

that the damage caused by the acoustic neuroma was possibly more extensive and defied

any conclusive medical explanation. (Plaintiff's Statements of Facts ¶¶ 32,36,

37,43,44,50,57,62,63,67,70,72,75). The absence of a conclusive medical explanation is

not a valid ground to reasonably deny disability benefits. Rose v. Shalala, 34 F.3d 13, 18

22

(1994) ("the absence of definitive diagnostic tests . . .makes it plain that the failure of some doctors to state conclusive diagnoses does not constitute substantial evidence to support a finding that claimant did not suffer from the syndrome.").

As a direct and proximate result of the Defendant Plan Administrator's and Defendant Disability Department's breach of their fiduciary duties owing to Ms. Bayonne, she has been unlawfully denied long-term disability benefits to which she is entitled under the plan. (Plaintiff's Statement of Facts ¶¶ 144, 145).

## 2. Defendants Conflict of Interest Requires De Novo Review

Ms. Bayonne next argues that the Defendants denial of long term disability benefits requires a de novo review on the grounds of a controlling conflict of interest. (Plaintiff's Statement of Facts ¶ 142).

In this circuit, a conflict of interest results in a <u>de novo</u> review based upon a two-prong test for determining the proper level of deference to accord the plan administrator:

> First, whether the determination made by the administrator is reasonable, in light of possible competing interpretations of the plan; [and] second, whether the evidence shows that the administrator was in fact influenced by such conflict. If the court finds that the administrator was in fact influenced by the conflict of interest, the deference otherwise accorded the administrator's decision drops away and the court interprets the plan de novo.

<u>Sullivan</u>, 82 F.3d at1255-56.

The Second Circuit has yet to adopt a standard governing what must be shown in order to prove a causal relationship between the conflict and the decision. However, courts that have set such a standard have required only that a plaintiff show: "...that the conflict or procedural irregularity has 'some connection to the substantive decision reached.'" <u>Woo v. Deluxe Corp.</u>, 144 F.3d

1157,1161 (8ᵗʰ Cir.1998).1  In the instant case, the facts demonstrate that

Defendants conflict of interest coupled with procedural irregularities has a direct

connection to the substantive decision reached on August 8, 2003.

Recently the Ninth Circuit provided further guidance on conflicts of

interests:

> There is an apparent conflict of interest here, because Black & Decker is
> both the administrator and the funding source for the Plan. See Nord I, 296
> F.3d at 828. To create a rebuttable presumption that Black & Decker in
> fact violated its fiduciary obligations, we require "material, probative
> evidence, beyond the mere fact of the apparent conflict, tending to show
> that the fiduciary's self-interest caused a breach of the administrator's
> fiduciary obligations to the beneficiary." Atwood v. Newmont Gold Co.,
> Inc., 45 F.3d 1317, 1323 (9th Cir.1995). As the district court and we stated
> in Nord I, "material, probative evidence" may consist of "inconsistencies
> in the plan administrator's reasons, insufficiency of those reasons, or
> procedural irregularities in the processing of the beneficiaries claims."
> Nord I, 296 F.3d at 829 (internal citations omitted). If there is probative
> evidence of a conflict of interest and Black & Decker cannot rebut it, the
> denial of benefits is reviewed de novo.

Nord v. Black & Decker Disability Plan, 356 F.3d 1008, 1010 (9ᵗʰ Cir. 2004).

Ms. Bayonne demonstrates herein that the Defendants Plan Administrator

and Disability Department were in fact influenced by a conflict of interest due to

the inconsistencies and insufficiency in Defendants reasoning. For example, Dr.

Broder admitted that there existed a possibility Ms. Bayonne's acoustic neuroma

tumor may have caused more damaged than he was able to medically detect, even

though he did not personally examine her.  Yet, he and the Defendants never

---

1 Other circuits follow variations on the same approach, either granting de novo
review if the conflict influenced the decision or simply granting less and less deference
based upon the magnitude of the conflict.  See e.g. Doe v. Group Hospitalization &
Medical Services, 3 F.3d 80 (4th Cir. 1993)(less deferential review); Sweatman v.
Commercial Union Ins. Co., 39 F.2d 594, 599 (5th Cir. 1994)(heightened scrutiny); Woo
144 F.3d at 1161.

made a further investigation into this issue and arbitrarily and capriciously

concluded she suffered from conscious forcing and symptom magnification.

