(which was later placed in the claim file - See Appendix A: Administrative Record at p.

318), which states:

> Upheld denial of STD. A review of ee's private neurologist's appeal letter along
> with the IME performed by Dr. Elliott Gross reveals a history of intermittent
> headaches, vertigo and fatigue coupled with a partial CRN VII and VIII paralysis
> as a consequence of her acoustic neuroma reseaction two years ago. No other
> consistent neurological deficits were observed at the performance of the IME. Dr.
> Einbinder, the treating neurologist made no attempt to deny or discredit Dr.
> Gross's findings of symptom magnification. **Dr. Einbinder's suggestion that a**
> **psychiatric IME be considered as a means of addressing the ee's**
> **somatization appears inconsistent with her medical care of this ee. If she felt**
> **psychiatric, nonorganic complaints were of a psychiatric, nonorganic nature**
> **then it would be incumbent on her to make this referral as the ee's treater.**
> While I do not doubt the presence of this ee's intermittent symptoms of her
> fatigue and vertigo they do not appear to be of a severity which would warrant
> total & permanent disability, as the voiced by the ee & her physician. As a recent
> functional capacity evaluation was performed on 09/18/02 to objective assess the
> ee's work capacity this evaluation demonstrated subconsistent effort & symptom
> magnification. Despite these difficulties it was felt that she minimally qualified
> for sedentary work without the implication that she could perform high levels of
> work were she put forth a greater effort. These facts coupled with the ee's
> demonstrated ability to perform her job over the past 2 years since her original
> surgery leads me to conclude that she has work capacity for her position as a
> cashier.

See Appendix A: Administrative Record at pp.92-93, 318.

76.     On November 25, 2002, the Defendants sent Plaintiff a letter denying her

short term disability benefits appeal, and stated in pertinent part "based upon the

information provided, it has been determined that your condition does not meet the total

disability requirement to qualify for short term disability benefits for the following

reason(s): medical documentation does not support your continued disability. The denial

date of 11/5/2002 has been upheld." See Appendix A: Administrative Record at p. 276.

77.     Defendants admit that Plaintiff submitted an application for long-term

disability benefits to the Plan Administrator on or around November 27, 2002, which was

dated November 27, 2002 and sent by United Parcel Service overnight delivery. See

22

Defendants Answer at ¶ 44, Revised Amended Complaint at ¶ 44 and Appendix A:

Administrative Record at pp. 208-228, 229-249.

78.    Defendants admit that Peter Griffin, M.D., who never personally

examined Plaintiff, prepared a memo dated December 5, 2002 to Defendants, which

stated, "deny LTD benefit. See STD denial of 11/22/02" Defendants Answer at ¶ 46,

Revised Amended Complaint at ¶ 46 and Appendix A: Administrative Record at p. 81.

79.    On December 16, 2002, Defendants sent a letter to Plaintiff denying her

short term disability benefits. The letter states in pertinent part,

> Effective, 11/5/2002, you do not qualify for benefits under the Pitney Bowes Inc.
> Long Term Disability Plan (the "Plan"). Therefore, your Plan benefits will be
> denied, effective, 11/5/2002. This decision was based upon a review by Pitney
> Bowes' Physician Consultant, Dr. Peter Griffin, of medical information received
> from your physician. In addition to Dr. Peter Griffin, the following medical
> expert's advice was obtained on behalf of the Plan in connection with your claim:
> Dr. Elliot G. Gross, neurologist, and Edward M. Velasquez, physical therapist.
> The medical information received for review, does not substantiate that you are
> totally disabled for your own occupation as defined in Section 2.33(a) of the Plan
> (copy attached). More specifically, the Functional Capacity Evaluation which was
> performed at your home on September 18, 2002 you demonstrated a sub-
> consistent effort and tested positive for Waddell's Non-Organic Signs of symptom
> magnification. Dr. Elliot G. Gross' evaluation on 10/15/02 determines that your
> symptoms post-operatively are primarily characterized by symptom magnification
> and has no bearing on any organic structural disability incurred from the
> operation. In addition, Dr. Gross also feels that you can continue to work as a
> cashier without any restrictions. A copy of the guideline or protocol used to make
> this determination (if any) will be provided free of charge upon request.

See Appendix A: Administrative Record at pp. 258-259.

80.    Defendants December 16, 2002 denial letter of Plaintiff's long term

disability benefits was sent nineteen (19) days after she filed her application for welfare

benefits under the Pitney Bowes Inc. Long Term Disability Plan. See Revised Amended

Complaint at ¶ 47 and Appendix A: Administrative Record at pp.229-233, 258-259.

81.     Defendants December 16, 2002 denial letter of Plaintiff's long term disability benefits did not provide reasonable notice as to what additional medical information and documentation the Defendants required that Plaintiff could submit to reverse the adverse determination of her welfare benefits under the Pitney Bowes Inc. Long Term Disability Plan.  See Appendix A: Administrative Record at pp.258-259.

82.     Defendants admit that, by letter dated December 16, 2002, Plaintiff was notified of the determination that she was not entitled to long-term disability benefits under the terms of the Plan. See Defendants Answer at ¶ 47.

