**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

FILED

2004 JUL 12  A 10: 07

U.S. DISTRICT COURT
BRIDGEPORT, CONN

| | | |
|---|---|---|
| GERTRUDE BAYONNE, | : | |
| Plaintiff, | : | |
| | : | Civ. Action No. |
| | | 3:03CV0712(WWE) |
| v. | : | |
| | : | |
| PITNEY BOWES, INC. & | : | |
| THE PITNEY BOWES, INC. | : | |
| LONG TERM DISABILITY PLAN, | : | |
| THE PITNEY BOWES, INC. LONG | : | |
| TERM DISABILITY PLAN | : | |
| ADMINISTRATOR AND THE | : | |
| PITNEY BOWES, INC. | : | |
| DISABILITY DEPARTMENT, | : | |
| Defendants. | : | JULY 9, 2004 |

<u>**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**</u>
<u>**CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT ON HER ERISA**</u>
<u>**CLAIMS**</u>

Mark P. Carey(ct17828)
Carey & Associates, P.C.
71 Old Post Road, Suite One
Southport, CT 06890
(203) 255-4150 tel.
(203) 255-0380 fax.
Mcarey@capclaw.com
Attorney for Plaintiff

## TABLE OF CONTENTS

| | | | |
|---|---|---|---|
| I. | **STATEMENT OF FACTS** | | 2 |
| | | | |
| II. | **ARGUMENTS** | | |
| | | | |
| A. | **SUMMARY JUDGMENT STANDARD** | | 2 |
| B. | **MS. BAYONNE HAS STANDING TO PURSUE HER ERISA CLAIMS, INCLUSIVE OF 502(a)(3) CLAIM** | | 3 |
| | 1. | Ms. Bayonne's 502(a)(1)(B) Claim | 4 |
| | 2. | Ms. Bayonne's 502(a)(3) Claim | 7 |
| | 3. | The Disability Department is a Proper Defendant | 8 |
| C. | **THE COURT SHOULD REVIEW DEFENDANTS DECISION TO DENY MS. BAYONNE'S BENEFITS WITH A "HIGH DEGREE OF SKEPTICISM" BECAUSE OF AN ABUSE OF DISCRETION AND CONFLICT OF INTEREST TAINTED ITS DECISION MAKING** | | 9 |
| | 1. | **ERISA Standard of Review** | 9 |
| | 2. | **Defendants Conflict of Interest Requires De Novo Review** | 14 |
| | 3. | **Ms. Bayonne's SSDI Award is Persuasive Evidence of Her Total Disability** | 26 |
| | 4. | **Defendants Violated ERISA Notice Requirements** | 28 |
| | | a. Defendants Failure to Notify Ms. Bayonne What Specific Information was Needed to Perfect Her Claim After Denial | 28 |
| | | b. Defendants Failure to Provide Guidelines and Protocols | 35 |
| | | c. Defendants Requirement of Objective Evidence Was An Abuse of Discretion | 36 |
| | | | |
| IV. | **CONCLUSION** | | 39 |

## TABLE OF AUTHORITIES

### STATUTES, RULES AND REGULATIONS

| | |
|---|---|
| 502(a)(1)(B) and (a)(3), 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3) | 3,4,7,8,31 |
| 29 U.S.C. § 502(g)(1) | 5 |
| ERISA § 3(21)(A) | 4,10 |
| 29 U.S.C. § 1002(7) | 3 |

29 U.S.C. § 1133                                             29,35

Fed.R.Civ.P. 56(c)                                           2

Fed.R.Civ.P. 17(b)                                           9

29 C.F.R. § 2650.503-1(g)                                    29

29 C.F.R. § 2650.503-1(g)(iii)                           30,34,35

29 C.F.R. § 2650.503-1(g)(v)                               30,36

29 C.F.R. § 2650.503-1(b)(1)                                 30

20 C.F.R. § 1527(d)(2)-(6)                                   25

**CASES**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)         3

Anderson v. Operative Plasterers' & Cement Masons' Int'l. Assoc.,
991 F.2d 356 (7th Cir.1993)                                27

Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520 (2d Cir.) 3

Aponte v. Sec'y of the Dep't of Health & Human Servs.,
728 F.2d 588 (2d Cir.1984)                                   22

Atwood v. Newmont Gold Co., Inc., 45 F.3d 1317 (9th Cir.1995) 15

Barber v. Beech Aircraft Corp, 1991 WL 192121 (D.Kan.1991)  22,24,30

Barker v. Ceridian Corp., 122 F.3d 628 (8th Cir.1997)      4

Becker v. Eastman Kodak, 120 F.3d 5 (2d Cir.1997)            31

Berger v. Edgewater Steel Co., 911 F.2d 911, 919 (3d Cir. 1990) 10

Berlin v. Michigan Bell Telephone, 858 F.2d 1154 (6th Cir.1988) 32

Bixler v. Central Pennsylvania Teamsters Health and
Welfare Fund, 12 F.3d 1292 (3d Cir.1993)                     31

Black & Decker Disability Plan v. Nord, 538 U.S. 822,

123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003)                                      24

Booton v. Lockheed Medical Benefit Plan, 110 F.3d 1461 (9th Cir. 1997)       34

Bowman Transp., Inc. v. Arkansas-Best Freight Sys., 419 U.S. 281 (1974)      11

Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991)                            37

Burke Kodak Retirement Income Plan, 336 F.3d 103, (2d Cir.2003)              30

Chambless v. Masters, Mates & Pilots Pension Plan, 813 F.2d 869,
(2d Cir.1987)                                                                 5

Chemung Canal Trust Co. v. Sovran Bank, 939 F.2d 12 (2d Cir.1991)            3

Cohen v. Standard Ins. Co., 155 F. Supp.2d 346 (E.D.Pa. 2001)               25

Connors v. Conn. Gen. Life. Ins. Co., 272 F.3d 127 (2d Cir.2001)           22,24

Cook v. Liberty Life Assurance Co., 320 F.3d 11 (1st Cir.2003)              38

Cook v. New York Times Co. Long Term Disability Plan,
2004 WL 203111 (SDNY Jan.30, 2004)                                      33,36,38

