the Plan did not contain such language. (See discussion below). Ms. Bayonne did in fact

provide substantial objective medical documentation to support her claim.

The Defendants decision to deny benefits was also not reasonable because they

concluded that Ms. Bayonne continued to work while complaining of the same symptoms

that eventually led to her total disability. On November 22, 2002, Dr. Griffin stated,

"these facts coupled with the ee's demonstrated ability to perform her job over the past

two years since her original surgery leads me to conclude that she has work capacity for

her position as a cashier." (Plaintiff's Statement of Facts ¶¶ 75, 129). In the August 8,

2003 final denial letter, Defendants stated in response to Dr. Drazinic's statement that she

continued to work with symptoms, "the Committee interpreted that statement to mean

that even if those symptoms existed, they were not disabling." (Plaintiff's Statement of

Facts ¶ 13). The Defendants further stated, "the Committee noted that many of your

symptoms had existed prior to your surgery and had not prevented you from working."

(Plaintiff's Statement of Facts ¶ 135). In Hawkins v. First Union Corp. Long Term

Disability Plan, 326 F.3d 914, 918 (6th Cir.2003), Judge Posner ruled against the plan, in

that deferential review case, such argument is a "bad argument," "A desperate person

might force himself to work despite an illness that everyone agreed was totally disabling

(citations omitted). Yet even a desperate person might not be able to maintain the

necessary level of effort indefinitely. . .A disabled person should not be punished for

heroic efforts to work by being held to have forfeited his entitlement to disability benefits

should he stop working."

Ms. Bayonne has been treated and sought medical evaluations, both before and

after her acoustic neuroma surgery on April 19, 2000, for significant headaches and

21

vertigo. The objective medical evidence supports the existence of her headaches and

vertigo, among other totally disabling conditions, as a significant aspect of her total

disability. (Plaintiff's Statement of Facts at ¶¶ 25, 26, 32, 36, 37, 43, 70,71,72,105).

The Second Circuit has recently held an insured's objective complaints of pain are

to be considered in the evaluation of and may be demonstrative of a total disability:

> It has long been the law of this Circuit that "the subjective element of pain is an
> important factor to be considered in determining disability." Mimms v. Heckler,
> 750 F.2d 180, 185 (2d Cir.1984). While a district court reviewing an
> administrator's decision de novo is not required to accept such complaints as
> credible, see Aponte v. Sec'y of the Dep't of Health & Human Servs., 728 F.2d
> 588, 591 (2d Cir.1984) (stating that it is the function of the factfinder to appraise
> the credibility of witnesses's complaints of pain), **it cannot dismiss complaints of**
> **pain as legally insufficient evidence of disability**, see Rivera v. Schweiker, 717
> F.2d 719, 724 (2d Cir.1983) (citing plaintiff's frequent complaints to his wife and
> neighbor of headaches and neck pains and his testimony about same as
> "overwhelming, substantial evidence" of the extent of plaintiff's pain); Marcus v.
> Califano, 615 F.2d 23, 27 (2d Cir.1979) ( "[T]he subjective evidence of
> appellant's pain, based on her own testimony and medical reports of examining
> physicians, is more than ample to establish her disability, if believed.").

Connors v. Connecticut General Life Ins. Co., 272 F.3d 127, 136-137 (2d Cir.

2001). The Defendants denial and supporting legal arguments are in direct

conflict with the Second Circuit's holding on Connors, and must be rejected by

this Court.

In Barber v. Beech Aircraft Corp, the Court held in favor of a claimant

with acoustic neuroma because although Barber's physicians were not able "to

explain the severity of plaintiff's complaints under current diagnostic technology,

Dr. Mastio simply concluded that plaintiff's pain must not be so severe as to

warrant a finding of total and permanent disability." 1991 WL 192121

(D.Kan.1991). This case is directly on point here.

