UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2004 JUL 12 A 10: 07

U.S. DISTRICT COURT
BRIDGEPORT, CONN

| | |
|---|---|
| GERTRUDE BAYONNE,<br>Plaintiff, | : |
| | :    Civ. Action No.<br>      3:03CV0712(WWE) |
| v. | : |
| PITNEY BOWES, INC. &<br>THE PITNEY BOWES, INC.<br>LONG TERM DISABILITY PLAN,<br>THE PITNEY BOWES, INC. LONG<br>TERM DISABILITY PLAN<br>ADMINISTRATOR AND THE<br>PITNEY BOWES, INC.<br>DISABILITY DEPARTMENT,<br>                 Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:    JULY 9, 2004 |

### PLAINTIFF'S FED.R.CIV.P. 56(e) AND LOCAL CIVIL RULE 9(c)(2) "ADMIT/DENY" STATEMENT IN OPPOSITION TO DEFENDANTS CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT ON HER SECTION 502(a)(1)(B) & (a)(3) ERISA CLAIMS

Pursuant to Fed.R.Civ.P. 56(e) and Local Civil Rule 9(c)(2), the Plaintiff Gertrude Bayonne ("Ms. Bayonne") hereby files her "admit/deny" statement of material facts not in dispute contained in Defendants Fed.R.Civ.P. 56(c) and Local Civil Rule 9(c)(1) Statement of Material Facts Not in Dispute.[1]

---

[1] Ms. Bayonne will refer to her Local Civil Rule 9(c)(2) Statement of Material Facts in Dispute in the following manner, ("Plaintiff ¶ ___"). Plaintiff will refer to her Administrative Appeal Record as ("Appeal Record p.___"). Plaintiff will refer to Defendants Administrative Record as ("ADR ___").

| "FACT" | RESPONSE |
|---|---|
| 1. Pitney Bowes Inc. (the "Company") employed Plaintiff Gertrude Bayonne as a cashier in its cafeteria. Administrative Record ("AD REC") 356, 442. | 1. Admit.[2] See (same) Appeal Record pp.124, 209. |
| 2. The primary focus of Plaintiff's position entailed fulfilling the basic functions of a cashier, filling the soda, coffee and condiment stations, wiping off counters, and completing a daily revenue report. AD REC 81; 384. | 2. Aver that this statement is undisputed for purposes of this motion. See (same) Appeal Record p.152. |
| 3. Given the nature of the responsibilities, Plaintiff's occupation has the classification of sedentary. AD REC 027;315A. | 3. Deny. Legal argument. Plaintiff lacks sufficient information to either admit or deny the statement. |
| 4. The Company accommodated Plaintiff following her April 2000 surgery by removing all tasks involving heavy lifting from her job duties. AD REC 082. | 4. Deny. Legal conclusion. |
| 5. Plaintiff reported experiencing intermittent headaches in 1993 and later developed left-sided numbness, hand tremors, and dizziness. AD REC 037, 040; 331, Plaintiff's Appendix B. | 5. Deny.<br>Admit, Dr. Einbinder stated, "Her history is a bit complicated. It appears that in 1993 she began to develop headache after her typical walk with left eye discomfort. She was eventually found by her internist to be hypertensive but continued with headache with exercise despite appropriate medication. From 1993 to 1998 she continued with headache. . .When these continued further, were associated with dizziness, poor balance and a hearing abnormality in her left ear . . .a left acoustic neuroma and subsequently underwent excision of such on April 19, 2000." (Appeal Record p. 137);(ADR 369).<br><br>Admit, Dr. Gross also stated, "She developed a mild left facial weakness and continued to have difficulties with neck pain and symptoms in her left arm which in fact began in 1993, as stated above. She also complains of poor balance and vertigo, both of which preceded her surgery along with the other symptoms." ADR 037. This evidences that Ms. Bayonne continued to |

---

[2] Those statements that are "admit" are for purposes of this motion only.

| | |
|---|---|
| | suffer disabling symptoms post operatively. |
| 6. Plaintiff's physical condition did not prevent her from working from 1993 through April 2000. AD REC 037, 040; 331, Plaintiff's Appendix B. | 6. Aver this statement is undisputed for purposes of this motion. But see, Dr. Einbinder's statement, "she additionally had primary left upper and some left lower extremity dysfunction preceding this surgery without clear explanation of such on extensive diagnostic studies performed by multiple physicians." (Appeal Record p.136);(ADR 368). And See, Dr. Drazinic's comment "In contrast, Ms. Bayonne tends to minimize her symptoms and tries her best to work through the symptoms. This is also evidenced by her repeated attempts to return to full-time work at Pitney Bowes for two years subsequent to her surgery, in spite of her deficits." (Appeal Record p.413);(ADR 646). |
| 7. Studies performed in 2000 revealed a tumor behind Plaintiff's left ear called an acoustic neuroma, which John F. Kveton, M.D. surgically removed on April 19, 2000. AD REC 012, 057-060; 395-398, 420. | 7. Aver this statement is undisputed for purposes of this motion. But See, Dr. Piepmeier stated in his letter dated March 31, 2000, "she has noted progressive hearing loss in the left ear associated with a feeling of fatigue and some pain in her neck. She has also noted some progressive balance difficulty. Apparently an imaging study revealed a small lesion arising in the left internal auditory canal consistent with an acoustic neuroma." (ADR 012). |
| 8. Plaintiff received short-term disability benefits from April 19 through September 1, 2000. AD REC 170. | 8. Admit. Defendants approved Ms. Bayonne's short term disability based on the same medical disability she was eventually denied under the Defendants LTD plan. |
| 9. Plaintiff returned to work following her recovery from the acoustic neuroma surgery, and continued to work without significant absences until June 24, 2002. AD REC 005, 010. | 9. Deny. Phawana Chaorinuea's Executive Summary to EBC Members actually states that during the time period leading up to June 24, 2002, "Ms. Bayonne received a total of 111 days of short term disability benefits. . . December 19, 2001 through January 2, 2002 (10 days), June 24, 2002 through August 10, 2002 (35 days), August 12, 2002 through November 5, 2002 (61 days)." (ADR 005, 010). See Dr. Drazinic's statement "In contrast, Ms. Bayonne tends to minimize her symptoms |