(Plaintiff's Statements of Fact ¶ 63, 67, 68, 75, 79). Adding further insult, Dr.

Broder admitted, "the reasons for conscious forcing are therefore then known only

to Ms. Bayonne." (Plaintiff's Statement of Facts ¶ 68). The possibility of

additional damage caused by the acoustic neuroma tumor was also realized by

Ms. Bayonne's treating physicians and forensic experts. (Plaintiff's Statement of

Facts ¶ 70, 104). In addition, the Defendants committed an abuse of discretion

when they concluded Ms. Bayonne's symptoms were completely controlled by

"tremendous symptom magnification." (Plaintiff's Statement of Facts ¶ 67);

Compare (Plaintiff's Statement of Facts ¶ 83). Please note Defendants adjective

usage was not "slight" symptom magnification but "tremendous" symptom

magnification, providing direct evidence of its certainty that Ms. Bayonne was

feigning or faking her disability. Under this optic, there was never any room for

medical inconsistencies by the Defendants physician consultants or the immediate

possibility Ms. Bayonne's acoustic neuroma tumor caused more physical damage

than any physician, on either side, could medically verify.

　　　　The Defendants decision was also not reasonable because their physician

consultant Dr. Griffin prescribed a psychiatric treatment regime in response Dr.

Einbinder's November 12, 2002 letter, in clear violation of the plan. (Plaintiff's

Statement of Facts ¶ 136).

　　　　The Defendants also exhibited procedural irregularities in the

administration of the plan benefits. (See Section Three infra).

The Defendants decision was also not reasonable because their own internal physician consultants Dr. Gross and Dr. Griffin opined that Ms. Bayonne was capable of performing sedentary work. (Plaintiff's Statement of Facts ¶¶ 67,75); Mein v. Pool Co. Disabled Int'l Employee Long Term Disability Benefit Plan, 989 F.Supp. 1337, 1350 (D.Colo.1998)(holding that a plan administrator's decision to deny ERISA benefits was arbitrary and capricious where it was based upon a physician's opinion that the claimant may be capable of some sedentary work).

The Defendants decision to deny benefits was also not reasonable because Ms. Bayonne provided substantial objective medical documentation to support her claim.

The Defendants decision to deny benefits was also not reasonable because they concluded that Ms. Bayonne continued to work while complaining of the same symptoms that eventually led to her total disability. On November 22, 2002, Dr. Griffin stated, "these facts coupled with the ee's demonstrated ability to perform her job over the past two years since her original surgery leads me to conclude that she has work capacity for her position as a cashier." (Plaintiff's Statement of Facts ¶¶ 75, 129). In the August 8, 2003 final denial letter, Defendants stated in response to Dr. Drazinic's statement that she continued to work with symptoms, "the Committee interpreted that statement to mean that even if those symptoms existed, they were not disabling." (Plaintiff's Statement of Facts ¶ 13). The Defendants further stated, "the Committee noted that many of your symptoms had existed prior to your surgery and had not prevented you from working." (Plaintiff's Statement of Facts ¶ 135). In Hawkins v. First Union Corp. Long Term Disability Plan, 326 F.3d 914, 918 (6th Cir.2003), Judge Posner ruled such argument is a "bad argument," "A desperate person might force himself to work despite an illness that

26

everyone agreed was totally disabling (citations omitted). Yet even a desperate person

might not be able to maintain the necessary level of effort indefinitely. . .A disabled

person should not be punished for heroic efforts to work by being held to have forfeited

his entitlement to disability benefits should he stop working."

Ms. Bayonne has been treated and sought medical evaluations, both before and

after her acoustic neuroma surgery on April 19, 2000, for significant headaches and

vertigo.  The objective medical evidence supports the existence of her headaches and

vertigo, among other totally disabling conditions, as a significant aspect of her total

disability. (Plaintiff's Statement of Facts at ¶¶ 25, 26, 32, 36, 37, 43, 70,71,72,105).