83.     Defendants admit that Plaintiff's symptom magnification formed "a basis" for her ineligibility for benefits under the Plan. See Defendants Answer at ¶ 47.

84.     Defendants admit receiving a letter dated January 21, 2003 from Plaintiff's counsel to Defendants benefits attorney Michael Lalli, which stated in pertinent part,

> First, I requested copies, and do so again herein, of the summary plan descriptions for both the Short Term Disability and Long Term Disability plans. In addition, I requested copies of the actual underlying plan documents and any amendments. You indicated that this would not be [sic] [a] problem.

See Revised Amended Complaint at ¶ 49 and Appendix A: Administrative Record at p. 253-256.

85.     Defendants admit receiving a letter dated January 21, 2003 from Plaintiff's counsel to Defendants benefits attorney Michael Lalli, which stated in pertinent part,

> Second, I requested a copy of all pertinent documents used in forming the denial of the LTD claim.  Similarly, I now request copies of all pertinent documents used in forming the denial/discontinuance of the STD claim.  Ms. Bayonne's STD benefits were terminated before the expiration of the STD benefits.  Based on the limited summary description of benefits I have in my possession (1999 SPD and

24

> two amendments), I cannot determine whether Ms. Bayonne is required to exhaust her STD prior to filing an application for LTD benefits. The December 16, 2002 denial letter makes no reference to such an exhaustion requirement. Hopefully, the documents you will be providing will shed light on this and other issues.

See Revised Amended Complaint at ¶ 49 and Appendix A: Administrative Record at p.

253-256.

86.    Defendants admit receiving a letter dated January 21, 2003 from

Plaintiff's counsel to Defendants benefits attorney Michael Lalli, which stated in

pertinent part,

> On a speaking point, I inquired why the December 16, 2002 denial letter refers to the 'Effective date' of 11/5/02, when the LTD application was not formally received by the Plan Administrator until November 28, 2002, via overnight delivery. It appears that the LTD denial occurred prior to the receipt of the formal LTD application.

See Revised Amended Complaint at ¶ 49 and Appendix A: Administrative Record at p.

253-256.

87.    Defendants admit receiving a letter dated January 21, 2003 from

Plaintiff's counsel to Defendants benefits attorney Michael Lalli, which stated in

pertinent part,

> I further indicated that Dr. Einbinder had requested that the Plan Administration conduct a psychiatric Independent Medical Examination (IME) to rule out/in any psychiatric condition. This office will arrange a psychiatric IME to rule out this issue, and include the information in the final appeal that will be filed. As a standard of practice and as previously stated, we utilize a forensic psychiatric physician. In light of the alleged Plan Administrator's discretion to interpret the plan document and the subsequent Firestone standard of review, the Plan Administrator must now conduct such an IME. Any further denial after receipt of the appeal that does not include a psychiatric IME report, initiated by the Plan Administrator, will result in an arbitrary decision, i.e. a wrongful denial of claim.

See Revised Amended Complaint at ¶ 49 and Appendix A: Administrative Record at p.

253-256.

25

88.     Defendants admit receiving a letter dated January 21, 2003 from

Plaintiff's counsel to Defendants employee Phawana Chorinuea, which stated,

> This office has been retained by Gertrude Bayonne with regard to the denial of
> Long Term Disability application for benefits dated December 16, 2002. Pursuant
> to the Employee Retirement Income Security Act (ERISA), Ms. Bayonne is
> hereby requesting a copy of her LTD claim application ('pertinent documents').
> Please forward such claim file to this office upon your receipt of this file. This
> letter shall not be considered an appeal of the December 16, 2002 denial letter.

See Defendants Answer at ¶ 50, Revised Amended Complaint at ¶ 50 and Appendix A:

Administrative Record at p. 257-262.

89.     Defendants admit receiving a report dated June 11, 2003 from the

Connecticut Mental Health Center in relation to a psychiatric evaluation of Plaintiff. See

Defendants Answer at ¶ 52 and Appendix A: Administrative Record at pp. 390-431.

90.     On February 12 and 14, 2003, Plaintiff underwent extensive psychiatric

and neurocognitive testing by forensic experts at the Connecticut Mental Health Center

Law & Psychiatry Division, Department of Psychiatry, Yale School of Medicine. See

Revised Amended Complaint at ¶ 52 and Appendix A: Administrative Record at pp. 390-

431.

91.     Defendants admit that Michael Lalli, benefits counsel for Defendants, had

a telephone conversation with Plaintiff's counsel, on February 14, 2003, regarding

Plaintiff's counsel's request for copies of the STD and LTD claim files and notification to

the Defendants Plan Administrator that Plaintiff was being evaluated by a forensic

psychiatrist to rule our the issue of "symptom magnification." See Defendants Answer at

¶ 53 and Revised Amended Complaint at ¶ 53.

92.     Defendants admit receiving a letter dated March 4, 2003 from Plaintiff's

counsel, which stated in pertinent part,

26

> This letter is being sent as a follow up to our telephone conversation on February 24, 2003 and my previous two letters to Phawana Chaorinuea, Administrator Disability Claims, and your office on January 21, 2003.