Cozzie v. Metropolitan Life Ins. Co., 140 F.3d 1104(7th Cir.1998)           12

Devlin v. Empire Blue Cross and Blue Shield, 274 F.3d 76 (2d Cir. 2001)      7

Diduck v. Kaszycki & Sons Contractors, Inc., 974 F.2d 270 (2d Cir.1992)      5

Doe v. Group Hospitalization & Medical Services, 3 F.3d 80 (4th Cir. 1993)  15

Donovan v. Bierwirth, 680 F.2d 263 (2d Cir.)                               6,31,32

Dorsey v. Provident Life and Accident Ins. Co., 167 F.Supp.
2d 846 (E.D.Pa.2001)                                                         27

Durr v. Metropolitan Life Ins. Co., 15 F.Supp.2d 205 (D.Conn.1998)          25

Eddy v. Colonial Life, 919 F.2d 747 (D.C.Cir.1990)                          31

Edgerton v. CNA Insur. Co., 215 F. Supp.2d 541 (E.D. Pa. 2002)              25

Fay v. Oxford Health Plan, 287 F.3d 96, 104 (2d Cir.2002)                   10

Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989)                   4,9

Friedrich v. Intel Corp., 181 F.3d 1105 (9th Cir.1999)                          38

Gallo v Amoco Corp, 102 F.3d 918 (7th Cir.1996)                                 12

Gilbert v. Burlington Industries, Inc., 765 F.2d 320 (2d Cir.1985)              30

Goldstein v. Johnson & Johnson, 251 F.3d 433 (3d Cir. 2001)                     10

Hackett v. Xerox Corp. Long-Term Disability Income Plan, 315 F.3d 771,
(7th Cir.2003)                                                                  12

Halpin v. W.W. Grainger, Inc., 962 F.2d 685 (7th Cir.1992)                      32,33

Hawkins v. First Union Corp. LTD Plan, 326 F.3d 914 (7th Cir.2003)       21,24,38

Hensley v. Northwest Permanete PC Retirement Plan & Trust,
258 F.3d 986 (9th Cir.2001)                                                     14

Hess v. Hartford Life & Accident Ins. Co., 274 F.3d 456 (7th Cir.2001)          12

Hines v. Unum Life Ins. Co. of Am., 110 F. Supp.2d 458 (W.D.Va. 2000)           25

Hudson v. General Dynamics Corp., 118 F.Supp.2d 226 (D.Conn.2000)               31

John Blair Communications v. Telemundo Group, 26 F.3d 360
(2d Cir.1994)                                                                    6

Juliano v. Health Maintenance Organization of New Jersey, Inc., 221 F.3d
279 (2d Cir.2000)                                                               29

Kinstler v. First Reliance Standard Life Ins. Co., 181 F.3d 243
(2d Cir.1999)                                                                   10

Kunin v. Benefit Trust Life Ins. Co., 910 F.2d 534 (9th Cir.1990)               32

Ladd v. ITT Corp., 148 F.3d 753 (7th Cir.1998)                                  27

Marcus v. Califano, 615 F.2d 23 (2d Cir.1979)                                   22

Marolt v. Alliant Techsystems, Inc., 146 F.3d 617 (8th Cir.1998)                36

Maronde v. Sumco USA Group LTD Plan, 2004 WL 825627
(D.Or.2004)                                                                     37

Maronde v. Sumco USA Group Long-Term Disability Plan,

2004 WL 1196645 (D.Or.May 26, 2004)    37

Masella v. Blue Cross & Blue Shield of Conn., 936 F.2d 98 (2d Cir.1991)    6

Mein v. Pool Co. Disabled Int'l Employee Long Term
Disability Benefit Plan, 989 F.Supp. 1337 (D.Colo.1998)    20

Miele v. N.Y.S. Teamsters Plan, 831 F.2d 407 (2d Cir.1987)    5

Miller v. United Welfare Fund, 72 F.3d 1066 (2d Cir. 1995)    11

Mimms v. Heckler, 750 F.2d 180 (2d Cir.1984)    22

Montesano et.al. v. Xerox Corp. et.al., 256 F.3d 86 (2d Cir.2001)    7

Motor Vehicle Manufacturers Association v. State Farm
Mutual Automobile Insur. Co., 463 U.S. 29, 103 S.Ct. 2856,
77 L.Ed.2d 443 (1983)    11

Nord v. Black & Decker Disability Plan, 356 F.3d 1008 (9th Cir. 2004)    16

Omara v. Local 32B-32-J Health Fund, No. 97 Civ.7538, 1999
WL 184114 (E.D.N.Y. March 30, 1999)    30,39

Pagan v. NYNEX Pension Plan, 52 F.3d 438 (2d Cir.1995)    10,11

Palmer v. Univ. Med. Group, 994 F.Supp.1221 (D.Or.1998)    13,37

Pappas v. Reliance Standard Ins. Co., 20 F. Supp.2d 923 (E.D.Va. 1998)    25

Piscottano v. Metropolitan Life Ins. Co.,118 F.Supp.2d 200
(D.Conn.9/22/00)    25

Pocchia v. NYNEX Corp., 81 F.3d 275 (2d Cir.1996)    31

Ream v. Frey, 107 F.3d 147 (3rd Cir.1997)    4

Reich v. Valley National Bank, 837 F.Supp. 1259 (S.D.N.Y. 1993)    6

Rivera v. Schweiker, 717 F.2d 719 (2d Cir.1983)    22

Rose v. Shalala, 34 F.3d 13 (1stCir.1994)    13

Ryles v. Pitney Bowes, Inc., 2002 Lexis 12665 (E.D.Pa.2002)    13

Sansevera v. E.I. DuPont de Nemours & Co., 859 F.Supp. 106

(S.D.N.Y.1994)                                                          13,26,38

Sharkey v. Ultramar Energy Ltd., 70 F.3d 226 (2d Cir.1995)                    10

Siebert v. Standard Ins. Co. Group LTD Policy, 220 F.Supp. 2d 1128
(C.D.Ca. 2002)                                                                25

Skretvedt v. E.I. Dupont De Nemours and Co., 268 F.3d 167 (3rd Cir. 2001)     25

Schwabenbauer v. Board of Ed. of City School Dist. of City of Olean,
667 F.2d 305 (2d Cir. 1981)                                                    2

Strom v. Goldman Sachs & Co., 202 F.3d 138, 142 (2d Cir.1999)                  4

Sullivan v. LTV Aerospace and Defense Co., 82 F.3d 1251, 1255-56
(2d Cir.1996)                                                           10,15,26