In the instant case, the Defendants physician consultants simply concluded that Ms. Bayonne's on-going and progressive complaints of pain were not medically verifiable and did not rise the level of total disability. On September 16, 2002, Dr. Broder stated, "report of headaches, a self-report symptom, that has yet to be <u>objectively substantiated</u>." (Plaintiff's Statement of Facts ¶ 57). On October 2, 2002, Dr. Broder again stated "Ms. Bayonne has been afflicted with headaches since 1993, therefore, there is absence of any causal relationship between the acoustic neuroma surgery and the headaches." (Plaintiff's Statement of Facts ¶ 62). On October 29, 2002, Dr. Gross stated, "I believe her symptoms post-operatively are primarily characterized by symptom magnification and has no bearing on any organic structural disability incurred from the operation." (Plaintiff's Statement of Facts ¶ 67). On November 1, 2002, Dr. Broder again stated, "it is medically evident that the neurologic and physiatric treatment to Ms. Bayonne in the past and currently, would be unrelated to any anatomical, pathophysiological condition that can be corroborated and substantiated by valid, neurological assessments." (Plaintiff's Statement of Facts ¶ 68). On November 22, 2002, Dr. Griffin stated, "while I do not doubt the presence of this ee's intermittent symptoms of her fatigue and vertigo they do not appear to be of a severity which would warrant total & permanent disability." (Plaintiff's Statement of Facts ¶ 75).

Ms. Bayonne asserts that her treating physicians should be afforded more weight than that of the Defendants. "There is no 'treating physician rule' in ERISA disability cases, although "[p]lan administrators ... may not arbitrarily refuse to credit a claimant's

reliable evidence, including the opinions of a treating physician." <u>Black & Decker</u>

<u>Disability Plan v. Nord</u>, 538 U.S. 822, 123 S.Ct. 1965, 1972, 155 L.Ed.2d 1034 (2003).

Judge Posner in the Sixth Circuit provides helpful guidance when balancing the

credibility of competing physicians:

> If the incentives of the treating physician and of the plan's consultant are assumed
> to be equal and opposite, consideration of incentives drops out and the superior
> information likely to be possessed by the treating physician, especially when as in
> this case the consultant does not both to examine the patient, may support the
> treating-physician presumption after all.

<u>Hawkins</u>, 326 F.3d at 917.

In the instant case, the Defendants refused to credit Ms. Bayonne's treating

physicians that she was totally disabled from medical symptoms associated with her

acoustic neuroma tumor, instead relying upon an un-credible conclusion of "tremendous

symptom magnification." (Plaintiff's Statement of Facts ¶ 67) If Defendants had credited

Ms. Bayonne's reliable evidence, they would have been forced to recognize the realistic

possibility her acoustic neuroma tumor caused more damaged than any physician on

either side could medically verify.  Although not examining her personally, Dr. Broder

commented on this specifically, "the tumor may have invaded the nerve, prior to

surgery." (Plaintiff's Statement of Facts ¶ 63).  Even Dr. Gross, having examined Ms.

Bayonne, recognized "she demonstrated an irregular, unusual type of tremor." (Plaintiff's

Statement of Facts ¶ 67).  The Defendants failed to develop all available evidence and

consider relevant evidence that might reasonably be expected to affect the outcome, thus

their decision was not supported by substantial evidence. <u>Barber</u>, 1991 WL 192121 *16.

It was just easier for the Defendants to conclude she was faking her disability,

then to pay out on the claim. See <u>Connors</u>, 272 F.3d at 135-136 ("In any event, it seems

anomalous to give less weight to someone in Dr. Reddy's position than to the views of professionals hired by plaintiff's adversary, an insurance company."). A court may review skeptically an administrator's decision to afford decisive weight to the opinions of its own staff/paid consultants and to minimize those of the treating doctor. Hines v. Unum Life Ins. Co. of Am., 110 F. Supp.2d 458, 467 (W.D.Va. 2000); See also, Pappas v. Reliance Standard Ins. Co., 20 F. Supp.2d 923, 931 (E.D.Va. 1998).

Ms. Bayonne's treating physicians, having observed her over an extended period, were in a unique position to fully assess a claimant's functional capacity. Edgerton v. CNA Insur. Co., 215 F. Supp.2d 541 (E.D. Pa. 2002) citing Skretvedt v. E.I. Dupont De Nemours and Co., 268 F.3d 167 (3rd Cir. 2001); Cohen v. Standard Ins. Co., 155 F. Supp.2d 346, 352 (E.D.Pa. 2001); Siebert v. Standard Ins. Co. Group LTD Policy, 220 F.Supp. 2d 1128 (C.D.Ca. 2002); Walker v. LTD Plan of Sponsor Tri-Valley Growers, 2002 WL 467684 (N.D.Ca. 2002) and Durr v. Metropolitan Life Ins. Co., 15 F.Supp.2d 205, 213 (D.Conn.1998)7; Piscottano v. Metropolitan Life Ins. Co.,118 F.Supp.2d 200, 212 (D.Conn.9/22/00)(JBA).