3

| | |
|---|---|
| | and tries her best to work through the symptoms. This is also evidenced by her repeated attempts to return to full-time work at Pitney Bowes for two years subsequent to her surgery, in spite of her deficits." (Appeal Record p.413);(ADR 646). |
| 10. Plaintiff submitted a claim for short-term disability benefits based on her complaints of left-sided weakness and numbness on or around June 24, 2002. AD REC 096-097; 354, 356. | 10. Admit, but Dr. Einbinder also noted in the application for benefits of chronic headache. (ADR 096). The application was signed on July 15, 2002, not June 24, 2002. Dr. Griffin approved the STD claim on July 19, 2002. (ADR 097). |
| 11. Dr. Kveton found Plaintiff's complaints unrelated to her surgery and referred her to Roslyn Einbinder, M.D., a neurologist, for further analysis. AD REC 013, 369-370; 418-419. | 11. Deny. Dr. Kveton actually referred Ms. Bayonne to Dr. Evangelos Xistris on July 7, 2000 (ADR 418), and eventually to Dr. Einbinder on or about October 2000. (ADR 369). Dr. Kveton actually stated on July 7, 2000, "unfortunately, she continues to have significant problems with her gait. She also notes an increased tremor that occurs as she is walking, and at other times, spontaneously. . . On physical examination today, I note a fine facial tremor, which results in difficulty in left eye closure. In addition, at rest, she has a tremor noted in her upper extremities, which seems to worsen when she moves. I am a loss to explain these symptoms, since her acoustic tumor was removed through the temporal bone and the cerebellar pontine angle was not exposed during surgery. Ms. Bayonne indicated to me that such symptoms had been present, to a lesser degree, before surgery." (ADR 418). |
| 12. Although Plaintiff had stopped working in June 2002, Dr. Einbinder opined that Plaintiff could work a 32-hour week in July 2002. AD REC 382, 450. | 12. Aver this statement is undisputed for purposes of this motion. Dr. Einbinder actually stated on July 30, 2002, "Ms. Bayonne is able only to continue with work at 32 hours per week. She will be re-evaluated on August 13, 2002 and which point we will decide how to proceed." (ADR 382). Dr. Einbinder stopped her work efforts on August 13, 2002, "Ms. Bayonne is temporarily 100% disabled and we will reevaluate her on September 5, |

4

|  | 2002. (Appeal Record p. 216);(ADR 449). |
|---|---|
| 13. By letter dated August 12, 2002, the Company approved a reduced work schedule based on Dr. Einbinder's July 2002 assessments, but on August 13, 2002, Dr. Einbinder informed the Company that she considered Plaintiff totally disabled. AD REC 105, 108; 350, 449. | 13. Aver this statement is undisputed for purposes of this motion. |
| 14. The Company granted Plaintiff short-term disability benefits effective June 24, 2002. The Disability Department then scheduled independent examinations of Plaintiff's medical condition and functional capacity. AD REC 027-036, 037-039, 104, 106, 107; 315A, 324, 331-333, 351, 385, 388. | 14. Deny. Admit, Phawana Chaorinuea's Executive Summary to EBC Members actually states that during the time period leading up to June 24, 2002, "Ms. Bayonne received a total of 111 days of short term disability benefits. . . December 19, 2001 through January 2, 2002 (10 days), June 24, 2002 through August 10, 2002 (35 days), August 12, 2002 through November 5, 2002 (61 days)." (ADR 005, 010). Aver the remainder is undisputed for purposes of this motion, but Defendants failed to conduct a psychiatric examination to confirm Defendants belief she had "symptom magnification." |
| 15. The Company discontinued payment of short-term disability benefits as of November 5, 2002 and requested that Plaintiff return to work. AD REC 023-024, 509; 325-326. | 15. Aver this statement is undisputed for purposes of this motion. |
| 16. On November 27, 2002, Plaintiff, through her attorney Mark Carey, submitted a claim for long-term disability benefits from the Plan. AD REC 441-442. | 16. Aver this statement is undisputed for purposes of this motion. |
| 17. Mr. Carey requested a copy of Plaintiff's long-term disability claim file on January 21, 2003. AD REC 490. | 17. Aver this statement is undisputed for purposes of this motion. |
| 18. On January 21, 2003, Mr. Carey requested copies of the plan's summary plan description and plan document, which the Company supplied on March 10, 2003. AD REC 236, 486-487. | 18. Admit. The document speaks for itself. The Defendants only provided the information on March 10, 2003, some 50 days after it was requested, and again requested on March 4, 2003. (Appeal Record p. 277-78);(ADR 510-511). |
| 19. The review of Plaintiff's claim at the administrative level entailed physician consultant Peter Griffin's evaluation of Plaintiff's medical records. AD REC 023- | 19. Aver this statement is undisputed for purposes of this motion. |