The Second Circuit has recently held an insured's objective complaints of pain are

to be considered in the evaluation of and may be demonstrative of a total disability:

> It has long been the law of this Circuit that "the subjective element of pain is an
> important factor to be considered in determining disability." Mimms v. Heckler,
> 750 F.2d 180, 185 (2d Cir.1984). While a district court reviewing an
> administrator's decision de novo is not required to accept such complaints as
> credible, see Aponte v. Sec'y of the Dep't of Health & Human Servs., 728 F.2d
> 588, 591 (2d Cir.1984) (stating that it is the function of the factfinder to appraise
> the credibility of witnesses's complaints of pain), **it cannot dismiss complaints of
> pain as legally insufficient evidence of disability**, see Rivera v. Schweiker, 717
> F.2d 719, 724 (2d Cir.1983) (citing plaintiff's frequent complaints to his wife and
> neighbor of headaches and neck pains and his testimony about same as
> "overwhelming, substantial evidence" of the extent of plaintiff's pain); Marcus v.
> Califano, 615 F.2d 23, 27 (2d Cir.1979) ( "[T]he subjective evidence of
> appellant's pain, based on her own testimony and medical reports of examining
> physicians, is more than ample to establish her disability, if believed.").

Connors v. Connecticut General Life Ins. Co., 272 F.3d 127, 136-137 (2d Cir.

2001).

In Barber v. Beech Aircraft Corp, the Court held in favor of a claimant

with acoustic neuroma because although Barber's physicians were not able "to

explain the severity of plaintiff's complaints under current diagnostic technology,

Dr. Mastio simply concluded that plaintiff's pain must not be so severe as to warrant a finding of total and permanent disability." 1991 WL 192121 (D.Kan.1991).

In the instant case, the Defendants physician consultants simply concluded that Ms. Bayonne's on-going and progressive complaints of pain were not medically verifiable and did rise the level of total disability. On September 16, 2002, Dr. Broder stated, "report of headaches, a self-report symptom, that has yet to be objectively substantiated." (Plaintiff's Statement of Facts ¶ 57). On October 2, 2002, Dr. Broder again stated "Ms. Bayonne has been afflicted with headaches since 1993, therefore, there is absence of any causal relationship between the acoustic neuroma surgery and the headaches." (Plaintiff's Statement of Facts ¶ 62). On October 29, 2002, Dr. Gross stated, "I believe her symptoms post-operatively are primarily characterized by symptom magnification and has no bearing on any organic structural disability incurred from the operation." (Plaintiff's Statement of Facts ¶ 67). On November 1, 2002, Dr. Broder again stated, "it is medically evident that the neurologic and physiatric treatment to Ms. Bayonne in the past and currently, would be unrelated to any anatomical, pathophysiological condition that can be corroborated and substantiated by valid, neurological assessments." (Plaintiff's Statement of Facts ¶ 68). On November 22, 2002, Dr. Griffin stated, "while I do not doubt the presence of this ee's intermittent symptoms of her fatigue and vertigo they do not appear to be of a severity which would warrant total & permanent disability." (Plaintiff's Statement of Facts ¶ 75).

Ms. Bayonne asserts that her treating physicians should be afforded more weight than that of the Defendants. "There is no 'treating physician rule' in ERISA disability cases, although "[p]lan administrators ... may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." Black & Decker Disability Plan v. Nord, 538 U.S. 822, 123 S.Ct. 1965, 1972, 155 L.Ed.2d 1034 (2003). Judge Posner in the Sixth Circuit provides helpful guidance when balancing the credibility of competing physicians:

> If the incentives of the treating physician and of the plan's consultant are assumed to be equal and opposite, consideration of incentives drops out and the superior information likely to be possessed by the treating physician, especially when as in this case the consultant does not both to examine the patient, may support the treating-physician presumption after all.

Hawkins v. First Union Corp. Long Term Disability Plan, 326 F.3d 914, 917(6th Cir.2003).