See Defendants Answer at ¶ 54, Revised Amended Complaint at ¶ 54 and Appendix A:

Administrative Record at pp. 277-280.

93.     Defendants admit receiving a letter dated March 4, 2003 from Plaintiff's

counsel which stated in pertinent part,

> This letter will serve to notify the Plan Administrator for the Pitney Bowes, Inc. Long Term Disability Plan that the claimant/beneficiary Ms. Bayonne has not received any pertinent documents after her written request on January 21, 2003. Such documents should have been received by February 21, 2003. Thus, Pitney Bowes is in violation of ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4) . . .This letter serves to document such failure on the part of the Plan Administrator for the Pitney Bowes LTD Plan.

See Defendants Answer at ¶ 54, Revised Amended Complaint at ¶ 54 and Appendix A:

Administrative Record at pp. 277-280.

94.     Defendants admit that Pitney Bowes sent a letter to Plaintiff, dated March

10, 2003, wherein they provided the requested pertinent documents fifty (50) days after it

was requested,

> Per our telephone conversation enclosed is a copy of each of the following: (1) the file regarding the above claimant upon which the LTD denial was based; (2) the Pitney Bowes Disability Program; (3) Pitney Bowes Long Term Disability Plan (with Amendments); (4) Pitney Bowes Short Term Disability Policy.

See Defendants Answer at ¶ 55, Revised Amended Complaint at ¶ 55 and Appendix A:

Administrative Record at p. 1.

95.     Defendants admit receiving a letter dated March 14, 2003 from Plaintiff's

counsel, which stated in pertinent part,

> Please respond immediately upon your receipt of this letter and do not let this written request fall to the bottom of your paper file, just as you admitted happened

27

with the written request for Ms. Bayonne's STD/LTD ERISA Claim File, which
was received by this office on March 11, 2003.

See Defendants Answer at ¶ 56, Revised Amended Complaint at ¶ 56 and Appendix A:

Administrative Record at pp. 267-270.

96.    On April 19, 2003, the Social Security Administration approved Plaintiff's

claim for disability benefits[2], based on the same objective medical evidence provided to

the Defendants for purposes of both her short and long term disability benefits. See

Revised Amended Complaint at ¶ 58 and Appendix A: Administrative Record at p.336-

339.

97.    Defendants admit that the rigor of the Social Security Administration's

standard for determining disability has no relevance to Plaintiff's eligibility for benefits

under the terms of the Plan. See Defendants Answer at ¶ 58.

98.    Defendants admit receiving a letter dated June 11, 2003 from the

Connecticut Mental Health Center, written by Carolyn M. Drazinic, M.D., Ph.D., in

relation to a psychiatric evaluation of Plaintiff, which stated in pertinent part,

> [Conclusion] Ms. Bayonne demonstrates objective medical evidence which
> explain many of her symptoms. Therefore she does not meet criterion C1 of
> DSM-IV. Also, her complaints have not been in excess of what would be
> expected from the history for her symptoms. She has objective evidence of
> several of her impairments. Therefore, she does not meet criterion C2 of DSM-IV.

See Defendants Answer at ¶ 60, Revised Amended Complaint at ¶ 60 and Appendix A:

Administrative Record at pp.390-431.

---

[2] 20 C.F.R. § 404.1505(a): The law defines disability as the inability to do any substantial gainful activity
by reason of any medically determinable physical or mental impairment which can be expect to result in
death or which has lasted or can be expected to last for a continuous period of not less than 12 months. To
meet this definition, you must have a severe impairment, which makes you unable to do your previous
work or any other substantial gainful activity which exists in the national economy. To determine whether
you are able to do any other work, we consider your residual functional capacity and your age, education,
and work experience.

99.    Defendants admit receiving a letter dated June 11, 2003 from the

Connecticut Mental Health Center, written by Carolyn M. Drazinic, M.D., Ph.D., in

relation to a psychiatric evaluation of Plaintiff, which stated in pertinent part,

> [Conclusion] Some of Ms. Bayonne's symptoms predated the diagnosis of the left
> acoustic neuroma by a few years, but she was able to work. When she developed
> new symptoms after her surgery, she continued to try to work for two more years.

See Defendants Answer at ¶ 60, Revised Amended Complaint at ¶ 60 and Appendix A:

Administrative Record at pp.390-431.

100.    Defendants admit receiving a letter dated June 11, 2003 from the

Connecticut Mental Health Center, written by Carolyn M. Drazinic, M.D., Ph.D., in

relation to a psychiatric evaluation of Plaintiff, which stated in pertinent part,

> [Conclusion] Based on psychological testing, Ms. Bayonne does not demonstrate
> evidence of malingering which is criterion D. In addition, she was very consistent
> in her reporting of her symptoms, and her reports were verified by the medical
> records and documents that have been reviewed. She has not been identified as a
> hypochondriac by the physicians who had been treating her over the long term.

See Defendants Answer at ¶ 60, Revised Amended Complaint at ¶ 60 and Appendix A:

Administrative Record at pp.390-431.