Sweatman v. Commercial Union Ins. Co., 39 F.2d 594 (5th Cir. 1994)            15

Tolle v. Carroll Touch, Inc., 977 F.2d 1129 (7th Cir.1992)                     4

VanderKlok v. Provident Life and Acc. Ins. Co, Inc., 956 F.2d 610
(6th Cir.1992)                                                             30,39

Varity Corp. v. Howe, 516 U.S. 489, 116 S.Ct. 1065 (1996)                    4,9

Veilleux v. Atochem North America, Inc., 929 F.2d 74 (2d Cir.1991)        30,39

Veltri v. Building Service 32B-J Pension Fund, No.02 Civ. 4200,
2003 WL 22705124 (S.D.N.Y. Nov.17, 2003)                                      30

Walker v. LTD Plan of Sponsor Tri-Valley Growers, 2002 WL 467684
(N.D.Ca. 2002)                                                                25

Woo v. Deluxe Corp., 144 F.3d 1157 (8th Cir.1998)                      13,15,26

Plaintiff Gertrude Bayonne ("Ms. Bayonne") hereby files this Memorandum of Law in Opposition to Defendants Cross Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56(c). Ms. Bayonne seeks a declaratory judgment, injunctive and equitable relief on her Employee Retirement Income Security Act ("ERISA") suit based on an unlawful denial of her Long Term Disability ("LTD") benefits as against: the Pitney Bowes, Inc. Long Term Disability Plan ("The Plan"); the Pitney Bowes, Inc. Long Term Disability Plan Administrator ("Plan Administrator") and the Pitney Bowes, Inc. Disability Department ("Disability Department"). For the purposes of this action and this motion, the Defendant Plan is directly liable for the actions of agents the Defendant Plan Administrator and Defendant Disability Department. With respect to reference herein to "Defendants" with regard to fiduciary actions, breaches and omissions, Ms. Bayonne is referring to Defendant Plan Administrator and Defendant Disability Department. Defendant Plan cannot be a fiduciary of itself.

Ms. Bayonne filed for partial summary judgment on May 6, 2004. On May 28, 2004 Defendants filed a cross motion for partial summary judgment. The Defendants filed a memorandum of law in support of their cross motion for summary judgment and in opposition to Ms. Bayonne's summary judgment motion. As the Defendants have combined both legal arguments in one memorandum of law, Ms. Bayonne hereby incorporates her legal arguments contained her Memorandum of Law in support of her Motion for Summary Judgment. Ms. Bayonne will now address the legal arguments raised by Defendants and demonstrate that her motion should be granted and the Defendants' motion denied.

Ms. Bayonne refers and incorporates by reference the administrative appeal record ("Appeal Record ____") and appeal memorandum of law she prepared in support of her Motion for Summary Judgment (Appendix A & B). She also refers to the Administrative Record ("ADR ___") provided by Defendants.

Ms. Bayonne also files her Statement of Material Facts in Dispute, which are identical to her Statement of Material Facts Not in Dispute, inclusive of Appendix A & B, filed in support of her Motion For Summary Judgment. Schwabenbauer v. Board of Ed. of City School Dist. of City of Olean, 667 F.2d 305, 313-314 (2d Cir. 1981).

## I.    STATEMENT OF FACTS

### A.    Medical Facts, Initial STD Claim and Denial by Defendants

Ms. Bayonne hereby notifies the Court that she incorporates by reference in its entirety her Statement of Facts contained in her Memorandum of Law in Support of her Motion for Summary Judgment filed on May 6, 2004, pages 2 through 12. Ms. Bayonne's reference to supporting Statement of Disputed Facts are the same as those found in her Memorandum of Law in support of her motion.

The purpose of the incorporation of facts is purely intended to promote the Court's efficiency in reviewing her Memorandum in Opposition and to reduce the need to file a motion requesting permission to file a longer brief.

## II.    ARGUMENT

### A.    SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and the admissions on file, together with the affidavits, if any, show that there is no genuine issue

2

as to any material fact and that the moving party is entitled to judgment as a matter of law." A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242,248 (1986); Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir.). In the present matter, the relevant facts are in dispute and are derived directly from the information contained in the administrative appeal record (Plaintiff's Statement of Facts Appendix A & B filed with her Motion for Summary Judgment) before the Defendant Plan Administrator and Defendant Disability Department. Ms. Bayonne can demonstrate that the disputed facts in the record support her claim for LTD benefits under the terms of the Defendants long term disability plan. Applying these standards, Ms. Bayonne has established the Defendants Cross-Motion for Summary Judgment should be denied.

### B. MS. BAYONNE HAS STANDING TO PURSUE HER ERISA CLAIMS, INCLUSIVE OF 502(a)(3) CLAIM.

As set forth in her initial memorandum of law in support of her motion for summary judgment, Ms. Bayonne is a participant, under 29 U.S.C. § 1002(7), in Defendants welfare benefit program and has standing to raised her claims pursuant to 29 U.S.C. § 502(a)(1)(B) and (a)(3)(B). (Plaintiff's Statement of Facts ¶ 1);(Plaintiff's Statement of Facts ¶¶ 8,9,10,11); Chemung Canal Trust Co. v. Sovran Bank, 939 F.2d 12 (2d Cir.1991).

This Court has jurisdiction over the parties and over the subject matter of this dispute, pursuant to ERISA, and venue is proper. (Plaintiff's Statement of Facts ¶¶ 2,3,5,7, 24). Ms. Bayonne has exhausted all administrative remedies. (Plaintiff's Statement of Facts ¶ 4).

1.    Ms. Bayonne's 502(a)(1)(B) Claim

Section 502(a)(1)(B) specifically provides that Ms. Bayonne may bring a civil action to recover benefits due her under the terms of the plan and to enforce her rights under the terms of the plan. "A claim under this section, in essence, is the assertion of a contractual right under a benefit plan." Strom v. Goldman Sachs & Co., 202 F.3d 138, 142 (2d Cir.1999) (citing Tolle v. Carroll Touch, Inc., 977 F.2d 1129, 1133 (7th Cir.1992).