In their denial letters, the Defendants asserted that Ms. Bayonne is not totally disabled due to "symptom magnification." Ms. Bayonne retained forensic experts who ruled out this allegation to deny benefits. The Defendants have never requested an independent medical examination from a psychiatrist or psychologist. This failure supports Ms. Bayonne's assertion that Defendants acted unreasonably in denying her

---

7 (holding the following factors to be used to determine how much weight to give a treating physician's opinion on the nature and severity of an individual's impairments include " '(i) the frequency of the examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors' ". (quoting Social Security standards from 20 C.F.R. § 404.1527(d)(2)-(6))

STD and LTD claims. See, <u>Sullivan</u>, 82 F.3d at 1255-56. However, the Defendants did

conduct two IME's using two allegedly "independent consultant" neurologists. Both Drs.

Gross and Sweet opined that Ms. Bayonne does not provide "objective medical evidence"

to support her total disability, and the only rationale offered is that of "tremendous

symptom magnification".8 However, neither physician consultant nor Dr. Broder was an

"expert" in diagnosing psychiatric disorders. <u>Woo</u>, 144 F.3d at 1162; <u>Sansevera</u>, 859

F.Supp. at 113. The irony here is that if the Defendants did conduct a psychiatric IME,

the findings would support Ms. Bayonne's conclusion from her experts rendered on June

11, 2003, that symptom magnification did not exist.

### 3.    Ms. Bayonne's SSDI Award is Persuasive Evidence of Her Total Disability

Ms. Bayonne asserts that the Defendants decision was also not reasonable

because she was awarded SSDI benefits. On April 19, 2003, Ms. Bayonne was

informed in writing that the Social Security Administration had approved her

claim for disability income benefits, based on the same medical evidence

provided to Pitney Bowes. (Revised Amended Complaint at ¶ 58);(Plaintiff's

Statement of Facts ¶ 96) Ms. Bayonne was found to be totally disabled from any

occupation, in light of her age, education, experience and training, even in the

absence of her June 11, 2003 psychiatric/neurocognitive IME report. The notice

of SSDI award was provided to the Defendants in Ms. Bayonne's June 11, 2003

---

8 Dr. Broder is the "ring leader" behind the "symptom magnification theory" and directly undermined the alleged "independence" of both Drs. Gross and Sweet, when he notified them in the respective referral letters "the left upper and low extremity weakness is based upon a condition compatible with conscious forcing, symptom magnification, non-organic/non-structural pain syndrome. . ." (ADR 050-054; 070-075).

administrative appeal. (Appeal Record pp.336-339);(ADR 569-572);(Plaintiff's Statement of Facts ¶ 96).9

The Courts have consistently stated that proof of a disability award from the Social Security Administration, while not controlling on a plan administrator (See e.g., Anderson v. Operative Plasterers' & Cement Masons' Int'l. Assoc., 991 F.2d 356 (7th Cir.1993)(Social Security determination of disability not dispositive of disability under pension plan), does provide additional evidence in which to determine an abuse of discretion under the arbitrary and capricious standard of review. See e.g. Ladd v. ITT Corp., 148 F.3d 753, 755-56 (7th Cir.1998)(considering grant of social security benefits when determining whether insured's denial was arbitrary and capricious under ERISA); Dorsey v. Provident Life and Accident Ins. Co., 167 F.Supp.2d 846, 857, FN11 (E.D.Pa.2001), ("But while an SSA award is not dispositive in determining whether an ERISA administrator's decision was arbitrary and capricious, it may be considered as a factor").

Presumably, the Defendants obtained a copy of the SSDI decision, due to the requirements and signed releases contained in the Summary Plan Description. (Plaintiff's Statement of Facts: Appendix A (Administrative Appeal Record). The Defendants never provided a "reasonable explanation" for the continued denial of benefits in full view of the SSDI determination, after receiving notice of the SSDI award in the June 11, 2003 administrative appeal. There is an irony arising from Defendants omissions on this issue.

---

9 The Pitney Bowes Plan (Section 5.13(a) and (c)) requires all participants to file for SSDI benefits, as a condition of receiving LTD benefits. (Plaintiff's Statement of Facts: Appendix A);(Revised Amended Complaint at Exhibit B). Ms. Bayonne applied and successfully obtained SSDI benefits on April 19, 2003. This action met her obligations under the LTD plan. Ms. Bayonne's SSDI claim file is now incorporated in its entirety herein by reference.

Once the SSDI benefits were approved, the Defendants could offset Ms. Bayonne's LTD award dollar for dollar, thus reducing the overall LTD payment made by the plan. A financial incentive and benefit to the Defendants. (Plaintiff's Statement of Facts ¶ 142).