5

| | |
|---|---|
| 026; 315, 325-326. | |
| 20. At the administrative level, Plaintiff's claim filed included records from Plaintiff's surgeon, Dr. Kveton, who noted a fine facial tremor and a tremor in Plaintiff's upper extremities, but could not explain these symptoms in relation to the removal of Plaintiff's neuroma. AD REC 013; 418-419. | 20. Deny, Dr. Kveton's record dated July 7, 2002 actually states, "unfortunately, she continues to have significant problems with her gait. She also notes an increased tremor that occurs as she is walking, and at other times, spontaneously. . . On physical examination today, I note a fine facial tremor, which results in difficulty in left eye closure. In addition, at rest, she has a tremor noted in her upper extremities, which seems to worsen when she moves. I am a loss to explain these symptoms, since her acoustic tumor was removed through the temporal bone and the cerebellar pontine angle was not exposed during surgery. Ms. Bayonne indicated to me that such symptoms had been present, to a lesser degree, before surgery." (ADR 418). |
| 21. At the administrative level, Plaintiff's claim file also included a neurological consultation report from Louise Donohue Resor, M.D., who Plaintiff saw as a result of a referral from her primary care physician. AD REC 043-044; 336-337. | 21. Aver this statement is undisputed for purposes of this motion. |
| 22. Dr. Resor did not find a neurological cause underlying Plaintiff's complaints. AD REC 044; 337. | 22. Deny. Dr. Resor actually stated, "In summary, this is a middle aged woman who has undergone surgery for an acoustic neuroma. Since that time, she has complained of left sided numbness and clumsiness. It is unclear whether these symptoms have worsened, and the etiology of her left side symptomatology is unclear. . . I asked her to increase the Neurontin to 600 mg (pain killer)." (Appeal Record p. 104);(ADR 337). |
| 23. Plaintiff's claim file also included the functional capacity evaluation ("FCE") scheduled by the Company following Dr. Einbinder's determination of total disability. AD REC 027-036; 315A-324. | 23. Admit. Deny, that the functional capacity examiner(s) was qualified to render a psychiatric diagnosis of "symptom magnification", also known as somatization disorder. |
| 24. A FCE statistically analyzes test results and computerized video images to objectively quantify a person's safe functional abilities. AD REC 027; 315A. | 24. Plaintiff's lacks sufficient information to either admit or deny the statement contained in this paragraph. |
| 25. The physiologist conducting the | 25. Plaintiff's lacks sufficient information |

6

| | |
|---|---|
| evaluation assesses consistency of effort through analysis of factors including up to 27 components analyzed with digital video. AD REC 034; 322. | to either admit or deny the statement contained in this paragraph. |
| 26. This analysis measures factors such as acceleration, velocity, time, the ability to reproduce specific physical tasks or perform tasks within an appropriate movement pattern during repeated trials, then determines consistencies for each through statistical analysis. AD REC 034; 322. | 26. Plaintiff's lacks sufficient information to either admit or deny the statement contained in this paragraph. |
| 27. A test of non-organic signs helps to delineate pathologies of an organic nature. A positive result suggests the individual may require further investigation as to the etiology of their responses. AD REC 034; 322. | 27. Statements asserts a legal conclusion. Plaintiff's lacks sufficient information to either admit or deny the statement contained in this paragraph. |
| 28. During the FCE, Plaintiff was asked to squeeze the grip dynamometer as firmly as possible in 5 different hand positions. Based on the tension of the grasping musculature of the hand, the physiologist determines whether the person makes a consistent effort throughout the test. AD REC 035; 323. | 28. Statements asserts a legal conclusion. Plaintiff's lacks sufficient information to either admit or deny the statement contained in this paragraph. |
| 29. The FCE report found that Plaintiff had demonstrated sub-consistent effort, tested positive for symptom magnification, demonstrated inconsistent efforts, test positive for overreaction, and showed inconsistencies in her movement pattern. AD REC 027-036; 315A-324. | 29. Statements asserts a legal conclusion. Plaintiff's lacks sufficient information to either admit or deny the statement contained in this paragraph. |
| 30. The FCE report concluded that, at a minimum, Plaintiff could perform sedentary functions. AD REC 027; 315A | 30. Statements asserts a legal conclusion. Plaintiff's lacks sufficient information to either admit or deny the statement contained in this paragraph. |
| 31. The Company also ordered an independent neurological assessment by Elliot G. Gross, M.D. AD REC 050-054; 400-404. | 31. Aver that the Defendants requested an independent neurological assessment by Dr. Gross is undisputed for purposes of this motion.<br>Deny, Dr. Broder undermined the objective independence by informing Dr. Gross what his medical opinion was, specifically that Ms. Bayonne exhibit "symptom magnification." (ADR 050-054). |