In the instant case, the Defendants refused to credit Ms. Bayonne's treating physicians that she was totally disabled from medical symptoms associated with her acoustic neuroma tumor, instead relying upon an un-credible conclusion of "tremendous symptom magnification." (Plaintiff's Statement of Facts ¶ 67) If Defendants had credited Ms. Bayonne's reliable evidence, they would have been forced to recognize the realistic possibility her acoustic neuroma tumor caused more damaged than any physician on either side could medically verify. Although not examining her personally, Dr. Broder commented on this specifically, "the tumor may have invaded the nerve, prior to surgery." (Plaintiff's Statement of Facts ¶ 63). Even Dr. Gross, having examined Ms. Bayonne, recognized "she demonstrated an irregular, unusual type of tremor." (Plaintiff's Statement of Facts ¶ 67). The Defendants failed to develop all available evidence and

consider relevant evidence that might reasonably be expected to affect the outcome, thus

their decision was not supported by substantial evidence. Barber, 1991 WL 192121 *16.

It was just easier for the Defendants to conclude she was faking her disability,

then to pay out on the claim. See Connors, 272 F.3d at 135-136 ("In any event, it seems

anomalous to give less weight to someone in Dr. Reddy's position than to the views of

professionals hired by plaintiff's adversary, an insurance company."). A court may review

skeptically an administrator's decision to afford decisive weight to the opinions of its

own staff/paid consultants and to minimize those of the treating doctor. Hines v. Unum

Life Ins. Co. of Am., 110 F. Supp.2d 458, 467 (W.D.Va. 2000); See also, Pappas v.

Reliance Standard Ins. Co., 20 F. Supp.2d 923, 931 (E.D.Va. 1998).

Ms. Bayonne's treating physicians, having observed her over an extended period,

were in a unique position to fully assess a claimant's functional capacity. Edgerton v.

CNA Insur. Co., 215 F. Supp.2d 541 (E.D. Pa. 2002) citing Skretvedt v. E.I. Dupont De

Nemours and Co., 268 F.3d 167 (3rd Cir. 2001); Cohen v. Standard Ins. Co., 155 F.

Supp.2d 346, 352 (E.D.Pa. 2001); Siebert v. Standard Ins. Co. Group LTD Policy, 220

F.Supp. 2d 1128 (C.D.Ca. 2002); Walker v. LTD Plan of Sponsor Tri-Valley Growers,

2002 WL 467684 (N.D.Ca. 2002) and Durr v. Metropolitan Life Ins. Co., 15 F.Supp.2d

205, 213 (D.Conn.1998) (holding the following factors to be used to determine how

much weight to give a treating physician's opinion on the nature and severity of an

individual's impairments include " '(i) the frequency of the examination and the length,

nature, and extent of the treatment relationship; (ii) the evidence in support of the

opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the

opinion is from a specialist; and (v) other relevant factors' ". (quoting Social Security

standards from 20 C.F.R. § 404.1527(d)(2)-(6)); <u>Piscottano v. Metropolitan Life Ins.</u>
<u>Co.</u>,118 F.Supp.2d 200, 212 (D.Conn.9/22/00)(JBA).

    In their denial letters, the Defendants asserted that Ms. Bayonne is not totally
disabled due to "symptom magnification." Ms. Bayonne retained forensic experts who
ruled out this allegation to deny benefits. The Defendants have never requested an
independent medical examination from a psychiatrist or psychologist. This failure
supports Ms. Bayonne's assertion that Defendants acted unreasonably in denying her
STD and LTD claims. See, <u>Sullivan</u>, 82 F.3d at 1255-56.  However, the Defendants did
conduct two IME's using two allegedly "independent consultant" neurologists. Both Drs.
Gross and Sweet opined that Ms. Bayonne does not provide objective medical evidence
to support her total disability, and the only rationale offered is that of symptom
magnification. The irony here is that if the Defendants did conduct a psychiatric IME, the
findings would support Ms. Bayonne's conclusion from her experts rendered on June 11,
2003, that symptom magnification did not exist.