101.    Defendants admit receiving a letter dated June 11, 2003 from the

Connecticut Mental Health Center, written by Carolyn M. Drazinic, M.D., Ph.D., in

relation to a psychiatric evaluation of Plaintiff, which stated in pertinent part,

> [Conclusion] Of note, during the psychological testing, as well as during
> psychiatric evaluation, it did appear that Ms. Bayonne developed a form of
> cognitive fatigue after lengthy testing. Also with speaking over a long period of
> time, her speech would become slightly more slurred. The cause of these
> symptoms is unclear.

See Defendants Answer at ¶ 60, Revised Amended Complaint at ¶ 60 and Appendix A:

Administrative Record at pp.390-431.

29

102.    Defendants admit receiving a letter dated June 11, 2003 from the

Connecticut Mental Health Center, written by Carolyn M. Drazinic, M.D., Ph.D., in

relation to a psychiatric evaluation of Plaintiff, which stated in pertinent part,

> [Conclusion] On the basis of this evaluation, I did not find any evidence in
> support of symptom magnification, hypochondriasis, or somatization disorder in
> Ms. Bayonne. She is neither preoccupied with her symptoms, nor does she refuse
> reassurance about her symptoms (ICD-10 criteria) In contrast, Ms. Bayonne tends
> to minimize her symptoms and tries her best to work through the symptoms. This
> is also evidenced by her repeated attempts to return to full-time work at Pitney
> Bowes for two years subsequent to her surgery, in spite of her deficits.

See Defendants Answer at ¶ 60, Revised Amended Complaint at ¶ 60 and Appendix A:

Administrative Record at pp.390-431.

103.    Defendants admit receiving a letter dated June 11, 2003 from the

Connecticut Mental Health Center, written by Carolyn M. Drazinic, M.D., Ph.D., in

relation to a psychiatric evaluation of Plaintiff, which stated in pertinent part,

> [Conclusion] There was a suggestion in some of the reports that Ms. Bayonne's
> multiple symptoms could not be accounted fully on the basis of her acoustic
> neuroma, and that therefore she was magnifying her physical symptoms. There
> were also some suggestion in the records that she was not providing adequate
> effort on certain tests for which feigning symptoms is possible. However, a few
> symptoms which have caused her to be unable to function adequately at her work
> place, particularly her facial nerve dysfunction (such as drying of her left eye
> cornea, difficulty closing her left eyelid), headache, her balance problems and
> difficulties with head motion, are reported sequelae [*disease or disorder that is
> caused by a preceding disease or injury*] of an acoustic neuroma and the surgery
> to remove the tumor. (For a review on this topic, please see 'Complications after
> acoustic neuroma surgery,' Chapter 19, by C.Y. Joseph Chang and Steven W.
> Cheung, in testbook *Acoustic Tumors: Diagnosis and Management*, Second
> Edition, Eds. W.R.House, C.M. Luetje, and K.J.Doyle, Singular Publishing
> Group, Inc. San Diego, 1997)

See Defendants Answer at ¶ 60, Revised Amended Complaint at ¶ 60 and Appendix A:

Administrative Record at pp.390-431.

30

104.    Defendants admit receiving a letter dated June 11, 2003 from the

Connecticut Mental Health Center, written by Carolyn M. Drazinic, M.D., Ph.D., in

relation to a psychiatric evaluation of Plaintiff, which stated in pertinent part,

> [Conclusion] Her poor vestibular compensation after surgery may also contribute
> to her significant balance difficulties. According to Dr. Kveton, her persisting
> vestibular dysfunction, which is unusual, nevertheless could not be feigned, based
> on objective vestibular testing conducted in his clinic. Even the mildest trauma to
> cranial nerve VII, such as with suctioning around it during the removal of the
> acoustic neuroma as it is dissected away from cranial nerve VII (facial nerve), can
> cause facial symptoms, and this is a common complication of the surgery (see
> chapter 16 titled, 'Facial nerve result,' by Rick A. Friedman and John W. House,
> in the same textbook as above). Small cerebrospinal fluid (CSF) leaks may occur
> even after the translabyrinthine surgical approach due to poor healing of the dura,
> and these leaks may contribute to her persisting headaches. In the chapter cited
> above, the authors state, 'the routes of potential CSF leakage in the
> translabyrinthine approach are quite complex. . .watertight dural closure is not
> possible. . .' (page 290).

See Defendants Answer at ¶ 60, Revised Amended Complaint at ¶ 60 and Appendix A:

Administrative Record at pp.390-431.

105.    Defendants admit receiving a letter dated June 11, 2003 from the

Connecticut Mental Health Center, written by Carolyn M. Drazinic, M.D., Ph.D., in

relation to a psychiatric evaluation of Plaintiff, which stated in pertinent part,

> [Conclusion] In discussing her case with her various treaters, there appears to be
> general agreement that Ms. Bayonne's symptoms of facial nerve dysfunction
> could be attributed to the surgery. There is some debate as to whether her
> headache and balance problems are from the surgery as well, but in light of the
> objective evidence of poor vestibular compensation, as well as the possibility of a
> small cerebrospinal fluid leak, these symptoms could be explained.