Benefit claims litigation under § 502(a)(1)(B) is in the nature of an action to enforce beneficial rights under a trust.  Principles of the common law of trusts are incorporated into the federal common law of employee benefits to guide the courts in the absence of express ERISA rules. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 1 (1989); Barker v. Ceridian Corp., 122 F.3d 628 (8th Cir.1997) (when interpreting ERISA plan documents, courts should look to the law of trusts); Ream v. Frey, 107 F.3d 147 (3rd Cir.1997).

The Defendants Employee Benefits Committee is the Plan Administrator of the Pitney Bowes LTD Plan and serves a fiduciary under the Plan, with the specified discretion to administer and interpret the plan. (Plaintiff's Statement of Facts ¶¶ 6,12, 13, 14, 15, 16-22). A "person is a fiduciary with respect to a plan," and therefore subject to ERISA fiduciary duties, "to the extent" that he or she "exercises any discretionary authority or discretionary control respecting management" of the plan, or "has any discretionary authority or discretionary responsibility in the administration" of the plan. ERISA § 3(21)(A)." Varity Corp. v. Howe, 516 U.S. 489, 498, 116 S.Ct. 1065, 1071 (1996).

4

The Defendant Disability Department is a fiduciary pursuant to ERISA because it operates under the delegation of authority from the Defendant Plan Administrator and has appropriate discretion to administer and interpret the plan and benefits. (Plaintiff's Statement of Facts ¶¶ 7,13). Id. ("has any discretionary authority or discretionary responsibility in the administration" of the plan).

The Defendant Plan Administrator and Defendant Disability Department breached their fiduciary duties owed to her under the company's ERISA plan by arbitrarily and capriciously denying her claim for disability benefits (Plaintiff's Statement of Facts ¶ 139) and acting under a conflict of interest, as set forth in the LTD Summary Plan Description dated January 1, 2003. (Plaintiff's Statement of Facts ¶¶ 139-145);(Plaintiff's Revised Amended Complaint at Exhibit B). The Defendants failed to properly interpret and administer the provisions of the plan. (Plaintiff's Statement of Facts ¶ 140).

All of Ms. Bayonnes' claims, as individually asserted, seeks an "equitable remedy" under ERISA for the full value of his Long Term Disability Benefits, plus interests, costs and attorneys fees. See 29 U.S.C. § 502(g)(1); Diduck v. Kaszycki & Sons Contractors, Inc., 974 F.2d 270 (2d Cir.1992) (actions brought under Title I "by a participant, beneficiary or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party"); Miele v. N.Y.S. Teamsters Plan, 831 F.2d 407 (2d Cir.1987); Chambless v. MM&P Pension Plan, 815 F.2d 869 (2d Cir.1987).

Ms. Bayonne can successfully demonstrate that the Defendant Plan Administrator and Defendant Disability Department breached their fiduciary duties owed to her and engaged in an abuse of discretion on several grounds. Most notably, the plan administrator arbitrarily and capriciously denied her LTD claim in the face of objective

medical evidence provided by her treating physicians/forensic experts and because it

operated under a conflict of interest. (Plaintiff's Statement of Facts ¶ 141).

The Second Circuit has described a fiduciaries obligations as "the highest known

to law." Donovan v. Bierwirth, 680 F.2d 263, 272, n.8 (2d Cir.), cert. denied, 459 U.S.

1069, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982).  The Donovan Court further explained the

statutory sources of this high duty:

> [ERISA] Sections 404(a)(1)(A) and (B) impose three different although
> overlapping standards. A fiduciary must discharge his duties 'solely in the
> interests of the participants and beneficiaries.' He must do this 'for the exclusive
> purpose' of providing benefits to them.  And he must comply 'with the care, skill,
> prudence, and diligence under the circumstances then prevailing' of the traditional
> 'prudent man.'

Id. 271; (Plaintiff's Statement of Facts: Appendix A: Administrative Appeal Record pp.

1-60 [Summary Plan Description: Section 7.8 (Fiduciary Duties)). In the instant case, the

facts reveal that Defendants did not in fact discharge their fiduciary duties solely in Ms.

Bayonne's interests, because they lacked the care, skill, prudence and diligence under the

circumstances of the case.

Courts in the Second Circuit have long emphasized the gravity of the strict duties

governing ERISA fiduciaries.1

In failing to take the facts of Ms. Bayonne's relevant and objective medical

evidence into account when administering her claim, the Defendants did not exercise its

---

1 See e.g. John Blair Communications v. Telemundo Group, 26 F.3d 360, 367 (2d Cir.1994) ("Where
fiduciary duties arise under ERISA, they must be enforced without compromise to ensure that fiduciaries
exercise their discretion to serve all participants in the plan"); Reich v. Valley National Bank, 837 F.Supp.
1259, 1286 (S.D.N.Y. 1993) (A significant purpose of ERISA is to "immunize an employee benefit plan
from the employer's interest," and so the statute "requires conformity to extremely high standards.");
Masella v. Blue Cross & Blue Shield of Conn., 936 F.2d 98, 107 (2d Cir.1991)(Because ERISA "abounds
with the terminology of trust law," application of rule of contract interpretation construing ambiguities
against insurer "is consistent with the basic principle of trust law that trust property is to be dealt with for
the benefit of the beneficiary.").

discretion to protect her legitimate plan interests and did not conform with the extremely

high fiduciary standards imposed under ERISA.

    2.    <u>Ms. Bayonne's 502(a)(3) Claim</u>

Ms. Bayonne is also asserting a 502(a)(3) claim for breach of fiduciary

duty, in addition to her 502(a)(1)(B) claim for wrongful denial of benefits. Contrary to

the Defendants argument2, the Second Circuit specifically held

> The Supreme Court in <u>Varity Corp.</u> did not eliminate the possibility of a plaintiff
> successfully asserting a claim under both § 502(a)(1)(B), to enforce the terms of a
> plan, and § 502(a)(3) for breach of fiduciary duty; instead, the Court indicated
> that equitable relief under § 502(a)(3) would "normally" not be appropriate.
> Ultimately, we believe that the determination of "appropriate equitable relief"
> rests with the district court should plaintiffs succeed on both claims. This
> determination must be based on ERISA policy and the "special nature and
> purpose of employee benefit plans." <u>Id.</u> (internal quotation marks omitted). <u>We
> therefore hold that Varity Corp. did not eliminate a private cause of action for
> breach of fiduciary duty when another potential remedy is available; instead, the
> district court's remedy is limited to such equitable relief as is considered
> appropriate.</u>

<u>Devlin v. Empire Blue Cross and Blue Shield</u>, 274 F.3d 76, 89-90 (2d Cir. 2001).