Although the Defendants state in the Plan that Social Security Disability rulings are not relevant (Plaintiff's Statement of Facts ¶ 97), the overwhelming weight of legal authority and the objective medical evidence in this case indicate that Ms. Bayonne's April 19, 2003 SSDI decision must be persuasive and even determinative.

As a direct and proximate result of the Defendant Plan Administrator's and Defendant Disability Department's breach of their fiduciary duties owing to Ms. Bayonne, she has been unlawfully denied long-term disability benefits to which she is entitled under the plan. (Plaintiff's Statement of Facts ¶¶ 144, 145).

### 4.    Defendants Violated ERISA Notice Requirements

Ms. Bayonne asserts the Defendants failed to properly communicate to her what standard of proof was required to demonstrate her total disability. Under either standard of review, the Defendants continued failure to provide a specific explanation as to what information they required to demonstrate her total disability and unlawfully requiring her to provide "objective evidence" of her total disability, when the controlling plan did not include language of "objective evidence," was an abuse of discretion, breach of fiduciary duties, and conflict of interest.

a.   Defendants Failure to Notify Ms. Bayonne What Specific Information Was Needed to Perfect Her Claim After Denial

ERISA requires the Defendants must "provide adequate notice in writing to any

participant or beneficiary whose claim for benefits under the plan has been denied, setting

forth the specific reasons for such denial, written in a manner calculated to be understood

by the participant." 29 U.S.C. § 1133; (Plaintiff's Statement of Facts ¶¶ 134,135, 137).

In addition, the Defendants plan procedures must "afford a reasonable opportunity

. . .for a full and fair review" of denials. Id. As the Second Circuit has explained, the

purpose of these requirements is twofold: "First, notice can provide the member with

information necessary for him or her to know what he or she must do to obtain the

benefit. Second, if the [plan administrator] persists in its denial, notice can enable the

member effectively to protest that decision." Juliano v. Health Maintenance Organization

of New Jersey, Inc., 221 F.3d 279, 287 (2d Cir.2000).

In furtherance of these mandates, Department of Labor regulations require that

plans must provide claimants with written notification of claim denials including the

following information:

    (i)     the specific reason or reasons for the adverse determination;
    (ii)    reference to the specific plan provisions on which the determination is based;
    **(iii)   a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary.**

29 C.F.R. § 2650.503-1(g). The regulations further require that in the case of a plan

providing disability benefits,

> [i]f an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination, [the notification shall set forth] either the specific rule, guideline, protocol, or other similar criterion; or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request.

29 C.F.R. § 2650.503-1(g)(v). The regulations specify that claims procedures for a plan "will be deemed to be reasonable only if [they] comply" with these requirements. 29 C.F.R. § 2650.503-1(b)(1). Defendants claims procedure did not comply with the above requirements and must be deemed not reasonable.

A violation of ERISA and its implementing regulations has been held to constitute "a significant error on a question of law," VanderKlok v. Provident Life and Acc. Ins. Co, Inc., 956 F.2d 610, 616 (6th Cir.1992); Omara v. Local 32B-32-J Health Fund, No. 97 Civ.7538, 1999 WL 184114 at *4 (E.D.N.Y. March 30, 1999), and may "sufficiently **taint** [the fiduciary's] denial of [benefits] so as to warrant a finding that [the denial] was arbitrary and capricious." Veilleux v. Atochem North America, Inc., 929 F.2d 74, 76 (2d Cir.1991).10

Ms. Bayonne asserts the Defendants failed to afford her a full and fair review of her claim for benefits. At each stage of the STD and LTD review process at which her claim was denied, the Defendants failed to provide her with adequate notice as to what additional medical documentation would be required to cure the defect in her application and supporting documents pursuant to 29 C.F.R. § 2650.503-1(g)(iii). See Barber, 1991 WL 192121, *15. (Plaintiff's Statement of Facts ¶ 143). This failure violated ERISA and its implementing regulations, thereby rendering the Defendants resulting determination arbitrary and capricious and evidence a conflict of interest requiring a de novo review.