7

| | |
|---|---|
| 32. Dr. Gross both reviewed Plaintiff's medical records and conducted a physical examination of Plaintiff. AD REC 037-039, 050-054; 331-333. | 32. Plaintiff lacks sufficient information to either admit or deny this statement. |
| 33. Dr. Gross found tremendous symptom magnification, finding no correlation between Plaintiff's reported symptoms and the surgical removal of the neuroma. AD REC 037-039; 331-333. | 33. Deny. Statement asserts legal conclusion. Dr. Gross was not qualified to render a psychiatric diagnosis of symptom magnification, and was unreasonably influenced by Dr. Broder's referral letter. (ADR 050-054). |
| 34. Dr. Gross found: "[There was] no tremor when informally watching her but yet when formally testing finger to nose, she demonstrated an irregular, unusual type of tremor." AD REC 038; 332. | 34. Admit that the report contains the quoted statement. |
| 35. Dr. Gross found: "Her tongue weakly deviated to the left implying a right twelfth nerve [injury] which is inconsistent" with her medical condition. AD REC 038; 332. | 35. Admit that the report contains the quoted statement.<br>Deny. Statement asserts a legal conclusion. |
| 36. Dr. Gross found: "She frequently took her glasses off and put them back on with one hand without any tremor, but formally testing finger to nose, there was a 3+ very variable tremor." AD REC 038; 332. | 36. Admit the report contains the quoted statement. |
| 37. Dr. Gross found: Plaintiff had a "very variable type of dysarthia [speech impairment] which was difficult to characterize." AD REC 038; 332. | 37. Admit the report contains the quoted statement. |
| 38. Dr. Gross characterized Plaintiff's condition as primarily symptom magnification, and found that her symptoms had no bearing on any organic structural disability incurred from the operation. AD REC 038; 332. | 38. Deny. Statement asserts a legal conclusion. Dr. Gross was not qualified to render a psychiatric diagnosis of symptom magnification, and was unreasonably influenced by Dr. Broder's referral letter. (ADR 050-054). |
| 39. Dr. Gross concluded that Plaintiff could work as a cashier without any restrictions. AD REC 038; 332. | 39. Deny. Statement asserts a legal conclusion. |
| 40. Dr. Griffin, the Company's physician consultant, reviewed the material in Plaintiff's file. AD REC 023-024; 325-326. | 40. Plaintiff lacks sufficient information to either admit or deny the statement. |
| 41. Dr. Griffin noted that Plaintiff's medical history included complaints of intermittent headaches, vertigo and fatigue, coupled with a partial facial paralysis as a consequence of her surgery. AD REC 023; 325. | 41. Aver this statement is undisputed for purposes of this motion. |

| | |
|---|---|
| 42. Dr. Griffin also reviewed a letter from Dr. Einbinder in which she discussed Dr. Gross's report, and suggested that the Company obtain an additional neurological or ENT evaluation, or a psychiatric evaluation regarding the finding of symptom magnification. AD REC 115-116; 334-335. | 42. Aver this statement is undisputed for purposes of this motion. |
| 43. Dr. Griffin observed that Dr. Einbinder had not denied the findings of symptom magnification. AD REC 023; 325. | 43. Deny. Dr. Einbinder actually stated in her November 12, 2002 letter to Defendants, "Dr. Gross believes that Ms. Bayonne is able to work and feels that her symptoms are a result of symptom magnification and 'apparent neurological deficits which are not anatomically correlated to the surgical removal of the acoustic'. While I understand his impression it is clear that headache following posterior fossa surgery can occur with acoustic neuroma there can be persistent VII and VIII nerve dysfunction resulting in facial weakness and vertigo again which worsens with fatigue. Ms. Bayonne has a documented weakness of her face on the side of the surgery and has a documented abnormality on ENG consistent with vertigo all of which worsens when fatigued. I understand that her left upper extremity symptoms are not accompanied with anatomic neurological abnormalities, however this is not the primary reason for her disability. While I understand that Dr. Gross feels that Ms. Bayonne has symptom magnification it is clear that she has objective neurological abnormalities which result in symptoms. It is also clear that she cannot work as she has tried to aggressively and cannot get through a day, even a six hour day as her headache and vertigo become unbearable. I do not feel that one can realistically deny Ms. Bayonne disability based on Dr. Gross' IME and feel that you either need to get another neurological or ENT opinion or if you are under the opinion that she has symptom magnification and none of her |