    Ms. Bayonne asserts that the Defendants decision was also not reasonable
because she was award SSDI benefits. On April 19, 2003, Ms. Bayonne was
informed in writing that the Social Security Administration had approved her
claim for disability income benefits, based on the same medical evidence
provided to Pitney Bowes. (Revised Amended Complaint at ¶ 58);(Plaintiff's
Statement of Facts ¶ 96)  Ms. Bayonne was found to be totally disabled from any
occupation, in light of her age, education, experience and training, even in the
absence of her June 11, 2003 psychiatric/neurocognitive IME report.

31

The Pitney Bowes SPD (Section 5.13(a) and (c)) requires all participants to file for SSDI benefits, as a condition of receiving LTD benefits. (Plaintiff's Statement of Facts: Appendix A);(Revised Amended Complaint at Exhibit B).  Ms. Bayonne applied and successfully obtained SSDI benefits on April 19, 2003. This action met her obligations under the LTD plan.  Such claim file is now incorporated in its entirety herein by reference.

The Courts have consistently stated that proof of a disability award from the Social Security Administration, while not controlling on a plan administrator (See e.g., Anderson v. Operative Plasterers' & Cement Masons' Int'l. Assoc., 991 F.2d 356 (7th Cir.1993)(Social Security determination of disability not dispositive of disability under pension plan), does provide additional evidence in which to determine an abuse of discretion under the arbitrary and capricious standard of review. See e.g. Ladd v. ITT Corp., 148 F.3d 753, 755-56 (7th Cir.1998)(considering grant of social security benefits when determining whether insured's denial was arbitrary and capricious under ERISA); Dorsey v. Provident Life and Accident Ins. Co., 167 F.Supp.2d 846, 857, FN11 (E.D.Pa.2001), ("But while an SSA award is not dispositive in determining whether an ERISA administrator's decision was arbitrary and capricious, it may be considered as a factor").

Presumably, the Defendants obtained a copy of the SSDI decision, due to the requirements and signed releases contained in the Summary Plan Description. (Plaintiff's Statement of Facts: Appendix A (Administrative Appeal Record).  The Defendants never provided a "reasonable explanation" for the continued denial of benefits in full view of the SSDI determination. There is an irony arising from Defendants omissions on this

32

issue. Once the SSDI benefits were approved, the Defendants could offset Ms. Bayonne's LTD award dollar for dollar, thus reducing the overall LTD payment made by the plan. A financial incentive and benefit to the Defendants. (Plaintiff's Statement of Facts ¶ 142).

Although the Defendants state in the SPD that Social Security Disability rulings are not relevant (Plaintiff's Statement of Facts ¶ 97), the overwhelming weight of legal authority and the objective medical evidence in this case indicate that Ms. Bayonne's April 19, 2003 SSDI decision must be determinative.

As a direct and proximate result of the Defendant Plan Administrator's and Defendant Disability Department's breach of their fiduciary duties owing to Ms. Bayonne, she has been unlawfully denied long-term disability benefits to which she is entitled under the plan. (Plaintiff's Statement of Facts ¶¶ 144, 145).

### 3. Defendants Violated ERISA Notice Requirements Militates In Favor of Summary Judgment For Ms. Bayonne

ERISA requires the Defendants must "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant." 29 U.S.C. § 1133; (Plaintiff's Statement of Facts ¶¶ 134,135, 137).

In addition, the Defendants plan procedures must "afford a reasonable opportunity . . .for a full and fair review" of denials. Id. As the Second Circuit has explained, the purpose of these requirements is twofold: "First, notice can provide the member with information necessary for him or her to know what he or she must do to obtain the benefit. Second, if the HMO persists in its denial, notice can enable the member

effectively to protest that decision." <u>Juliano v. Health Maintenance Organization of New</u>

<u>Jersey, Inc.</u>, 221 F.3d 279, 287 (2d Cir.2000).

In furtherance of these mandates, Department of Labor regulations require that

plans must provide claimants with written notification of claim denials including the

following information:

    (i)     the specific reason or reasons for the adverse determination;

    (ii)    reference to the specific plan provisions on which the determination is
           based;

    (iii)   a description of any additional material or information necessary for the
           claimant to perfect the claim and an explanation of why such material or
           information is necessary.