See Defendants Answer at ¶ 60, Revised Amended Complaint at ¶ 60 and Appendix A:

Administrative Record at pp.390-431.

106.    Defendants admit receiving a letter dated June 11, 2003 from the

Connecticut Mental Health Center, written by Carolyn M. Drazinic, M.D., Ph.D., in

relation to a psychiatric evaluation of Plaintiff, which stated in pertinent part,

> [Conclusion] With respect to her other symptoms unrelated to the acoustic
> neuroma, it is conceivable that Ms. Bayonne **may have developed a benign**
> **essential tumor over several years**. The source of the mild weakness on the left
> side of her body compared to the right and her tongue weakness is presently
> unclear to her treaters. Nevertheless, these symptoms appeared gradually over
> time, and she sought assistance from the Stamford Hospital for them several years
> before the discovery of the acoustic neuroma, and several years before a case of
> disability was made. There was no imaging evidence, nor was there a history,
> such as acute onset, consistent with a stroke to which these symptoms may
> possibly be attributed. **Nevertheless, Ms. Bayonne's difficulties with her work**
> **at Pitney Bowes did not appear to be due to her tremor or her mild left-sided**
> **weakness, because she was working through the duration of having these**
> **symptoms prior to surgery. She does not report applying for long-term**
> **disability on that basis, but rather on the basis of symptoms that are directly**
> **related to her acoustic neuroma and subsequent surgery**.

See Defendants Answer at ¶ 60, Revised Amended Complaint at ¶ 60 and Appendix A:

Administrative Record at pp.390-431.

107.    Plaintiff was evaluated by Madelon Baranoski, PhD, a clinical

psychologist at the Connecticut Mental Health Center for three hours on March 23, 2003,

three hours on March 28, 2003 and for twenty minutes on June 10, 2003, which resulted

in a report dated June 11, 2003. See Appendix A: Administrative Record at pp.408-411.

108.    Madelon Baranoski, PhD, a clinical psychologist at the Connecticut

Mental Health Center who evaluated Plaintiff, stated in her report dated June 11, 2003,

> Her gait was somewhat unsteady and she walked close to the wall steadying
> herself as she made her way to and from my office. Ms. Bayonne continued the
> unsteady gait and the supported walking even when unaware that she was being
> observed. When asked why she did not use a cane she explained that at times her
> balance is worse than others and depends on whether she has a headache or is
> fatigued.

See Appendix A: Administrative Record at pp.408-411.

109.    Madelon Baranoski, PhD, a clinical psychologist at the Connecticut

Mental Health Center who evaluated Plaintiff, stated in her report dated June 11, 2003,

> [Presentation] Ms. Bayonne showed no signs of malingering or exaggerating symptoms. She responded to the tasks with a quiet dignity, did not complain about the length of the test, and apologized when she was unable to complete a question. In my opinion, the results of the evaluation accurately represent her capacity.

See Appendix A: Administrative Record at pp.408-411.

110.    Madelon Baranoski, PhD, a clinical psychologist at the Connecticut

Mental Health Center who evaluated Plaintiff, stated in her report dated June 11, 2003,

> [Cognitive Evaluation] Overall the results showed no evidence of a psychotic process, disorganized thinking or of malingering. The results raise the possibility of depression and the possibility of an organic disorder that impairs visual-motor intergration.

See Appendix A: Administrative Record at pp.408-411.

111.    Madelon Baranoski, PhD, a clinical psychologist at the Connecticut

Mental Health Center who evaluated Plaintiff, stated in her report dated June 11, 2003,

> [Neuropsychological Assessment] The overall results of the neuropsychological tests indicate mild to moderate impairment in parietal and pre-frontal areas and mild impairment in strength and fine motor control in her left hand. Visual spatial capacity is particularly decreased. There was no evidence of executive function impairment. There was no evidence of malingering.

See Appendix A: Administrative Record at pp.408-411.

112.    Madelon Baranoski, PhD, a clinical psychologist at the Connecticut

Mental Health Center who evaluated Plaintiff, stated in her report dated June 11, 2003,

> [Personality Assessment] The results of the evaluation showed no evidence of a psychotic disorder, significant depression or a personality disorder.

See Appendix A: Administrative Record at pp.408-411.

113.    Madelon Baranoski, PhD, a clinical psychologist at the Connecticut

Mental Health Center who evaluated Plaintiff, stated in her report dated June 11, 2003,

> [Malingering] In my opinion, Ms. Bayonne showed no evidence of malingering or
> exaggerating her deficits. I based my opinion on the following factors: (a) on
> specific tests of malingering, she scored in the compliant range; (b) she showed
> high performance on some tests and these results corresponded to her complaints
> of changes in her own functioning (that of attention, balance, dizziness); (c) the
> impairment on tests matched an area of the brain (e.g., parietal and pre-frontal);
> her normal performance also matched brain areas (e.g. frontal); (d) Ms.
> Bayonne's personality style is one of compliance and underreporting not over
> reporting. She seeks to have a low profile, to avoid complaining and to maintain
> control and effectiveness. She seeks to maintain her dignity; (e) her performance
> did vary with fatigue; on short assessments, inconsistencies in performance may
> result from wavering concentration rather than malingering. These factors in the
> absence of any positive signs of malingering demonstrate to me that the results
> accurately reflect her impairments. The results also indicate that Ms. Bayonne
> showed no evidence of psychotic disorder or personality disorder. She did show
> evidence of organic impairments that warrant ongoing neurological assessment.
> She demonstrated discouragement over her decline in functioning; however the
> results of the evaluation did not show evidence for a major depression. She
> showed no evidence of suicidal ideation and is a low risk for suicide at this time.