The Second Circuit in <u>Montesano et.al. v. Xerox Corp. et.al.</u>, 256 F.3d 86, 88 (2d

Cir.2001) held, in that particular case, that the plaintiff could not maintain simultaneously

both 502(a)(1)(B) and (a)(3) claims. However, this is not the position held by the Second

Circuit, as demonstrated in the <u>Devlin</u> case which was decided after the <u>Montesano</u>

decision. The Defendants completely ignored the <u>Devlin</u> decision set forth in Ms.

Bayonne's Memorandum in Support at page 16-17, which is controlling upon this Court.

Ms. Bayonne's claim against the Defendants Plan Administrator and the

Disability Department, pursuant to Section 502(a)(3), is based on the statutory language

---

2 Defendants assert "[b]ecause Plaintiff has adequate relief for an alleged improper denial of benefits
through her right to bring a claim under Section 502(a)(1)(B) of ERISA, relief under Section 502(a)(3)
based on the denial of benefits would not be appropriate, even if Plaintiff does not prevail on her
502(a)(1)(B) claim." (Defendants' Memo pp. 25-26).

that a plan participant, a plan beneficiary, or a plan fiduciary may bring civil action under ERISA: (1) to enjoin any act or practice which violates any provision of ERISA Title I; (2) to enjoin any act or practice which violates the terms of the plan; (3) to obtain other appropriate equitable relief to redress such violations; (4) to obtain other appropriate equitable relief to enforce any provision of Title I; or (5) to obtain other appropriate equitable relief to enforce the terms of the plan. 29 U.S.C. § 502(a)(3).

Ms. Bayonne is entitled to bring a claim pursuant to 29 U.S.C. § 502(a)(3), because the Defendant Plan Administrator and Defendants Disability Department breached its fiduciary duty owed to her under the company's ERISA plan set forth in the LTD Summary Plan Description dated January 1, 2003, as amended. (Plaintiff's Statement of Facts: Appendix A);(Plaintiff's Revised Amended Complaint at Exhibit B).

Ms. Bayonne can successfully demonstrate that the Defendant Plan Administrator and Defendant Disability Department breached their fiduciary duties owed to her and engaged in an abuse of discretion on several grounds.  Most notably, the plan administrator arbitrarily and capriciously denied her LTD claim in the face of objective medical evidence provided by her treating physicians/forensic experts and because it operated under a conflict of interest. (Plaintiff's Statement of Facts ¶ 141).

In the event the Court denies Ms. Bayonne's 502(a)(1)(B) claim, she is still entitled to obtain remedies of injunction and equitable restitution under section 502(a)(3) based on a breach of fiduciary duty violations.

3.    The Disability Department is a Proper Defendant

Ms. Bayonne is claiming the Disability Department is a fiduciary and has the

capacity to be sued. The Defendants object that the Disability Department is not a proper

party defendant in this case because it lacks fiduciary status and lacks the capacity to be

sued under Delaware law. This argument should be rejected.

First, under Fed R.Civ.P. Rule 17(b) provides that the Disability Department has

the capacity to be sued because, "other unincorporated association, which has no such

capacity by the law of such state, may sue or be sued in its common name for the purpose

of enforcing for or against it a substantive right existing under the Constitution or laws of

the United States." The Defendants arguments directly controverts the capacity of "any

fiduciary" to be sued under ERISA. Defendants do not cite any ERISA case authority

supporting their argument, thus the Court should reject the argument.

Second, the basis for jurisdiction over the Disability Department is derived from

the verbal and written communications with Ms. Bayonne regarding her claim for welfare

benefits. As the Supreme Court has held, where an employer communicates with plan

beneficiaries about the contents of the plan and claim for benefits, an employer is acting

in a fiduciary capacity for ERISA purposes, where "reasonable employees . . .could have

thought [the employer] was communicating with them both as employer and as plan

administrator". Varity Corp, 516 U.S. at 502-503.

Defendants argument should be rejected on this ground also.

**C.    THE COURT SHOULD REVIEW DEFENDANTS DECISION TO
DENY MS. BAYONNE'S BENEFITS WITH A "HIGH DEGREE OF
SKEPTICISIM" BECAUSE OF AN ABUSE OF DISCRETION AND
CONFLICT OF INTEREST TAINTED ITS DECISION MAKING**

**1.    ERISA Standard of Review**

The default standard of review in ERISA cases is *de novo*. Firestone Tire &

Rubber Co., 489 U.S. 101, 115 (1989). However, ERISA defendants may receive the

more deferential "arbitrary and capricious" review where the benefit plan in question delegates authority to the plan administrator. Id. Even where such delegation has been made, however, the de novo standard is restored where the administrator is determined to have operated under a conflict of interest. Sullivan v. LTV Aerospace and Defense Co., 82 F.3d 1251, 1255-56 (2d Cir.1996); Pagan v. NYNEX Pension Plan, 52 F.3d 438, 443 (2d Cir.1995). The Defendants cannot meet their burden of proving that the arbitrary and capricious standard should apply, in the face of a conflict of interest. Kinstler v. First Reliance Standard Life Ins. Co., 181 F.3d 243, 249 (2d Cir.1995); Sharkey v. Ultramar Energy Ltd., 70 F.3d 226 (2d Cir.1995). Any ambiguities in the plan language must be construed against the administrator and in favor of the party seeking judicial review. Fay v. Oxford Health Plan, 287 F.3d 96, 104 (2d Cir.2002); Kinstler, 181 F.3d at 251-52.

"Ordinary contract principles require that, where one party is granted discretion under the terms of the contract, that discretion must be exercised in **good faith** –a requirement that includes the duty to exercise the discretion reasonably." Goldstein v. Johnson & Johnson, 251 F.3d 433 (3d Cir. 2001)(Citing, Restatement (Second) of Contracts §205 & cmta; Berger v. Edgewater Steel Co., 911 F.2d 911, 919 (3d Cir. 1990).