---

10 See also Burke Kodak Retirement Income Plan, 336 F.3d 103, 109 (2d Cir.2003)(inadequacy of denial notice estopped defendant from raising time-bar provision in plan terms as a defense); Veltri v. Building Service 32B-J Pension Fund, No.02 Civ. 4200, 2003 WL 22705124, at *4 (S.D.N.Y. Nov.17, 2003)(same); Gilbert v. Burlington Industries, Inc., 765 F.2d 320, 328-29 (2d Cir.1985)(although employer was not estopped from raising preemption as a defense to ERISA suit, district court could determine "whether employer's violations sufficiently tainted its denial of severance pay so as to warrant finding that it was arbitrary and capricious").

Neither a specific, express inquiry on the part of the Defendants, fiduciaries, is a necessary predicate to finding an ERISA violation. Hudson v. General Dynamics Corp., 118 F.Supp.2d 226, 247 (D.Conn.2000). "In explicating the nature of fiduciary duties under ERISA, courts have long found that omissions may be actionable, as well as positive statements." Id. See Pocchia v. NYNEX Corp., 81 F.3d 275, 279 (2d Cir.1996) (employer had fiduciary duty not to make affirmative misrepresentations or omissions). 11

A fiduciary like the Defendants cannot leave its front-line benefits counselors in the dark, or instruct them to give noncommittal and nonfactual responses to inquiries regarding potential benefits, if the information that is withheld is material to beneficiaries. Here, the Defendants continually failed to advise Ms. Bayonne what additional medical documentation was required to perfect her claim for benefits, even after she pleaded with them for assistance. (Plaintiff's Statement of Facts ¶¶ 49, 71). Such a stance is inconsistent with the mandate that a fiduciary discharge its duties with care, skill, prudence and diligence required by the statute and Defendants own plan terms. (Plaintiff's Statement of Facts ¶ 14); 29 U.S.C. § 1104(a)(1)(B); ERISA § 502(a)(1)(B); Donovan, 680 F.2d at 271 (pursuant to a fiduciary's duty of loyalty, all decisions regarding an ERISA plan "must be made with an eye single to the interests of the participants and beneficiaries"). Even if the failure to provide complete and accurate information was unintentional, inadvertent omissions can also rise to the level of

_____

11 "For example, in Becker v. Eastman Kodak, 120 F.3d 5 (2d Cir.1997), the Second Circuit found a breach of fiduciary duty, based partially on the fact that the benefits counselor failed to provide 'complete and accurate information' about the mechanics and timing of the election to retire. . . the court citing approvingly cases such Eddy v. Colonial Life, 919 F.2d 747 (D.C.Cir.1990) (employer has not only duty not to misinform but also "a duty upon inquiry to convey to a lay beneficiary . . . correct and complete material information about his status and options.") and Bixler v. Central Pennsylvania Teamsters Health and Welfare Fund, 12 F.3d 1292 (3d Cir.1993)(failure to advise beneficiary of benefits available to her was breach of fiduciary duty, even when inquiry limited.)" Id.

fiduciary breaches. See <u>Berlin v. Michigan Bell Telephone</u>, 858 F.2d 1154, 1163 (6th

Cir.1988)(administrator and fiduciary had duty "not to make misrepresentations, either

negligently or intentionally, to potential plan participants").

Given the holding in <u>Donovan</u>, that a failure to provide a beneficiary with

material information to their claim is inconsistent with the mandate that a fiduciary

discharge its duties with care, skill, prudence and diligence required by the statute, it is

clear that the Defendants breached their respective fiduciary duty to Ms. Bayonne in this

case. If Defendants believed a "tremendous symptom magnification" was the "sole"

cause of her disability, they should have informed her what this psychiatric condition

was, why and how they made that determination, and what "specific" information should

be provided to cure such a defect in her claim. The Defendants clearly did not do so in

this case. Had Defendants requested the needed information, obtained a psychiatric

examination and offered a rational reason for its denial, it arguably would be entitled to

substantial deference. But to deny Ms. Bayonne's claim without explanation of the

"symptom magnification" and without obtaining relevant information (i.e. psychiatric

examination) is an abuse of discretion. See <u>Kunin v. Benefit Trust Life Ins. Co.</u>, 910 F.2d

534, 538 (9th Cir.1990) (burden is on plan to obtain adequate information to make

decision); cf. <u>Halpin v. W.W. Grainger, Inc.</u>, 962 F.2d 685, 691 (7th Cir.1992) (an

ERISA plan cannot rely on a lack of information to support its denial of benefits when it

fails to inform the beneficiary about the missing information so that the beneficiary can

provide it).