| | |
|---|---|
| | symptoms are real ought to consider having her seen psychiatrically to determine whether there is any psychiatric basis for this diagnosis in a patient who I feel has tried quite aggressively to return to work." (Appeal Record pp.111-112);(ADR 343-344). |
| 44. Dr. Griffin found the suggested psychiatric evaluation inconsistent with Dr. Einbinder's treatment program, as she had never referred Plaintiff to a psychiatrist. AD REC 023; 325. | 44. Aver that the documents cited in support assert this opinion. Deny that Dr. Griffin could render a treatment regime for a claimant. |
| 45. Weighing the evidence as a whole, Dr. Griffin found that, while Plaintiff likely experienced intermittent symptoms of fatigue and vertigo, her condition did not appear so severe as to meet the Plan's definition of total and permanent disability. AD REC 023; 325. | 45. Deny. Statement asserts a legal conclusion. |
| 46. Dr. Griffin concluded that the evidence on the whole, including Plaintiff's job performance during the two years following surgery, showed that Plaintiff had the capacity to work in her cashier position. AD REC 023-024; 325-326. | 46. Deny. Statement asserts a legal conclusion. |
| 47. Based on his review of Plaintiff's claim file, Dr. Griffin recommended denial of Plaintiff's claim for long-term disability benefits. AD REC 023-025; 315, 325-326. | 47. Deny. Statement asserts a legal conclusion. |
| 48. The Disability Department, adopting Dr. Griffin's recommendation, issued a denial at the administrative level on December 16, 2002. AD REC 491. | 48. Aver this statement is undisputed for purposes of this motion. But the denial was effective November 5, 2002, a date that occurred before Ms. Bayonne's application for LTD benefits. (ADR 491). |
| 49. The detailed letter explained the bases for the denial to Plaintiff including, among other things, the following: "This decision was based upon a review by Pitney Bowes' Physician Consultant, Dr. Peter Griffin, of medical information received from your physician. In addition to Dr. Peter Griffin, the following medical expert's advice was obtained on behalf of the Plan in connection with your claim: Dr. Elliot G. Gross, neurologist, and Edward M. Velasquez, physical therapist. The | 49. Admit the statement is contained in the documents cited in support. Deny. The statement asserts a legal conclusion. The denial letter failed to notify what protocol or guideline was used to render a diagnosis of symptom magnification and where Ms. Bayonne could locate such information. The denial letter failed to specifically identify what additional information Ms. Bayonne could submit to cure any alleged defect in her claim application. |

10

| | |
|---|---|
| medical information received for review does not substantiate that you are totally disabled [from] your own occupation as defined in Section 2.33(a) of the Plan (copy attached). More specifically, [at] the Functional Capacity Evaluation which was performed at your home on September 18, 2002, you demonstrated a sub-consistent effort and tested positive for Waddell's Non-Organic Signs of symptom magnification. Dr. Elliot G. Gross' evaluation on 10/15/02 determine[d] that your symptoms post-operatively are primarily characterized by symptom magnification and ha[ve] no bearing on any organic structural disability incurred from the operation. In addition, Dr. Gross also feels that you can continue to work as a cashier without any restrictions." The letter notified Plaintiff of her appeal rights and instructed that "[a]ny documents or records you have in support of your appeal should accompany your request" for review. AD REC 491. | Plaintiff lacks sufficient information to either admit or deny the accuracy of the findings set forth in the denial letter. |
| 50. In addition to the FCE and evaluation by Dr. Gross, the Company ordered an additional independent neurological evaluation. AD REC 040-042; 521, Plaintiff's Appendix B. | 50. Aver that the Defendants requested another neurological review, after Dr. Einbinder had requested one (Appeal Record pp.111-112);(ADR 343-344). Deny. Dr. Broder undermined the objective independence of Dr. Sweet's review by providing his biased medical opinion, in particular that Ms. Bayonne exhibited symptom magnification. (ADR 070-076). |
| 51. The Company provided the neurologist, Richard Sweet, M.D., with Plaintiff's medical records, but omitted Dr. Gross's evaluation. AD REC 070-075. | 51. Plaintiff lacks sufficient information to either admit or deny the statement. But Dr. Broder undermined the objective independence of Dr. Sweet's review by providing his biased medical opinion, in particular that Ms. Bayonne exhibited symptom magnification. (ADR 070-076). |
| 52. Dr. Sweet conducted a physical examination of Plaintiff and found that she had some left facial weakness, decreased hearing on her left side, and mild ataxia (defective muscular coordination). AD REC 040-042; Plaintiff's Appendix B. | 52. Aver this statement is undisputed for purposes of this motion. |

11

| | |
|---|---|
| 53. Dr. Sweet determined that the complaints that could potentially affect her job performance were Plaintiff's headaches and left-side weakness. AD REC 042; Plaintiff's Appendix B. | 53. Deny. Statement asserts a legal conclusion. Dr. Sweet stated in petinent part, "she tandem walks with difficulty. . .The patient has objective signs of left facial weakness and decreased hearing on the left side as well as mild ataxia. The left-sided numbness and weakness is not substantiated by objective findings. I think it is difficult to explain them on the basis of her neuroma or on the basis of her surgery and cannot find any adequate pathophysiological explanation for them. The issue of ability to work is mainly addressed to headaches and to her left-sided weakness. I do not think that this disqualifies her from working. I note that she has a tremor on the left side, which is an essential tremor and not related to the neoplasm or surgery." (ADR 042) |
| 54. Given the duties of a cashier, Dr. Sweet concluded that Plaintiff reported symptoms did not disqualify Plaintiff from fulfilling her job responsibilities. AD REC 042; Plaintiff's Appendix B. | 54. Deny. Statement asserts a legal conclusion. Dr. Sweet stated in petinent part, "she tandem walks with difficulty. . .The patient has objective signs of left facial weakness and decreased hearing on the left side as well as mild ataxia. The left-sided numbness and weakness is not substantiated by objective findings. I think it is difficult to explain them on the basis of her neuroma or on the basis of her surgery and cannot find any adequate pathophysiological explanation for them. The issue of ability to work is mainly addressed to headaches and to her left-sided weakness. I do not think that this disqualifies her from working. I note that she has a tremor on the left side, which is an essential tremor and not related to the neoplasm or surgery." (ADR 042) |
| 55. Plaintiff formally appealed the denial of her long-term disability benefit claim on June 11, 2003. AD REC 206-235. | 55. Aver this statement is undisputed for purposes of this motion. |
| 56. The December 16, 2002 denial letter notified Plaintiff of her right to appeal the decision within 180 days of receipt of the letter, and advised Plaintiff that she should submit any documents or records in | 56. Admit the denial letter informed Ms. Bayonne of her appeal rights. Deny. The denial letter failed to specifically notify Ms. Bayonne what additional information was required to cure |