29 C.F.R. § 2650.503-1(g). The regulations further require that in the case of a plan

providing disability benefits,

> [i]f an internal rule, guideline, protocol, or other similar criterion was relied upon
> in making the adverse determination, [the notification shall set forth] either the
> specific rule, guideline, protocol, or other similar criterion; or a statement that
> such a rule, guideline, protocol, or other similar criterion was relied upon in
> making the adverse determination and that a copy of such rule, guideline,
> protocol, or other criterion will be provided free of charge to the claimant upon
> request.

29 C.F.R. § 2650.503-1(g)(v). The regulations specify that claims procedures for a plan

"will be deemed to be reasonable only if [they] comply" with these requirements. 29

C.F.R. § 2650.503-1(b)(1).

A violation of ERISA and its implementing regulations has been held to

constitute "a significant error on a question of law," <u>VanderKlok v. Provident Life and</u>

<u>Acc. Ins. Co, Inc.</u>, 956 F.2d 610, 616 (6th Cir.1992); <u>Omara v. Local 32B-32-J Health</u>

<u>Fund</u>, No. 97 Civ.7538, 1999 WL 184114 at *4 (E.D.N.Y. March 30, 1999), and may

"sufficiently taint [the fiduciary's] denial of [benefits] so as to warrant a finding that [the

denial] was arbitrary and capricious." <u>Veilleux v. Atochem North America, Inc.</u>, 929 F.2d

74, 76 (2d Cir.1991); see also Burke Kodak Retirement Income Plan, 336 F.3d 103, 109

(2d Cir.2003)(inadequacy of denial notice estopped defendant from raising time-bar

provision in plan terms as a defense); Veltri v. Building Service 32B-J Pension Fund,

No.02 Civ. 4200, 2003 WL 22705124, at *4 (S.D.N.Y. Nov.17, 2003)(same); Gilbert v.

Burlington Industries, Inc., 765 F.2d 320, 328-29 (2d Cir.1985)(although employer was

not estopped from raising preemption as a defense to ERISA suit, district court could

determine "whether employer's violations sufficiently tainted its denial of severance pay

so as to warrant finding that it was arbitrary and capricious").

Ms. Bayonne asserts the Defendants failed to afford her a full and fair review of

her claim for benefits because at each stage of the STD and LTD review process at which

her claim was denied the Defendants failed to provide her with adequate notice as to what

additional medical documentation would be required to cure the defect in her application

and supporting documents pursuant to 29 C.F.R. § 2650.503-1(g)(iii). See Barber, 1991

WL 192121, *15. (Plaintiff's Statement of Facts ¶ 143). This failure violated ERISA and

its implementing regulations, thereby rendering the Defendants resulting determination

arbitrary and capricious.

Neither a specific, express inquiry on the part of the Defendants, fiduciaries, is a

necessary predicate to finding an ERISA violation. Hudson, 118 F.Supp.2d at 247. "In

explicating the nature of fiduciary duties under ERISA, courts have long found that

omissions may be actionable, as well as positive statements." Id. See Pocchia v. NYNEX

Corp., 81 F.3d 275, 279 (2d Cir.1996) (employer had fiduciary duty not to make

affirmative misrepresentations or omissions). "For example, in Becker v. Eastman

Kodak, 120 F.3d 5 (2d Cir.1997), the Second Circuit found a breach of fiduciary duty,

based partially on the fact that the benefits counselor failed to provide 'complete and accurate information' about the mechanics and timing of the election to retire. . . the court citing approvingly cases such <u>Eddy v. Colonial Life</u>, 919 F.2d 747 (D.C.Cir.1990) (employer has not only duty not to misinform but also "a duty upon inquiry to convey to a lay beneficiary . . . correct and complete material information about his status and options.") and <u>Bixler v. Central Pennsylvania Teamsters Health and Welfare Fund</u>, 12 F.3d 1292 (3d Cir.1993)(failure to advise beneficiary of benefits available to her was breach of fiduciary duty, even when inquiry limited.)" Id.