See Appendix A: Administrative Record at pp.408-411.

114.    Defendants admit receiving a letter dated June 11, 2003 from Plaintiff's

counsel, which was the administrative appeal of the December 16, 2002 denial of long

term disability benefits.  See Defendants Answer at ¶ 61, Revised Amended Complaint at

¶ 61, Appendix A: Administrative Appeal Memorandum of Law dated June 11, 2003, p.

1-30 and Appendix A: Administrative Record at pp.1-431.

115.    Defendants sent Plaintiff a letter dated July 22, 2003 stating that the

Employee Benefits Committee would meet on July 28, 2003 to review her June 11, 2003

appeal and confirmed receipt of all the documents provided in Plaintiff's administrative

appeal as submitted.  See Appendix B: Supplemental Administrative Record.

116.    Defendants admit that by letter dated August 8, 2003, Plaintiff was notified of the determination by the Employee Benefits Committee that Plaintiff was not entitled to long-term disability benefits under the terms of the Plan, which stated in pertinent part:

> Based on medical records submitted for the Committee's review by the Pitney Bowes Disability Department, and on medical reports, documents and information submitted by you or on your behalf, the Committee has decided to uphold the decision to deny your long-term disability benefits.

See Defendants Answer at 62, Revised Amended Complaint at ¶ 62 and Appendix B: Supplemental Administrative Record.

117.    Defendants admit in their August 8, 2003 denial letter the following in pertinent part:

> The Committee determined that you had not submitted sufficient proof of your disability, as you are required under the terms of the Plan.

See Appendix B: Supplemental Administrative Record.

118.    Defendants admit that by letter dated August 8, 2003, Plaintiff was notified of the determination by the Employee Benefits Committee that Plaintiff was not entitled to long-term disability benefits under the terms of the Plan, which stated in pertinent part:

> The Plan provides in Section 2.33 that 'Totally Disabled or Total Disability' shall mean that the Participant is unable: (i) to perform the material duties of his or her own occupation for a maximum period of twelve (12) months after the Qualifying Period, and (ii) that thereafter the Participant is unable, because of injury or illness, to engage in any gainful occupation or profession for which he is, or could become, reasonably suited by education, experience, or training; provided, however, that the amount of earnings that the Participant would receive from engaging in such occupation or profession would be less than sixty percent of the Participant's annual or annualized earnings immediately prior to the event giving rise to the Total Disability.

35

See Defendants Answer at  62, Revised Amended Complaint at ¶¶ 62 and 65 and

Appendix B: Supplemental Administrative Record at pp.

119.    Defendants admit that by letter dated August 8, 2003, Plaintiff was

notified of the determination by the Employee Benefits Committee that Plaintiff was not

entitled to long-term disability benefits under the terms of the Plan, which stated in

pertinent part:

> The standard of whether you qualify for further LTD benefits is whether you are
> disabled from performing the essential function of your own occupation, cafeteria
> cashier, as described above.

See Defendants Answer at  62, Revised Amended Complaint at ¶ 62 and Appendix B:

Supplemental Administrative Record.

120.    Defendants admit in their August 8, 2003 denial letter the following in

pertinent part:

> The Committee determined that based on the objective evidence presented, you
> are capable of performing the essential and material duties of your own
> occupation.

See Appendix B: Supplemental Administrative Record.

121.    Defendants admit that by letter dated August 8, 2003, Plaintiff was

notified of the determination by the Employee Benefits Committee that Plaintiff was not

entitled to long-term disability benefits under the terms of the Plan, which stated in

pertinent part:

> The Committee's review of the denial of your LTD benefits is the final
> administrative action to be taken regarding your long-term disability benefits.
> You have a right to bring a civil action under Section 502(a) of the Employee
> Retirement Income Security Act of 1974, as amended (ERISA).

See Defendants Answer at  62, Revised Amended Complaint at ¶ 62 and Appendix B:

Supplemental Administrative Record.

122.    Defendants admit in their August 8, 2003 denial letter the following in

pertinent part:

> Office notes of Dr. Resor, Neurologist, dated December 3, 2001, describing your
> left facial asymmetry, intermittent left facial twitching and right leg numbness.
> Dr. Resor stated that the etiology of your left side symptoms is unclear.

See Appendix B: Supplemental Administrative Record.