The Employee Benefits Committee and the Disability Department exercised apparent discretion to administer and interpret the Pitney Bowes LTD Plan, pursuant to ERISA § 3(21), 29 U.S.C. § 1002(21)(A). (Plaintiff's Statement of Facts ¶¶ 6, 16, 17, 18, 19, 20, 21, 22).3

---

3 The January 1, 1998 Pitney Bowes LTD Plan (Revised Amended Complaint, Exhibit B) reveals that the Pitney Bowes LTD Plan specified "The Employee Benefits Committee" as the Plan Administrator (Plaintiff's Statement of Facts ¶ 15), and "has delegated to the Disability Department the day-to-day, on-going administrative responsibilities of the Plan." (Plaintiff's Statement of Facts ¶ 18); (Revised Amended Complaint, Exhibit B).

In light of Ms. Bayonne's Statement of Facts and the full administrative record (Appendix A & B), under the arbitrary and capricious or "abuse of discretion" standard this Court can and should overturn the Defendants decision to deny Ms. Bayonne benefits because it was 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" Pagan, 52 F.3d at 442. Thus, Defendants determination must be disturbed because it was inconsistent with the plan's terms, and not "based on a consideration of the relevant factors" and supported "by substantial evidence." Miller v. United Welfare Fund, 72 F.3d 1066, 1072 (2d Cir. 1995); Motor Vehicle Manufacturers Association v. State Farm Mutual Automobile Insur. Co., 463 U.S. 29, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983) Substantial evidence means "such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decision maker," and "requires more than a scintilla but less than a preponderance" of evidence. Id. However, the Defendants cannot provide substantial evidence to support its decisions. A reasonable mind cannot accept the fact that Defendants presumption/conclusion that Ms. Bayonne had symptom magnification, in full view of objectively supported medical complaints, without obtaining and providing properly supporting psychiatric and neurocognitive evidence. Furthermore, the Defendants unlawfully required Ms. Bayonne to submit "objective evidence", a requirement that was an "extra-contractual" criteria in the Plan. (See discussion below).

This narrowly circumscribed scope of review prevents courts from substituting their own judgment for that of the administrator. See Bowman Transp., Inc. v. Arkansas-Best Freight Sys., 419 U.S. 281, 285 (1974); Pagan, 52 F.3d at 442. However, any highly

11

deferential standard of review found applicable to this case does not automatically

mandate adherence to Defendants decision:

> Review under [the arbitrary and capricious] standard is extremely deferential and
> has been described as the least demanding form of judicial review. It is not,
> however, without some teeth." Cozzie v. Metropolitan Life Ins. Co., 140 F.3d
> 1104, 1107-08 (7th Cir.1998)(internal citation omitted). " 'Deferential review is
> not no review,' and 'deference need not be abject.'"

Hess v. Hartford Life & Accident Ins. Co., 274 F.3d 456, 461 (7th Cir.2001)(quoting

Gallo v Amoco Corp, 102 F.3d 918, 922 (7th Cir.1996).

In the instant case, this Court has an obligation under ERISA to review the

administrative record, as prepared by Ms. Bayonne in Appendix A & B, in order to

determine whether the Defendants acted arbitrarily and capriciously in making its ERISA

benefits determination. This obligation inherently includes some review of the quality

and quantity of the medical evidence provided by Ms. Bayonne, and the opinions on both

sides of the issues.  Without this type of review, this Court would be rendered to nothing

more than a rubber stamp for Defendants decision as long as the plan was able to find a

single piece of evidence, no matter how obscure or untrustworthy, to support a denial of

Ms. Bayonne's claim for benefits. See Hackett v. Xerox Corp. Long-Term Disability

Income Plan, 315 F.3d 771, 774-775 (7th Cir.2003)("Review under the deferential

arbitrary and capricious standard is not a rubber stamp and deference need not be abject.

Even under the deferential review we will not uphold a termination when there is an

absence of reasoning in the record to support it.")

12

In the instant case, there was an absence of reasoning why the Defendants failed to request and conduct a psychiatric/neurocognitive IME,4 but used two neurologists and one functional capacity evaluation to conclude that Ms. Bayonne was consciously forcing her symptoms and was controlled by symptom magnification.  This Court cannot reasonably defer to the opinions of Defendants physician consultants Drs. Broder, Griffin, Gross and Sweet, because each opinion was tainted with the presumption Ms. Bayonne was faking her illness for the singular purpose of denying the claim.  In addition, neither Drs. Broder, Griffin, Gross and Sweet were NOT appropriate "experts" in diagnosing a psychiatric condition of "symptom magnification", also known as somatization disorder. Woo v. Deluxe Corp., 144 F.3d 1157, 1162 (8th Cir.1998); Sansevera v. E.I. DuPont de Nemours & Co., 859 F.Supp. 106, 113 (S.D.N.Y.1994). The Defendants decision to deny benefits was an abuse of discretion.

There was also an absence of reasoning by the Defendants, because even their own physician consultants admitted and agreed with Ms. Bayonne's treating physicians, that the damage caused by the acoustic neuroma was possibly more extensive and defied any conclusive medical explanation. (Plaintiff's Statements of Facts ¶¶ 32,36, 37,43,44,50,57,62,63,67,70,72,75). The absence of a conclusive medical explanation is not a valid ground to reasonably deny disability benefits. Rose v. Shalala, 34 F.3d 13, 18 (1994) ("the absence of definitive diagnostic tests . . .makes it plain that the failure of some doctors to state conclusive diagnoses does not constitute substantial evidence to support a finding that claimant did not suffer from the syndrome."); Palmer v. Univ. Med.

---

4 Defendants in another case did in fact requested and conducted a psychiatric IME in a case involving an employee claiming disability benefits based on depression. Ryles v. Pitney Bowes, Inc., 2002 Lexis 12665 at *7 (E.D.Pa.2002) (Appendix C attached to Defendants Motion).

Group, 994 F.Supp.1221, 1233 (D.Or.1998), rev. abrogated on other grounds, Hensley v. Northwest Permanete PC Retirement Plan & Trust, 258 F.3d 986 (9th Cir.2001).

As a direct and proximate result of the Defendant Plan Administrator's and Defendant Disability Department's breach of their fiduciary duties owing to Ms. Bayonne, she has been unlawfully denied long-term disability benefits to which she is entitled under the plan. (Plaintiff's Statement of Facts ¶¶ 144, 145).