In determining whether the Defendant Plan Administrator and Defendant

Disability Department breached their fiduciary duties pursuant to ERISA and its

32

implementing notice regulations is necessarily a multi-step, fact-intensive inquiry. See Cook v. New York Times Long Term Disability Plan, 2004 WL 203111 * 7 (S.D.N.Y. Jan.30, 2004)(citing Halpin v. W.W. Grainger, Inc., 962 F.2d 685, 690 (7th Cir.1992)). The focus is on what the Defendant Plan Administrator and Defendant Disability Department communicated to Ms. Bayonne in the letters informing her of the denials. The adequacy of the notice provided to Ms. Bayonne must be judged in the context of the determination that followed it. The Defendant Plan Administrator and Defendant Disability Department response to the subsequent June 11, 2003 appeal is relevant to whether Ms. Bayonne was in fact given sufficient notice in the denial letter dated December 16, 2002, as to what information would be necessary to perfect her claim. In order to evaluate the adequacy of the notice in this case, this Court must look first to what information was communicated to the Ms. Bayonne in the denial of the claim and to what information she submitted in response. Then the Court must determine whether the August 8, 2003 denial of the June 11, 2003 appeal is consistent with the rationale given in the first denial notice, dated December 16, 2002. From this comparison, Ms. Bayonne asserts that the Court will discover the Defendants assertion in the August 8, 2003 denial that the information provided was insufficient and that they impermissibly relied upon additional factors that were never communicated to her.

In the December 16, 2002 denial letter, the Defendants informed Ms. Bayonne that the decision was based on reviews conducted by physician consultants Drs. Gross and Sweet and a functional capacity report. The primary basis for the denial was that Ms. Bayonne allegedly exhibited "tremendous" symptom magnification, a psychiatric condition, as the source of her disabling condition. (Plaintiff's Statement of Facts ¶ 79).

However, the denial letter never provided reasonable or specific notice to Ms. Bayonne that she should obtain a psychiatric analysis to cure this alleged defect in her claim, in violation of 29 C.F.R. § 2650.503-1(g)(iii). <u>Booton v. Lockheed Medical Benefit Plan</u>, 110 F.3d 1461, 1463 (9th Cir. 1997) (failure to request information and adequately articulate denial to participant means court applies less deferential standard).

In addition, the denial letter also never provided reasonable and specific notice as to any other material that should be provided to cure the alleged defect in the claim, in violation of 29 C.F.R. § 2650.503-1(g)(iii). Ms. Bayonne asserts that had Defendant Plan Administrator and Defendant Disability Department provided such information, they would be "tipping her" off as to what information they believed would cure any defect in the claim and cause them to reverse their decision. Eventually, Ms. Bayonne would submit additional psychiatric findings from a forensic psychiatrist clearly refuting the denial rationale (Plaintiff's Statement of Facts ¶¶ 98-113) of "tremendous symptom magnification", which was intentionally minimized by the Defendants in the August 8, 2003 denial letter. (Plaintiff's Statement of Facts ¶¶ 116-133).

In direct contrast, the Defendants unpersuasively assert a "meticulous" and "detailed consideration" of Ms. Bayonne's administrative appeal and supporting evidence. (Defendants Memo. At pp. 21-22). This self-serving and conclusory argument is unsupported from the record. Defendants want to pull the wool over the Court's and Ms. Bayonne's eyes in proffering their decisions were based on substantial evidence of "tremendous symptom magnification", as opined only by neurologists unqualified in psychiatric determinations, in the clear absence of their own psychiatric examination.

34

Furthermore, to even suggest "Plaintiff received every opportunity to present

whatever evidence she chose to support her claim"(Defendants Memo. At p. 22), does not

make their own failure to comply with 29 U.S.C. § 1133 and 29 C.F.R. § 2650.503-

1(g)(iii) lawful. Defendants "in hindsight" argument is elusive and must be rejected.

    b.    <u>Defendants Failure to Provide Guidelines and Protocols</u>

In addition, the December 16, 2002 denial letter states, "[A] copy of the guideline

or protocol used to make this determination (if any) will be provided free of charge upon

request." (Plaintiff's Statement of Facts ¶ 79). On January 21, 2003, Ms. Bayonne,

through counsel, made two written requests to the Defendants for all "pertinent

documents" used in forming the denial, including the "guideline or protocol". (Plaintiff's

Statement of Facts ¶¶ 84,85, 86, 88);(Revised Amended Complaint ¶¶ 49, 50). The

Defendant Plan Administrator and Defendant Disability Department response was due by

February 20, 2003. The Defendant Plan Administrator and Defendant Disability

Department did not respond to the letter, nor provided the "guideline or protocol."