12

| | |
|---|---|
| support of her appeal with her request. AD REC 491. | any alleged defect in her application for disability benefits. |
| 57. The letter advising Plaintiff of her appointment with Dr. Sweet reminded Plaintiff to continue to submit any additional medical records that would be helpful in assessing her claim. AD REC 521. | 57. Admit the document cited makes reference to Defendants request for additional information. Deny. The Defendants failed to specifically notify Ms. Bayonne what additional information was required to cure any alleged defect in her application for benefits. |
| 58. With her appeal, Plaintiff submitted 431 pages of materials, including a psychiatric evaluation report obtained at the instruction of her attorney. AD REC 119-143, 206-235; 623-647. | 58. Aver this statement is undisputed for the purposes of this motion. |
| 59. The psychiatric report noted, among other things, that Plaintiff had no historical or current psychiatric or psychological problems. AD REC 133, 136, 140-142; 637, 640, 644-646. | 59. Deny. Dr. Drazinic's letter states in pertinent part, "I did not find any evidence in support of symptom magnification, hypochondriasis, or somatization disorder in Ms. Bayonne. She is neither preoccupied with her symptoms, nor does she refuse reassurance about her symptoms (ICD-10 criteria). In contrast, Ms. Bayonne tends to minimize her symptoms and tries her best to work through the symptoms. This is also evidenced by her repeated attempts to return to full-time work at Pitney Bowes for two years subsequent to her surgery, in spite of her deficits" (Appeal Record p.413);(ADR 646). |
| 60. The psychiatric report stated that Plaintiff did not have a history of depression, anxiety disorder or substance abuse, and that her family had no history of such problems. AD REC 133, 136, 140-142; 637, 640, 644-646. | 60. Aver this statement is undisputed for purposes of this motion. See Dr. Drazinic's statement, "I did not find any evidence in support of symptom magnification, hypochondriasis, or somatization disorder in Ms. Bayonne. She is neither preoccupied with her symptoms, nor does she refuse reassurance about her symptoms (ICD-10 criteria). In contrast, Ms. Bayonne tends to minimize her symptoms and tries her best to work through the symptoms. This is also evidenced by her repeated attempts to return to full-time work at Pitney Bowes for two years subsequent to her surgery, in spite of her deficits" (Appeal Record p.413);(ADR 646). |

13

| | |
|---|---|
| 61. The psychiatric report assessed Plaintiff's facial nerve dysfunction, tremor and left-sided weakness. AD REC 142-143; 646-647. | 61. Aver the psychiatric report actually stated, "her poor vestibular compensation after surgery may also contribute to her significant balance difficulties. According to Dr. Kveton, her persisting vestibular dysfunction, which is unusual, nevertheless could not be feigned, based on objective vestibular testing conducted in his clinic. Even the mildest trauma to cranial nerve VII, such as with the suctioning around it during the removal of the acoustic neuroma as it is dissected away from cranial nerve VII (facial nerve), can cause facial symptoms, and this is a common complication of the surgery...Small cerebrospinal fluid (CSF) leaks may occur even after the translabyrinthine surgical approach due to poor healing of the dura, and these leaks may contribute to her persisting headaches... There is some debate as to whether her headache and balance problems are from her surgery as well, but in light of the objective evidence of poor vestibular compensation, as well as the possibility of a small cerebrospinal fluid leak, these symptoms could be explained." (Appeal Record p. 414);(ADR 647). |
| 62. The psychiatric report concludes that Plaintiff's physical complaints did not appear the result of symptom magnification or hypochondriasis, nor did they appear psychosomatic. AD REC 142; 646. | 62. Aver this statement is undisputed for purposes of this motion. See Dr. Drazinic's statement, "I did not find any evidence in support of symptom magnification, hypochondriasis, or somatization disorder in Ms. Bayonne. She is neither preoccupied with her symptoms, nor does she refuse reassurance about her symptoms (ICD-10 criteria). In contrast, Ms. Bayonne tends to minimize her symptoms and tries her best to work through the symptoms. This is also evidenced by her repeated attempts to return to full-time work at Pitney Bowes for two years subsequent to her surgery, in spite of her deficits" (Appeal Record p.413);(ADR 646). |
| 63. Physician consultant Arthur Broder, M.D. reviewed Plaintiff's appeal and | 63. Plaintiff lacks sufficient information to either admit or deny this statement. |