A fiduciary like the Defendants cannot leave its front-line benefits counselors in the dark, or instruct them to give noncommittal and nonfactual responses to inquiries regarding potential benefit changes, if the information that is withheld is material to beneficiaries. Here, the Defendants continually failed to advise Ms. Bayonne what additional medical documentation was required to perfect her claim for benefits, even after she pleaded with them for assistance. (Plaintiff's Statement of Facts ¶¶ 49, 71). Such a stance is inconsistent with the mandate that a fiduciary discharge its duties with care, skill, prudence and diligence required by the statute and Defendants own plan terms. (Plaintiff's Statement of Facts ¶ 14); 29 U.S.C. § 1104(a)(1)(B); <u>Donovan</u>, 680 F.2d at 271 (pursuant to a fiduciary's duty of loyalty, all decisions regarding an ERISA plan "must be made with an eye single to the interests of the participants and beneficiaries"). Even if the failure to provide complete and accurate information was unintentional, inadvertent omissions can also rise to the level of fiduciary breaches. See <u>Berlin v. Michigan Bell Telephone</u>, 858 F.2d 1154, 1163 (6th Cir.1988)(administrator and

fiduciary had duty "not to make misrepresentations, either negligently or intentionally, to potential plan participants").

Given the holding in <u>Donovan</u>, that a failure to provide a beneficiary with material information to their claim is inconsistent with the mandate that a fiduciary discharge its duties with care, skill, prudence and diligence required by the statute, it is clear that the Defendants breached their respective fiduciary duty to Ms. Bayonne in this case.

In determining whether the Defendant Plan Administrator and Defendant Disability Department breached their fiduciary duties pursuant to ERISA and its implementing notice regulations is necessarily a multi-step, fact-intensive inquiry. See <u>Halpin v. W.W. Grainger, Inc.</u>, 962 F.2d 685, 690 (7th Cir.1992). The focus is on what the Defendant Plan Administrator and Defendant Disability Department communicated to Ms. Bayonne in the letters informing her of the denials. The adequacy of the notice provided to Ms. Bayonne must be judged in the context of the determination that followed it. The Defendant Plan Administrator and Defendant Disability Department response to the subsequent June 11, 2003 appeal is relevant to whether Ms. Bayonne was in fact given sufficient notice in the denial letter dated December 16, 2002, as to what information would be necessary to perfect her claim. In order to evaluate the adequacy of the notice in this case, this Court must look first to what information was communicated to the Ms. Bayonne in the denial of the claim and to what information she submitted in response. Then the Court must determine whether the August 8, 2003 denial of the June 11, 2003 appeal is consistent with the rationale given in the first denial notice, dated December 16, 2002. From this comparison, Ms. Bayonne asserts that the Court will

discover the Defendants assertion in the August 8, 2003 denial that the information provided was insufficient and that they impermissibly relied upon additional factors that were never communicated to her.

In the December 16, 2002 denial letter, the Defendants informed Ms. Bayonne that the decision was based on reviews conducted by physician consultants Drs. Gross and Sweet and a functional capacity report. The primary basis for the denial was that Ms. Bayonne allegedly exhibited "tremendous" symptom magnification, a psychiatric condition, as the source of her disabling condition. (Plaintiff's Statement of Facts ¶ 79). However, the denial letter never provided reasonable or specific notice to Ms. Bayonne that she should obtain a psychiatric analysis to cure this alleged defect in her claim, in violation of 29 C.F.R. § 2650.503-1(g)(iii). Booton v. Lockheed Medical Benefit Plan, 110 F.3d 1461, 1463 (9th Cir. 1997) (failure to request information and adequately articulate denial to participant means court applies less deferential standard).

In addition, the denial letter also never provided reasonable and specific notice as to any other material that should be provided to cure the alleged defect in the claim, in violation of 29 C.F.R. § 2650.503-1(g)(iii). Ms. Bayonne asserts that had Defendant Plan Administrator and Defendant Disability Department provided such information, they would be "tipping her" off as to what information they believed would cure any defect in the claim and cause them to reverse their decision. Eventually, Ms. Bayonne would submit additional information clearly refuting the denial rationale (Plaintiff's Statement of Facts ¶¶ 98-113) of "tremendous symptom magnification", which was eventually minimized by the Defendants in the August 8, 2003 denial letter. (Plaintiff's Statement of Facts ¶¶ 116-133).