123.    Defendants admit in their August 8, 2003 denial letter the following in

pertinent part:

> Office notes of Dr. Einbinder, Neurologist, dated July 12, 2002, indicating that
> after extensive studies she could not explain left upper extremity and some lower
> extremity dysfunction. Nonetheless, Dr. Einbinder concluded that you are
> disabled.

See Appendix B: Supplemental Administrative Record.

124.    Defendants admit in their August 8, 2003 denial letter the following in

pertinent part:

> Office notes of Dr. Xu, Physical Medicine, Rehabilitation and Acupuncture
> Specialist, dated October 18, 2001 and November 16, 2002, finding you to suffer
> from neck pain due to muscle strain, headache probably caused by muscle spasm,
> residual left side face, arm and leg weakness and sensory loss after surgery. Dr.
> Xu prescribed physical therapy, speech therapy and acupuncture.

See Appendix B: Supplemental Administrative Record.

125.    Defendants admit in their August 8, 2003 denial letter the following in

pertinent part:

> Report of your supervisor, Damien Cruz, dated July 17, 2002, indicating that the
> Company had provided accommodations to you since your April 2000 surgery,
> namely, eliminating duties requiring heavy lifting. The Committee noted that your
> position as a cashier was a sedentary job.

See Appendix B: Supplemental Administrative Record.

126.    Defendants admit in their August 8, 2003 denial letter the following in

pertinent part:

> Report of a Functional Capacity Evaluation, dated September 18, 2002, providing
> objective quantification of your functional abilities. According to the FCE, you
> demonstrated a sub-consistent effort, test positive for signs of symptom
> magnification and overreaction, and demonstrated inconsistencies in your
> movement patterns during the lifting exercise. The FCE report indicated that you
> could perform a sedentary job.

See Appendix B: Supplemental Administrative Record.

127.    Defendants admit in their August 8, 2003 denial letter the following in

pertinent part:

> Independent Medical Evaluation by Dr. Gross, Neurologist, dated October 15,
> 2002. Dr. Gross reported that your neck pain and symptoms in your left arm
> began as early as 1993. Poor balance, headaches and vertigo also preceded your
> April 2000 surgery. Dr. Gross's overall impression was that there was
> 'tremendous symptom magnification' and apparent neurological deficits that were
> not anatomically correlated to the surgical removal of the acoustic. Dr. Gross felt
> that you could work as a cashier without restrictions.

See Appendix B: Supplemental Administrative Record.

128.    Defendants admit in their August 8, 2003 denial letter the following in

pertinent part:

> Dr. Einbinder's response to Dr. Gross's IME. Notably, in a letter dated November
> 12, 2002, Dr. Einbinder did not attempt to deny or discredit Dr. Gross's findings
> of symptom magnification but requested a psychiatric evaluation to determine
> whether symptom magnification was a play. Dr. Einbinder also requested another
> neurological or ENT opinion.

See Appendix B: Supplemental Administrative Record.

129.    Defendants admit in their August 8, 2003 denial letter the following in

pertinent part:

> Report of Dr. Griffin, dated November 22, 200. Dr. Griffin conducted an
> independent file review and recommended upholding the denial of STD benefits.
> Dr. Griffin stated that while he did not doubt your intermittent symptoms of

38

fatigue and headaches, they did not appear to be of a severity that would warrant total disability. Additionally, the fact that you performed your job over the previous two years (since your surgery) compelled Dr. Griffin to believe you had work capacity.

See Appendix B: Supplemental Administrative Record.

130.    Defendants admit in their August 8, 2003 denial letter the following in

pertinent part:

Independent Medical Evaluation by Dr. Sweet, Neurologist, dated April 17, 2003. According to Dr. Sweet, who was not given Dr. Gross's IME report, your left sided numbness and weakness were not substantiated by objective findings. Dr. Sweet could not find an adequate pathophysiologic explanation for your symptoms. Dr. Sweet reported that your headaches and left-sided weakness did not disqualify you from working.

See Appendix B: Supplemental Administrative Record.

131.    Defendants admit in their August 8, 2003 denial letter the following in

pertinent part:

Medical evaluation by Dr. Drazinic, Forensic Psychiatrist, dated February 12, 2003, obtained by your attorney. Dr. Drazinic did not find any evidence to support symptom magnification, hypochondriasis or somatization disorder. Dr. Drazinic reported that your difficulties with your job did not appear to be due to your tremor or your mild left sided weaknesses, because you were working through the duration of having these symptoms prior to the April 2000 surgery. The Committee interpreted that statement to mean that even if those symptoms existed, they were not disabling. Dr. Drazinic went on to state that you did not report applying for LTD on that basis, but rather on the basis of symptoms that were directly related to your acoustic neuroma and subsequent surgery. The Committee discussed that statement as well and found that Dr. Drazinic failed to address the underlying cause of your disability.

See Appendix B: Supplemental Administrative Record.

132.    Defendants admit in their August 8, 2003 denial letter the following in

pertinent part:

Report of Dr. Griffin, dated May 2, 2003, recommending the denial of LTD benefits based on the fact that Dr. Sweet found work capacity and that your

39

symptoms appeared to be subjective and were not substantiated by examinations performed by Drs. Gross, Sweet and Resor.