## 2.    Defendants Conflict of Interest Requires De Novo Review

Ms. Bayonne next argues that the Defendants denial of long term disability benefits requires a de novo review on the grounds of a controlling conflict of interest. (Plaintiff's Statement of Facts ¶ 142). The Defendants assert Ms. Bayonne does not meet the "stringent test" for modifying the SPD's deferential standard to a de novo review. The Defendants argument focuses on a financial conflict of interest. However, this was not the tenor of Ms. Bayonne's argument for de novo review. She asserted the conflict of interest arose due to improper and unlawful actions in the administration of the claim, a basis for which the Defendants did not refute in their argument in support of at pages 15 through 17. (Defendants Memo. At pp. 15-17). Clearly, by not addressing Ms. Bayonne's argument, the Court can only surmise that Ms. Bayonne has established that Defendants were in fact influenced by the conflict of interest. The Court must reject Defendants argument for the following reasons, and as originally set forth in Ms. Bayonne's moving papers.

In this circuit, a conflict of interest results in a de novo review based upon a two-prong test for determining the proper level of deference to accord the plan administrator:

> First, whether the determination made by the administrator is reasonable,
> in light of possible competing interpretations of the plan; [and] second,

> whether the evidence shows that the administrator was in fact influenced by such conflict. If the court finds that the administrator was in fact influenced by the conflict of interest, the deference otherwise accorded the administrator's decision drops away and the court interprets the plan de novo.

Sullivan, 82 F.3d at1255-56.

The Second Circuit has yet to adopt a standard governing what must be shown in order to prove a causal relationship between the conflict and the decision. However, courts that have set such a standard have required only that a plaintiff show: "...that the conflict or procedural irregularity has 'some connection to the substantive decision reached.'" Woo, 144 F.3d at 1161.5 In the instant case, the facts demonstrate that Defendants conflict of interest coupled with procedural irregularities has a direct connection to the substantive decision reached on August 8, 2003.

Recently the Ninth Circuit provided further guidance on conflicts of interests:

> There is an apparent conflict of interest here, because Black & Decker is both the administrator and the funding source for the Plan. See Nord I, 296 F.3d at 828. To create a rebuttable presumption that Black & Decker in fact violated its fiduciary obligations, we require "material, probative evidence, beyond the mere fact of the apparent conflict, tending to show that the fiduciary's self-interest caused a breach of the administrator's fiduciary obligations to the beneficiary." Atwood v. Newmont Gold Co., Inc., 45 F.3d 1317, 1323 (9th Cir.1995). As the district court and we stated in Nord I, "material, probative evidence" may consist of "inconsistencies in the plan administrator's reasons, insufficiency of those reasons, or procedural irregularities in the processing of the beneficiaries claims."

---

5 Other circuits follow variations on the same approach, either granting de novo review if the conflict influenced the decision or simply granting less and less deference based upon the magnitude of the conflict. See e.g. Doe v. Group Hospitalization & Medical Services, 3 F.3d 80 (4th Cir. 1993)(less deferential review); Sweatman v. Commercial Union Ins. Co., 39 F.2d 594, 599 (5th Cir. 1994)(heightened scrutiny); Woo 144 F.3d at 1161.

Nord I, 296 F.3d at 829 (internal citations omitted). If there is probative evidence of a conflict of interest and Black & Decker cannot rebut it, the denial of benefits is reviewed de novo.

Nord v. Black & Decker Disability Plan, 356 F.3d 1008, 1010 (9th Cir. 2004).

Ms. Bayonne demonstrates herein that the Defendants Plan Administrator and Disability Department were in fact influenced by a conflict of interest due to the inconsistencies and insufficiency in Defendants reasoning and failures in the administrative process. For example, Dr. Broder admitted that there existed a possibility Ms. Bayonne's acoustic neuroma tumor may have caused more damaged than he was able to medically detect, even though he did not personally examine her. Yet, he and the Defendants never made a further investigation into this issue and arbitrarily and capriciously concluded she suffered from conscious forcing and symptom magnification, absent any objective psychiatric finding. (Plaintiff's Statements of Fact ¶ 63, 67, 68, 75, 79). Adding further insult, Dr. Broder admitted, "the reasons for conscious forcing are therefore then known only to Ms. Bayonne." (Plaintiff's Statement of Facts ¶ 68). This admission clearly demonstrates the Defendants had no objective psychiatric basis to support its' decision, if the "reason for conscious forcing" is only known to Ms. Bayonne. The possibility of additional damage caused by the acoustic neuroma tumor was also realized by Ms. Bayonne's treating physicians and forensic experts. (Plaintiff's Statement of Facts ¶ 70, 104).

In addition, the Defendants committed an abuse of discretion when they concluded Ms. Bayonne's symptoms were completely controlled by "tremendous symptom magnification." (Plaintiff's Statement of Facts ¶ 67); Compare

16

(Plaintiff's Statement of Facts ¶ 83).  Please note Defendants adjective usage was

not "slight" symptom magnification but "tremendous" symptom magnification,

providing direct evidence of its certainty that Ms. Bayonne was feigning or faking

her disability.  Under this optic, there was never any room for medical

inconsistencies by the Defendants physician consultants or the immediate

possibility Ms. Bayonne's acoustic neuroma tumor caused more physical damage

than any physician, on either side, could medically verify.

     Ms. Bayonne asserts the Defendants physician consultants lacked any

experience in diagnosing a psychiatric condition of "symptom magnification",

also known as somatization disorder. Defendants attempts to minimize Ms.

Bayonne's psychiatric report, is albeit "evasive."   In footnote #12 of Defendants

Memorandum of Law (page 20), Defendants state "

> The record demonstrates that, while the Committee reviewed the report, it
> found the document uncompelling given, among others, the lack of
> relevance of a psychiatric opinion to Plaintiff's physical ability to perform
> her job functions. UMF 64. (Dr. Broder's observation that symptom
> magnification is not a psychiatric diagnosis).

The lack of relevance argument is absurd.  The only reason why a psychiatric

review was provided to the Defendants was a result of the overwhelming and

continued reference to "symptom magnification."  Furthermore, Ms. Bayonne's

forensic psychiatric expert only had the qualifications to rule out any psychiatric

disorder, but not whether she could perform her job functions. Only Dr. Einbinder

and Ms. Bayonne's treating physicians could objectively opine on Ms. Bayonne's

job capacity, especially since each physician treated her over a lengthy time

period.