On February 14, 2003, Ms. Bayonne's attorney telephoned Defendant Plan

Administrator's and Defendant Disability Department's benefits attorney Michael Lalli

requesting copies of the STD and LTD claim files, and notified him that Ms. Bayonne

was to undergo a psychological review by a forensic psychiatrist. (Revised Amended

Complaint at ¶ 53); (Plaintiff's Statement of Facts ¶¶ 91, 87).

On March 2, 2003, Ms. Bayonne, through counsel, sent another written request

for copies of the STD and LTD claim files. Ms. Bayonne notified Defendants she had

not received the requested information and that the Defendant Plan Administrator and

Defendant Disability Department had violated ERISA and subject to a $110 per day

penalty. (Revised Amended Complaint at ¶ 54); (Plaintiff's Statement of Facts ¶¶ 92,93). The Defendant Plan Administrator and Defendant Disability Department finally produced the requested documents on March 10, 2003, some fifty (50) days after it was requested. (Revised Amended Complaint at ¶ 55); (Plaintiff's Statement of Facts ¶ 94). However, the Defendant Plan Administrator and Defendant Disability Department failed to provide any "guideline or protocol" used in rendering the December 16, 2002 denial, in violation of 29 C.F.R. § 2650.503-1(g)(v). Marolt v. Alliant Techsystems, Inc., 146 F.3d 617, 620 (8th Cir.1998) ("We will not permit ERISA claimants denied the timely and specific explanation to which the law entitles them to be sandbagged by after-the-fact plan interpretations devised for purposes of litigation.").

If the Defendants counter that they did not use any guideline or protocol, then why include such information in "critically important" denial letters if such guidelines and protocols do not exist. The Defendants argument does not make sense. No claimant is able to determine what the Defendants administrative process involves, unless she asks for documentation supporting guidelines and protocols. Now we are told Ms. Bayonne has no right to obtain such information. However, the Defendants did assert that the basis of the denial of benefits was due to "symptom magnification", but never provided any guideline or protocol on this now elusive diagnosis. Similar to this case, the court in Cook stated, "it [Metlife] did not outline those criteria (Chronic Fatigue Syndrome Criteria established by the Centers for Disease Control), or direct her to where she might find them." 2004 WL 203111 *8. Defendants argument is evasive and should be confronted and rejected by the Court.

c.    Defendants Requirement of Objective Evidence Was An Abuse of Discretion

Ms. Bayonne asserts that Defendants required her to submit "objective evidence" of her disabling condition of post operative acoustic neuroma, but never informed her what that objective evidence was. The facts in this case demonstrate that Defendants imposed the objective evidence requirement from the outset of Ms. Bayonne's claim, and each professional who subsequently reviewed Ms. Bayonne's claim required objective evidence. By refusing to evaluate Ms. Bayonne's claim absent objective evidence, the Defendants abused its discretion by imposing new terms into the Plan. See Maronde v. Sumco USA Group Long-Term Disability Plan, 2004 WL 825627 *7 (D.Or. April 14, 2004), reconsideration denied by Maronde v. Sumco USA Group Long-Term Disability Plan, 2004 WL 1196645 (D.Or.May 26, 2004); Bunnell v. Sullivan, 947 F.2d 341, 345-347 (9th Cir. 1991)(en banc)("We cannot conclude that Congress intended to require objective medical evidence to fully corroborate the severity of pain while aware of the inability of medical science to provide such evidence.")

Ms. Bayonne argues that her medical condition and totally disability determination was rendered by Dr. Einbinder, who utilized all available medical science in an attempt to explain the etiology of her symptoms. "Not all medical conditions are readily susceptible to verification by x-rays or other laboratory tests. Some complaints – such as pain and fatigue—are difficult to objectively measure…Merely because we cannot see pain or fatigue on an x-ray, or measure it in a laboratory, does not mean that it is not real…These symptoms may also persist notwithstanding our uncertainty as to the precise etiology. In such cases, diagnostic procedures such as x-rays and lab tests are only one component of the total picture." Palmer, 994 F.Supp. at 1233.