14

| | |
|---|---|
| addressed Plaintiff's attorney's assertions regarding symptom magnification. AD REC 080. | |
| 64. Dr. Broder noted that symptom magnification is not a psychiatric diagnosis, but rather a descriptive term reported following an evaluation of an individual's physical response to the performance of a physical task. AD REC 080. | 64. Deny. Statement asserts a legal conclusion. Dr. Broder's statement is not supported by any conclusive and objective medical evidence based on the DSM-IV (Diagnostical Statistical Manual IV). (Appeal Record pp. 411-412);(ADR 644-645). Defendants do not provide any factual or legal support for symptom magnification. Dr. Broder is not a qualified psychiatric expert. |
| 65. Dr. Broder also noted that symptom magnification can result from conscious forcing or can represent a learned pattern of illness behavior. AD REC 080. | 65. Deny, Statement asserts a legal conclusion. Dr. Broder's statement is not supported by any conclusive and objective medical evidence based on the DSM-IV (Diagnostical Statistical Manual IV). (Appeal Record pp. 411-412);(ADR 644-645). Defendants do not provide any factual or legal support for symptom magnification. Dr. Broder is not a qualified psychiatric expert. |
| 66. In Dr. Broder's opinion, the weight of medical evidence relating to Plaintiff's claim showed that the surgical procedure could not have caused the reported symptoms. AD REC 080. | 66. Deny, Statement asserts a legal conclusion. Dr. Broder's statement is not supported by any conclusive and objective medical evidence based on the DSM-IV (Diagnostical Statistical Manual IV). (Appeal Record pp. 411-412);(ADR 644-645). Defendants do not provide any factual or legal support for symptom magnification. Dr. Broder is not a qualified psychiatric expert. |
| 67. The Company notified Plaintiff that the Plan Administrator would review her appeal on July 28, 2003. AD REC 088-090. | 67. Aver this statement is undisputed for purposes of this motion. |
| 68. The Company's July 22, 2003 letter acknowledged receipt of the appeal material submitted by Plaintiff's attorney, and advised Plaintiff that she should continue to submit any documentation that supported her appeal. AD REC 088-090. | 68. Aver this statement is undisputed for purposes of this motion. Defendants failed to specifically notify Ms. Bayonne as what additional information should be provided to cure any alleged defect in her application for benefits. |
| 69. On July 28, 2003, the Plan Administrator reviewed Plaintiff's long-term disability benefit appeal, including the additional information submitted by | 69. Plaintiff lacks sufficient information to either admit or deny this statement. |

| | |
|---|---|
| Plaintiff's attorney and a detailed analysis of Plaintiff's medical records and reports. AD REC 005-010, 665-674. | |
| 70. The minutes of the Plan Administrator's meeting document the Plan Administrator's extended discussion of Plaintiff's condition. AD REC 003, 671; Plaintiff's Appendix B. | 70. Plaintiff lacks sufficient information to either admit or deny this statement. |
| 71. The Plan Administrator evaluated the psychiatric report submitted by Plaintiff. AD REC 003, 673. | 71. Plaintiff lacks sufficient information to either admit or deny this statement. |
| 72. The minutes reflect: "Of special interest to the Committee was Dr. Drazinic's statement that Ms. Bayonne's difficulties with her work at the Company did not appear to be due to her tremor or her mild left-sided weakness, because she was working through the duration of having these symptoms prior to the April 2000 surgery. The Committee interpreted that statement to mean that even if those symptoms existed, they were not disabling. Dr. Drazinic went on to state that Ms. Bayonne did not report applying for LTD on that basis, but rather on the basis of symptoms that were directly related to her acoustic neuroma and subsequent surgery. The Committee discussed that statement as well and found that Dr. Drazinic failed to address the underlying cause of Ms. Bayonne's disability." AD REC 673. | 72. Plaintiff lacks sufficient information to either admit or deny this statement. |
| 73. The minutes relating to the Committee's decision state, in part: "After a thorough, independent review and debate of the medical evidence, the Committee decided to uphold the denial of Ms. Bayonne's claim for LTD benefits. The Committee found that many of Ms. Bayonne's symptoms had existed prior to her surgery and had not prevented her from working. Ms. Bayonne's post-operative symptoms (left facial weakness, decreased hearing in left ear, heaviness in tongue) are neither corroborated nor substantiated by any abnormalities noted by Drs. Gross and | 73. Plaintiff lacks sufficient information to either admit or deny this statement. |