In addition, the December 16, 2002 denial letter states, "[A] copy of the guideline or protocol used to make this determination (if any) will be provided free of charge upon request." (Plaintiff's Statement of Facts ¶ 79). On January 21, 2003, Ms. Bayonne, through counsel, made two written requests to the Defendants for all "pertinent documents" used in forming the denial, including the "guideline or protocol". (Plaintiff's Statement of Facts ¶¶ 84,85, 86, 88);(Revised Amended Complaint ¶¶ 49, 50). The Defendant Plan Administrator and Defendant Disability Department response was due by February 20, 2003. The Defendant Plan Administrator and Defendant Disability Department did not respond to the letter, nor provided the "guideline or protocol."

On February 14, 2003, Ms. Bayonne's attorney telephoned Defendant Plan Administrator's and Defendant Disability Department's benefits attorney Michael Lalli requesting copies of the STD and LTD claim files, and notified him that Ms. Bayonne was to undergo a psychological review by a forensic psychiatrist. (Revised Amended Complaint at ¶ 53); (Plaintiff's Statement of Facts ¶¶ 91, 87).

On March 2, 2003, Ms. Bayonne, through counsel, sent another written request for copies of the STD and LTD claim files. Ms. Bayonne notified Defendants she had not received the requested information and that the Defendant Plan Administrator and Defendant Disability Department had violated ERISA and subject to a $110 per day penalty. (Revised Amended Complaint at ¶ 54); (Plaintiff's Statement of Facts ¶¶ 92,93). The Defendant Plan Administrator and Defendant Disability Department finally produced the requested documents on March 10, 2003, some fifty (50) days after it was requested. (Revised Amended Complaint at ¶ 55); (Plaintiff's Statement of Facts ¶ 94). However, the Defendant Plan Administrator and Defendant Disability Department failed to provide

any "guideline or protocol" used in rendering the December 16, 2002 denial, in violation

of 29 C.F.R. § 2650.503-1(g)(v).  Marolt v. Alliant Techsystems, Inc., 146 F.3d 617, 620

(8th Cir.1998) ("We will not permit ERISA claimants denied the timely and specific

explanation to which the law entitles them to be sandbagged by after-the-fact plan

interpretations devised for purposes of litigation.").

        The notice violations mentioned above were arbitrary and capricious and

substantial enough to invalidate the Defendants determination on August 8, 2003 and

militate an award of summary judgment in Ms. Bayonne's favor. See Veilleux, 929 F.2d

at 76; VanderKlok, 956 F.2d at 616; Omara, 1999 WL 184114, at *4.  (Plaintiff's

Statement of Facts ¶¶ 144, 145).

**IV.    CONCLUSION**

        The administrative record in this case contains nothing more than scraps of

evidence to offset the evidence presented by Ms. Bayonne and her treating

physicians/forensic experts. The Defendants denial of the application was unreasonable

and should be reversed, with costs and attorneys fees to Ms. Bayonne.

                                        GERTRUDE BAYONNE
                                        Plaintiff

                                        By: _____
                                        Mark P. Carey (ct17828)
                                        Carey & Associates, P.C.
                                        71 Old Post Road, Suite One
                                        Southport, CT 06890
                                        (203) 255-4150 tel.
                                        (203) 255-0380 fax.
                                        Mcarey@capclaw.com
                                        Her Attorney

                                        40

## CERTIFICATION OF SERVICE

This is to certify that a copy of the foregoing was delivered on this the 6th day of May, 2004 via United Parcel Service Second Day delivery, fee prepaid, to:

Theodore J. Tucci
Robinson & Cole, LLP
280 Trumbull Street
Hartford, CT 06103
Counsel for Defendants

Sandra R. McCandless
Joanne M. Krakora
Nichole A. Diller
Sonnenschein, Nath & Rosenthal, LLP
685 Market Street, 6th Floor
San Francisco, CA 94105
Counsel for Defendants

Mark P. Carey