See Appendix B: Supplemental Administrative Record.

133.  Defendants admit in their August 8, 2003 denial letter the following in

pertinent part:

> The Committee noted that many of your symptoms had existed prior to your surgery and had not prevented you from working. The Committee noted that the medical documentation referred to your complaints of pain and left-sided symptoms. However, the Committee also noted that the medical reports did not provide objective evidence substantiating your claim that you are unable to perform the essential duties of your occupation. In fact, the reports of two independent neurologists, Drs. Gross and Sweet, as well as the FCE, MRI of the brain and the ultrasound of the carotoid, all provided evidence that you are functionally and physicially capable of performing the duties of your job as a cashier. Consequently, after a full and fair review of the evidence the Committee concluded that the objective evidence was not indicative of a total disability condition.

See Appendix B: Supplemental Administrative Record.

134.  The Defendants Summary Plan Description defines "proof of disability"

as follows:

> In accordance with the terms of the Plan and any administrative procedures approved by the Employee Benefits Committee, a Participant shall be required to submit initially and from time to time whatever proof or documentation the Disability Department may require (either directly to itself or to an independent review organization retained by the Disability Department for this purpose), including the medical records and medical analysis of one or more duly qualified physicians or clinical psychologists as evidence of Total Disability and of the continuation of such Total Disability; and, in the case of a Participant Totally Disabled during the first year of participation in the Plan, proof that the disability resulted from a condition other than one for which the Participant received medical treatment or advice during the twelve (12) month period preceding the Participant's date of employment.

See Revised Amended Complaint at ¶ 66, Exhibit B at p.41 and Appendix A:

Administrative Record at p. 41.

135.    The Defendants Summary Plan Description defines "Conditions of

Receiving Benefits" as follows:

(a)    An Employee must support his or her initial claim for benefits by
submitting, in a form and manner determined by the Disability
Department, written proof substantiating the occurrence, character and
extent of the disability before the expiration of the one year period
commencing on the date of Total Disability. Thereafter, as requested by
the Disability Department from time to time, the Employee may be
required to submit conclusive medical evidence of the continuance of his
or her Total Disability. As a condition to the payment of benefits under the
Plan, the Disability Department shall have the right to direct such
employee to submit from time to time to an independent medical
examination by a licensed or board certified physician or clinical
psychologist designated by the Disability Department and/or follow a
prescribed treatment program.

See Appendix A: Administrative Record at p. 41 and Exhibit B to Revised Amended

Complaint.

136.    The Defendants Summary Plan Description states in pertinent part, "the

Disability Department shall not prescribe a treatment program for Employees regarding

their return to work but rather shall work with practitioners to develop suitable and

appropriate treatment regimens." See Appendix A: Administrative Record at p. 50 and

Exhibit B to Revised Amended Complaint.

137.    Section 7.7(b) of the Defendants Summary Plan Description states in

pertinent part:

[Claims Denial and Appeal Procedure] In accordance with ERISA and regulations
thereunder, the Disability Department shall provide notice in writing to any
person whose claim for benefits under the Plan has been denied as follows: the
written notification shall include the reasons for the denial based on specific Plan
provisions, **additional information required to perfect the claim for an appeal**.

See Revised Amended Complaint Exhibit B at p. 57 and Appendix A: Administrative

Record at p.57.

138.  Section 7.7(d) of the Defendants Summary Plan Description states in

pertinent part:

> On appeal, the review shall not afford deference to the initial adverse benefit
> determination and shall be conducted by the Employee Benefits Committee
> (which is neither the individual who made the adverse benefit determination that
> is the subject of appeal nor the subordinate of such individual). **In deciding an**
> **appeal of an adverse benefit determination that is based in whole or in part**
> **on medical judgment, including determinations with regard to whether a**
> **particular treatment, drug or other item is experimental, the Employee**
> **Benefits Committee shall consult with a health care professional who has**
> **appropriate training and experience in the field of medicine involved in the**
> **medical judgment.** The health care professional engaged for purposes of
> consultation on appeal shall be a person who is **neither** the individual consulted
> in connection with the adverse determination that is the subject of appeal nor the
> subordinate of such individual.

See Revised Amended Complaint Exhibit B at p. 58 and Appendix A: Administrative

Record at p.58.

139.  The Defendants denial of her long term disability plan benefits was

arbitrary and capricious. Revised Amended Complaint at ¶¶ 70-77.

140.  Defendant Plan Administrator and Defendant Disability Department have

failed to properly interpret and administer the provisions of the plan as required by

ERISA § 404, 29 U.S.C. § 1104. Revised Amended Complaint at ¶¶ 70-77.

141.  Defendant Plan Administrator and Defendant Disability Department have

denied Ms. Bayonne benefits to which she is entitled under the plan and has failed to

properly consider the evidence submitted by her, her treating physicians, and psychiatric

forensic expert, in support of her claim for long-term disability benefits. Revised

Amended Complaint at ¶¶ 70-77.

142.  At all time relevant herein, the Defendants has acted under a conflict of

interest and has placed its pecuniary interests before the interests of the Ms. Bayonne in