On June 18, 2003, Dr. Broder sent a email to Defendants wherein he makes a startling statement,

> There is no DSM-IV Diagnosis of Symptom Magnification. Symptom Magnification is a witnessed descriptive term that is used and reported following an evaluation of an individuals physical response [sic] to the performance of a generic or specific physical task. . .Symptom magnification may be defined as a conscious or unconscious self-destructive and socially reinforced behavioral response consisting of reports or display of symptoms that function to control the life circumstances of the sufferer. The diagnosis of symptom magnification syndrome is not intended to discredit the examinee's subjective complaints. One should not interpret symptom magnification to necessarily suggest an intentional misrepresentation of the individuals complaints and disability, although it might. Symptom Magnification more likely represents a learned pattern of illness behavior. The symptom Magnifier has discovered, for instance, that illness behavior provides an escape from an apparently irresolvable conflict or life situation, an opportunity for positive gain, or an ensured survival and maintenance of the patient role. Symptom Magnification is the disparity between the examinee's professed disability and the objective assessment at hand. This is not about conscious forcing of symptoms, although it can be, this is about a manifest weight of medical evidence that the surgical procedure in-of-itself could not anatomically, neurophysiologically caused any of the purported symptoms of Ms. Bayonne or the alleged findings of Dr. Einbinder. This is not about Ms. Bayonne being afflicted with any Neuropsychiatric Disorder, although, there very well maybe an underlying characterlogical basis for her behavior. This was not entertained by the reviewing or examining physicians or the para-medical professionals that performed the Digital Video, FCE. Evidently the attorney is pursuing an avenue that leads to a dead-end. Symptom magnification of physical symptoms, is a medically well recognized and published behavioral condition/presentation.

(ADR 080).

Dr. Broder's statements do sound awfully similar to a psychiatrist describing a psychiatric condition. Defendants offer no clinical or legal support for Dr. Broder's self-serving conclusion. A conclusion that if the Court accepts, will cause a judgment in Defendants favor. Defendants must do more than simply proffer Dr. Broder's conclusory opinion, they must demonstrate through

18

admissible evidence why this Court should believe that "symptom magnification"

is not a psychiatric disorder, but a disorder derived solely from a functional

capacity examination performed by para-medical professions, Dr. Broder (who's

expertise is unknown before this Court) and physician consultant neurologists

(who lack expertise in clinical psychiatric determinations). Ms. Bayonne's

attempts to discredit the allegation of "symptom magnification" is not a "dead-

end", it is actually the answer to the "evasive" roadblock put up by the

Defendants.

Dr. Carolyn Drazinic, M.D., Ph.D., Forensic Psychiatry Fellow, provided

an objective assessment and finding based on the DSM-IV.  Unlike Dr. Broder,

Dr. Drazinic can point to a medically verifiable and objective guideline for

rendering determinations of somatization disorders.6  (See ADR 644-646). She

concluded

---

6 The DSM-IV criteria for somatization disorders is as follows:

    A.  A history of many physical complaints beginning before age 30 years that occur over a period of several years and result in treatment being sought or significant impairment in social, occupational, or other important areas of functioning.

    B.  Each of the following criteria must have been met, with individual symptoms occurring at any time during the course of the disturbance:

        a.  Four pain symptoms: a history of pain related to at least four different sites or functions (e.g., head, abdomen, back, joints, extremities, chest, rectum, during menstruation, during sexual intercourse, or during urination)

        b.  Two gastrointestinal symptoms: a history of at least two gastrointestinal symptoms other than pain (e.g., nausea, bloating, vomiting other than during pregnancy, diarrhea, or intolerance of several different foods)

        c.  One sexual symptom: a history of at least one sexual or reproductive symptom other than pain (e.g., sexual indifference, erectile or ejaculatory dysfunction, irregular menses, excessive menstrual bleeding, vomiting throughout pregnancy)

        d.  One pseudoneurological symptom: a history of at least one symptom or deficit suggesting a neurological condition not limited to pain (conversion symptoms such as impaired coordination or balance, paralysis or localized weakness, difficulty swallowing or lump in throat, aphonia, urinary retention, hallucinations, loss of touch or pain sensation, double vision, blindness, deafness, seizures; dissociative symptoms such as amnesia; or loss of consciousness other than fainting)

    C.  Either (1) or (2):

I did not find any evidence in support of symptom magnification, hypochondriasis, or somatization disorder in Ms. Bayonne. She is neither preoccupied with her symptoms, nor does she refuse reassurance about her symptoms (ICD-10 criteria). In contrast, Ms. Bayonne tends to minimize her symptoms and tries her best to work through the symptoms. This is also evidenced by her repeated attempts to return to full-time work at Pitney Bowes for two years subsequent to her surgery, in spite of her deficits. (Plaintiff's Statement of Facts ¶ 102).

The Defendants decision was also not reasonable because their physician consultant Dr. Griffin prescribed a psychiatric treatment regime in response Dr. Einbinder's November 12, 2002 letter, in clear violation of the plan. (Plaintiff's Statement of Facts ¶ 136).

The Defendants also exhibited procedural irregularities in the administration of the plan benefits. (See Section Three infra).

The Defendants decision was also not reasonable because their own internal physician consultants Dr. Gross and Dr. Griffin opined that Ms. Bayonne was capable of performing sedentary work. (Plaintiff's Statement of Facts ¶¶ 67,75); Mein v. Pool Co. Disabled Int'l Employee Long Term Disability Benefit Plan, 989 F.Supp. 1337, 1350 (D.Colo.1998)(holding that a plan administrator's decision to deny ERISA benefits was arbitrary and capricious where it was based upon a physician's opinion that the claimant may be capable of some sedentary work).

The Defendants decision to deny benefits was also not reasonable because they unlawfully required her to provide "objective evidence" supporting her disability, when

---

1.    after appropriate investigation, each of the symptoms in Criterion B cannot be fully explained by a known general medical condition or the direct effects of a substance (e.g., a drug of abuse, a medication)
2.    when there is a related general medical condition, the physical complaints or resulting social or occupational impairment are in excess of what would be expected from the history, physical examination, or laboratory findings.
D.    The symptoms are not intentionally produced or feigned (as in Factitious Disorder or Malingering).