Ms. Bayonne asserts her disability should be analyzed under the same rubric as

cases involving Chronic Fatigue Syndrome.12 Accordingly, "[i]t is prima facie unreasonable to require claimants with [Acoustic Neuroma] to submit objective evidence of their condition, given that it is a diagnosis of exclusion. See <u>Cook v. Liberty Life Assurance Co.</u>, 320 F.3d 11, 21-22 (1st Cir.2003); <u>Hawkins</u>, 326 F.3d at 919; <u>Friedrich v. Intel Corp.</u>, 181 F.3d 1105, 1112 (9th Cir.1999); <u>Sansevera</u>, 859 F.Supp. at 113; <u>Cook</u>, 2004 WL 203111 *4.13

In Defendants denial letter on August 8, 2003 (Plaintiff's Statement of Facts ¶ 97), and reports by their physician consultants, required Ms. Bayonne to provide "objective proof" of her disability. (Plaintiff's Statement of Facts ¶¶ 57, 62, 75, 120, 130, 133) The Defendants Plan fails to set forth language requiring claimants to provide "objective evidence" to support their total disabilities. The Plan only provides a vague "Proof of Loss" provision (Plaintiff's Statement of Facts ¶¶ 134, 135)14.

Although the Defendants could not legally require Ms. Bayonne to provide "objective evidence", she exceeded this quantum of proof through her submissions during the administrative stage of this case, especially in her June 11, 2003 appeal. This Court

---

12 Ms. Bayonne asserts that her acoustic neuroma disability is similar to Chronic Fatigue Syndrome ("CFS"). CFS is a disease of unknown etiology and a diagnosis is made after objectively excluding all other diseases criteria. Ms. Bayonne's treating physicians and psychiatric experts have ruled out all other potentially disabling conditions, and concluded that she suffers from totally disabling conditions occurring post operatively. Thus, this Court's assessment of Ms. Bayonne's total disability using the legal analysis in CFS cases is appropriate.

13 "Although there is no 'dipstick' test for CFS, a set of established criteria, such as those used by the CDC, are becoming increasingly accepted as tools in diagnosing the condition. (citation omitted) It would not be unreasonable to require claimants to submit evidence in accordance with such requirements, provided they were so informed in any communications from their plan administrator. . . It would be unreasonable to fail to communicate with reasonable specificity what would satisfy these requirements, especially given CFS is a disease that is not readily identified, and that there is disagreement within the medical community about which 'objective' markers serve as its indicators."

14 Defendants Plan states in pertinent part, ". . .a Participant shall be required to submit initially and from time to time **whatever proof or documentation the Disability Department may require...**" and ". . .written proof substantiating the occurrence, character and extent of disability. . ." (Appeal Record p. 41);(ADR 275); **"Employee may be required to submit conclusive medical evidence of the continuance of his or her Total Disability"** (Appeal Record p. 41); (ADR 275).

can easily determine the Defendants actions clearly were designed to misinform and/or not inform at all. The Defendants unlawful requirement of "objective evidence" was an "extra-contractual eligibility criteria" that contradicts the plain language of the Plan, and is legally sufficient to deny Defendants motion.

The notice violations mentioned above were arbitrary and capricious, and provide evidence of a conflict of interest which tainted the Defendants review, substantial enough to invalidate the Defendants determination on August 8, 2003 and warrant a denial of Defendants motion. See <u>Veilleux</u>, 929 F.2d at 76; <u>VanderKlok</u>, 956 F.2d at 616; <u>Omara</u>, 1999 WL 184114, at *4. (Plaintiff's Statement of Facts ¶¶ 144, 145).

## IV.    CONCLUSION

The administrative record in this case contains nothing more than scraps of evidence to offset the evidence presented by Ms. Bayonne and her treating physicians/forensic experts. The Defendants denial of the application was unreasonable and should be reversed. The Defendants Cross-Motion for Summary Judgment should be denied, with costs and attorneys fees to Ms. Bayonne. Ms. Bayonne's Motion for Summary Judgment should be granted.

GERTRUDE BAYONNE
Plaintiff

By: _____
Mark P. Carey(ct17828)
Carey & Associates, P.C.
71 Old Post Road, Suite One
Southport, CT 06890
(203) 255-4150 tel.
(203) 255-0380 fax.
Mcarey@capclaw.com
Her Attorney


## CERTIFICATION OF SERVICE

This is to certify that a copy of the foregoing was delivered on this the 9th day of July,
2004 via United Parcel Service Second Day delivery, fee prepaid, to:

Theodore J. Tucci
Robinson & Cole, LLP
280 Trumbull Street
Hartford, CT 06103
Counsel for Defendants

Sandra R. McCandless
Joanne M. Krakora
Nichole A. Diller
Sonnenschein, Nath & Rosenthal, LLP
685 Market Street, 6th Floor
San Francisco, CA 94105
Counsel for Defendants

_____
Mark P. Carey