16

| | |
|---|---|
| Sweet, two independent neurologists. The evaluations of those two neurologists, the FCE, the MRI of the brain and the ultrasound of the carotid all provide evidence that Ms. Bayonne is functionally and physically capable of gainful employment." AD REC 673. | |
| 74. On August 8, 2003, Plan Administrator advised Plaintiff of the denial of her appeal. AD REC 001-004; Plaintiff Appendix B. | 74. Aver this statement is undisputed for purposes of this motion. |
| 75. The letter summarizes the significant reports and correspondence reviewed by the Plan Administrator (the Committee), and states in part:<br>"The Committee devoted a considerable amount of time discussing the above medical reports as well as the other materials in your file and evaluating their significance. The Committee found that many of your symptoms had existed prior to your surgery and had not prevented you from working. The Committee noted that the medical documentation referred to your complaints of pain and left-sided symptoms. However, the Committee also noted that the medical reports did not provide objective evidence substantiating your claim that you are unable to perform the essential duties of your occupation. In fact, the reports of two independent neurologists, Drs. Gross and Sweet, as well as the FCE, MRI of the brain and the ultrasound of the carotid, all provided evidence that you are functionally and physically capable of performing the duties of your job as cashier. Consequently, after a full and fair review of the evidence the Committee concluded that the objective evidence was not indicative of a total disability condition." AD REC 002-004; Plaintiff's Appendix B. | 75. Plaintiff lacks sufficient information to either admit or deny this statement. |
| 76. The Plan Administrator, also known as the Employee Benefits Committee, has responsibility for the general administration of the Plan. AD REC 283-284. | 76. Plaintiff lacks sufficient information to either admit or deny this statement. |

17

| | |
|---|---|
| 77. While the Plan Administrator has delegated ongoing, day-to-day administration of the Plan to the Disability Department, it retains responsibility for the final determination of benefit entitlement under the Plan. AD REC 283-284. | 77. Plaintiff lacks sufficient information to either admit or deny this statement. |
| 78. The Plan confers broad discretion on the Plan Administrator in applying Plan terms. Specifically, the Plan provides: "The Employee Benefits Committee shall have discretion in exercising the following powers and duties concerning the Plan. . .to interpret and construe the terms and provisions of the Plan, to apply such terms and provisions as the Committee may exclusively determine, to determine questions of eligibility and of the status and rights of Participants. . ." AD REC 283, 290. | 78. Deny. Statement asserts a legal conclusion. Admit the document cited contains the quoted language. |
| 79. With respect to the Social Security Administration's findings regarding disability, the Plan states: "The determination whether an Employee is eligible for disability payments under the State or Federal Social Security Act is not determinative of eligibility for benefits under the Plan. The Disability Department and the Employee Benefits Committee are not in any respect bound by the decision of the State or Federal Social Security Administration.." AD REC 280-281. | 79. Avery that this statement is undisputed for purposes of this motion. |
| 80. Pursuant to the terms of the Plan, the Company has established a Trust Fund, which is used for the exclusive purpose of providing disability benefits to participants and defraying reasonable expenses of administering the Plan. AD REC 282. | 80. Deny. Statement asserts a legal conclusion. |
| 81. The assets of the Plan shall never inure to the benefit of the Company except to the extent permitted by ERISA. AD REC 282. | 81. Deny. Statement asserts a legal conclusion. |
| 82. For purposes of determining eligibility for benefits, the Plan defines "totally disabled" and "total disability" to mean that the Participant is unable: "(a)(i) to perform the material duties of his or her own occupation for a maximum | 82. Avery that this statement is undisputed for purposes of this motion. |

18

| | |
|---|---|
| period of twelve (12) months after the Qualifying Period, and (ii) that thereafter the Participant is unable, because of injury or illness, to engage in any gainful occupation or profession for which he is, or could become, reasonably suited by education, experience, or training; provided, however, that the amount of earnings that the Participant would receive from engaging in such occupation or profession would be less than sixty percent of the Participant's annual or annualized earnings immediately prior to the event giving rise to the Total Disability. *** (c) The determination of whether the Participant is Totally Disabled from any occupation or profession…will be made without regard to (i) whether such occupation or employment exists in the geographic area in which the Employee resides, (ii) whether a specific vacancy in such occupation or employment exists, and (iii) whether an Employee is likely to be hired if he or she applied for such occupation or employment…" AD REC 268. | |
| 83. The Plan defines "qualifying period" as "a period beginning on the first day of Total Disability and ending on the last day of the month following the completion of 22 weeks of Total Disability." AD REC 268. | 83. Avery that this statement is undisputed for purposes of this motion. |
| 84. The Plan requires participants to submit whatever proof or documentation the Disability Department may require, "including the medical records and medical analysis of one or more duly qualified physicians…" AD REC 275. | 84. Admit the statement contains quoted language from the document cited. Deny. The plan required Ms. Bayonne to submit "objective evidence" of her total disability, a term not contained in the plain language of the Defendants plan document. |

19

Dated: July 9, 2004  
Southport, Connecticut

GERTRUDE BAYONNE  
PLAINTIFF

By: *[signature]*  
Mark P. Carey(ct17828)  
Carey & Associates, P.C.  
71 Old Post Road, Suite One  
Southport, CT 06890  
(203) 255-4150 tel.  
(203) 255-0380 fax.  
Mcarey@capclaw.com  
Her Attorney

## CERTIFICATION OF SERVICE

This is to certify that a copy of the foregoing was delivered on this the 9th day of July, 2004 via United Parcel Service Second Day delivery, fee prepaid, to:

Theodore J. Tucci  
Robinson & Cole, LLP  
280 Trumbull Street  
Hartford, CT 06103  
Counsel for Defendants

Sandra R. McCandless  
Joanne M. Krakora  
Nichole A. Diller  
Sonnenschein, Nath & Rosenthal, LLP  
685 Market Street, 6th Floor  
San Francisco, CA 94105  
Counsel for Defendants

*[signature]*  
Mark P. Carey