UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GERTRUDE BAYONNE, | : |
| | : |
| Plaintiff, | : |
| | : CIVIL ACTION NO. |
| v. | : 303 CV 0712 (WWE) |
| | : |
| PITNEY BOWES INC., THE PITNEY | : |
| BOWES INC. LONG TERM | : |
| DISABILITY PLAN, THE PITNEY | : |
| BOWES INC. LONG TERM | : |
| DISABILITY PLAN | : |
| ADMINISTRATOR AND THE PITNEY | : |
| BOWES INC. DISABILITY | : |
| DEPARTMENT, | : |
| | : |
| Defendants. | : JULY 26, 2004 |

**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO
CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendants the Pitney Bowes Inc. Long-Term Disability Plan (the "Plan"), its Plan Administrator (the "Committee"), and the Disability Department submit the following reply to Plaintiff's Opposition to their cross-motion ("Opposition Memorandum" or "Opp. Mem.").

I.      THE COURT SHOULD AFFIRM THE COMMITTEE'S DECISION

   A.      The Abuse of Discretion Standard of Review Applies

The Opposition Memorandum admits that the Committee has no financial conflict of interest warranting a standard of review other than the highly deferential arbitrary and capricious standard. See Opp. Mem. at 14. Plaintiff asserts, however, that procedural irregularities—alleged failure to

1

conform with ERISA's claim regulations—demonstrate that a conflict of interest nonetheless existed.[1] The Administrative Record readily rebuts this contention.

Plaintiff's Opposition refers the Court to a number of cases—almost all of which predate the substantially revised claim regulations that became effective in 2002—for the proposition that ERISA requires fiduciaries to inform participants how to perfect their benefit claims. *See, e.g.,* Opp. Mem. at pp. 28 to 36. From that unremarkable proposition, Plaintiff then posits that Defendants violated ERISA's claim regulations by failing to inform her of specific documentation she could tender to reverse the denial of her claim. *See id.* at 30 (arguing failure to provide Plaintiff "adequate notice as to what additional medical documentation would ... cure the defect"); *id.* at 31 (purported failure to advise "what additional medical documentation was required to perfect her claim"); *id.* at 32 (same); *id.* at 34 (claiming lack of "reasonable and specific notice of any other material ... to cure the alleged defect"). Plaintiff is wrong.

The actual communications contained in the Administrative Record show that Plaintiff received detailed explanations regarding the problems inherent in her claim. The letter sent to Plaintiff relaying the denial of her initial claim explained:

> The medical information received for review does not substantiate that you are totally disabled for your own occupation as defined in § 2.33(a) of the Plan (copy attached). More specifically, [in] the Functional Capacity Evaluation which was performed at your home on September 18, 2002, you demonstrated a sub-consistent effort and tested positive for Waddell's Non-Organic Signs of symptom magnification. Dr. Elliot G. Gross' evaluation on 10/15/02 determines that your symptoms post-operatively are primarily characterized by symptom magnification and has no bearing on any organic structural disability incurred from the operation. In addition, Dr. Gross also feels that you can continue to work as a cashier without any restrictions. UMF 49 (undisputed).

Similarly, the Committee's letter denying Plaintiff's appeal discussed the findings of seven

---

[1] The Opposition Memorandum also argues that "Defendants did not refute" these alleged administrative improprieties. Opp. Mem. at 14. This is without basis. *See* Opening Mem. at 21-25.

physicians, Plaintiff's supervisor, the functional capacity evaluation and various other medical studies. UMF 75 (undisputed).

ERISA's claim regulations require no more. In certain cases, including this one, no particular document will "perfect" the faulty claim. For example, documentation cannot save a claim for cosmetic surgery under a plan that does not provide for it. So, too, where a participant applies for disability benefits despite being capable of fulfilling her job duties, no documentation will make the claim viable. Reflecting this reality, the regulations require only that the participant receive a denial letter explaining the reasons for the denial and the participant's right to appeal, and that the participant have access to documents "submitted, considered, or generated" in reviewing the claim. 9 C.F.R. § 2560.503-1(m)(8). The Committee met these requirements. S*ee* UMF 17, 18, 49 and 75 (undisputed).[2]

In evaluating a fiduciary's determination under the abuse of discretion standard, courts inquire into "whether the decision was based on a consideration of the relevant factors." *Jordan v. Retirement Comm. of Rensselaer Polytechnic Inst.*, 46 F.3d 1264, 1271 (2d Cir. 1995). Under this analysis, plan fiduciaries abuse their discretion only if they render decisions in which "there has been a clear error of judgment." *Id.* Courts disturb decisions only if they are "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir. 1995).

> B.   **The Committee Based Its Determination on Substantial Evidence**

Plaintiff makes few objections to the sufficiency of the evidence in the Administrative Record,

but instead argues that the Committee erroneously weighed the evidence. Specifically, she claims that 1) the psychiatric evaluation should have been given more weight than the neurologists' opinions, 2) the Committee should have deferred to Plaintiff's treating physician and the Social Security judge, and 3) the Committee should not have considered Plaintiff's actual ability to perform her job during the months following her surgery. Each contention is without merit.

        1.    <u>The Committee Appropriately Valued the Opinions of Neurologists More Than the Psychiatric Report</u>

In repeatedly asserting that the Committee should have obtained a psychiatric evaluation, Plaintiff wholly fails to respond to the evidence submitted by Defendants establishing that Plaintiff sought benefits from the Plan based on her neurological condition. *See* UMF 7 and 10 (undisputed). And, in claiming that the Committee did not consider a psychiatric report, Plaintiff ignores the Committee's discussion of the psychiatric evaluation she herself submitted. UMF 62 and 72 (undisputed).

Nothing in the Administrative Record supports Plaintiff's repeated assertions that a psychiatrist should opine on Plaintiff's neurological condition. Instead, the record reviewed by the Committee – and therefore controlling over the Court's review of the Committee's basis for its determination – showed that the exaggeration of neurological symptoms is not a somatization disorder, UMF 64, 65, and that Plaintiff's own treating physician never referred Plaintiff to a psychiatrist. UMF 44 (undisputed). Based on this record, the Committee appropriately favored the

---

[2] In reasserting her complaint that Defendants failed to provide Plaintiff with any guidelines or protocols, *see* Opp. Mem. at 35-36, Plaintiff fails to address or dispute the evidence Defendants submitted showing they used no such papers. UMF 18 (undisputed). Making no objections to Defendants' evidence and offering nothing to contradict it, Plaintiff's factually unsupported arguments must be rejected.

reports of the neurological experts who examined Plaintiff's neurological condition.[3] Further, regardless of whether Plaintiff's symptoms were real or exaggerated, the Administrative Record showed the Committee that even the exaggerated symptoms would not prevent Plaintiff from performing her job responsibilities. UMF 54.

In any event, to the extent a psychiatric report was needed, Plaintiff supplied one. As Defendants earlier discussed, and as Plaintiff ignores, the Committee evaluated Dr. Drazinic's psychiatric report. UMF 71 (undisputed). The minutes reflect:

> Of special interest to the Committee was Dr. Drazinic's statement that Ms. Bayonne's difficulties with her work at the Company did not appear to be due to her tremor or her mild left-sided weaknesses, because she was working through the duration of having these symptoms prior to the April 2000 surgery. The Committee interpreted that statement to mean that even if those symptoms existed, they were not disabling. Dr. Drazinic went on to state that Ms. Bayonne did not report applying for LTD on that basis, but rather on the basis of symptoms that were directly related to her acoustic neuroma and subsequent surgery. The Committee discussed that statement as well and found that Dr. Drazinic failed to address the underlying cause of Ms. Bayonne's disability. UMF 72.

The denial letter summarizing the Committee's discussions and ultimate determination also manifests the Committee's review of the psychiatric evaluation. UMF 74 (undisputed).

    2.  The Treating Physician and Social Security Administration Are Not Entitled to Special Deference

Although Plaintiff acknowledges that the Supreme Court has rejected the use of the treating physician rule in the ERISA context, she nonetheless asserts that the Committee erred in not according special weight to the opinions of her treating physician. Opp. Mem. at p. 24. *All* of the

---

[3] The cases cited by Plaintiff have no relevance to the assessment of Plaintiff's condition. *See Woo v. Deluxe Corp.*, 144 F.3d 1157, 1162 (8th Cir. 1998) (fiduciary should obtain scleroderma expert when presented evidence of an uncommon disease); *Sansevera v. E.I. DuPont de Nemours & Co.*, 859 F. Supp. 106, 113 (S.D.N.Y. 1994) (administrator should seek opinion of independent expert on chronic fatigue syndrome). Further, that the Company obtained a psychiatric medical examination when a claimant sought benefits based on depression demonstrates that the Committee does indeed review psychiatric evaluations where a claimant seeks benefits on the basis of a psychiatric conditions. *See Ryles v. Pitney*

cases cited by Plaintiff in support of this contention predate *Black & Decker Disability Plan v. Nord*, 583 U.S. 822 (2003), the case in which the Supreme Court held that "plan administrators are not obliged to accord special deference to the opinions of treating physicians." *Id.* at 825. The Administrative Record reveals that Plaintiff's treating physician went from approving a 32-hour week schedule on July 30, 2002, to finding Bayonne totally disabled on August 13, 2002, despite no intervening medical exam. UMF 12, 13. This abrupt change calls the opinion into question. *See Short v. Unum Life Ins. Co. of America*, 2003 U.S. Dist. LEXIS 22327 (D. Conn. 2003) at *23 (administrator properly skeptical of a sudden "about-face" by treating physician).

As to the Social Security Administration's finding of disability, Plaintiff herself admits that both the Plan and governing law provide no deference to that award in the ERISA context. Opp. Mem. at 27.[4] Critically, the Social Security Administration gives a claimant's treating physician's opinion controlling weight. *See* 20 CFR §§ 404.1527(d)(2), 416.927(d)(2). In *Nord*, the Supreme Court noted that the "critical differences between the Social Security disability program and ERISA benefit plans caution against importing a treating physician rule from the former area into the latter." *Nord*, 832-833. The Social Security Administration's application of the treating physician rule to award benefits does not dictate the Committee's determination under the Plan.

### 3. The Committee Properly Considered Plaintiff's Demonstrated Physical Capacity in Reviewing Her Claim

Plaintiff relies on *Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914 (7th

---

*Bowes Inc.*, 2002 U.S. Dist. LEXIS 13665 (E.D. Pa. 2002).

[4] Plaintiff's cited authority does not support a contrary result. *Ladd v. ITI Corp.*, 148 F.3d 753, 754 (7th Cir. 1998) (determining that the plan and the social security disability program had the same requirements for "total disability"); *Dorsey v. Provident Life & Accident Co.*, 167 F.Supp.2d 846, 856 n.11 (E.D. Pa. 2001) (finding plan administrator's decision on ERISA disability not arbitrary and capricious even if it differs from the Social Security Administration's grant of disability benefits).

Cir. 2003) for the proposition that the Committee improperly considered Plaintiff's ability to work following her surgery. This case, and similar cases relied upon by Plaintiff, differ greatly from her claim. According to *Hawkins*, fibromyalgia is characterized primarily by "'pain all over,' fatigue, disturbed sleep, stiffness, and ... multiple tender spots...." *Id.*, 326 F.3d at 915. In ruling (prior to *Nord*) that the plan fiduciary improperly disregarded the opinion of the claimant's treating physician to reject the claim based on "nothing more than scraps of evidence," *Hawkins* has little bearing to the facts presented here, where both objective medical evidence and Plaintiff's work history demonstrate an ability to work. *See* 326 F.3d at 919.

*Sanders v. The Hartford*, 2003 WL 21478556 (W.D. Pa. 2003), is more apropos. In that case, Plaintiff sought long-term disability benefits arising from alleged complications resulting from the resection of an acoustic neuroma. Plaintiff initially based her claim on watering of one eye and partial facial paralysis but, as these conditions improved, plaintiff refocused her claim on the deafness she sustained in one ear during surgery. In assessing the claim, Hartford noted that the plaintiff had supplied no evidence to support that she had difficulty working following her surgery because of the deaf ear, or that the condition had worsened since her return to work. *Id.* at p. 4. The court found that this review of the surgery's impact on the plaintiff's ability work following surgery was appropriate. *Id.* at p. 5.

### C. The Plan Permits the Committee to Require Proof of Disability

Plaintiff argues that the Committee improperly imposed a requirement that Plaintiff provide "objective evidence" of disability, allegedly "imposing new terms into the Plan" in violation of the law. Opp. Mem. at 37. This argument gets both the facts and the law wrong.

As Plaintiff's newly-highlighted facts underscore, the terms of the Plan mandate submission of

"whatever proof or documentation the Disability Department may require ... including the *medical records and medical analysis* of one or more duly qualified physicians or clinical psychologists as evidence of Total Disability...." *See* Plf. Fact 134. The Plan also requires an employee to "support his or her initial claim for benefits by submitting, in a form and manner determined by the Disability Department, written proof substantiating the occurrence, character and extent of the disability...." *See* Plf. Fact 135 (emphasizing that "*the Employee may be required to submit conclusive medical evidence....*"). And, of course, the Plan affords the Committee broad discretion to determine the adequacy of proof. UMF 78 (admitted).

None of the authorities on which Plaintiff relies present the situation before the Court here, where the Plan document explicitly affords the fiduciary the right to demand objective evidence of disability, and where physical tests called the Plaintiff's credibility into question. For example, in *Maronde v. Sumco USA Group Long-Term Disability Plan, et al.*, 2004 U.S. Lexis 6986 (D. Ore. 2004), the court held that the plan administrators abused their discretion by imposing new requirements into the terms of a plan when a claimant failed to present objective evidence of chronic fatigue syndrome. *Id.* at p. 7. Given that the plan did not require objective medical evidence and that plaintiff presented "evidence of classic symptoms of CFS," the administrators could not "require objective medical evidence when the plan does not." *Id. Maronde* has no application to this case, where the Plan *does* require objective medical evidence, where Plaintiff failed to submit credible evidence of illness, and where examining physicians repeatedly found Plaintiff's complaints did not make her incapable of fulfilling her basic job duties. The other cases cited by Plaintiff are also off-

point.[5]

Here, the Plan document requires satisfactory medical proof that a claimant cannot perform the material duties of his or her occupation, and Plaintiff failed to submit medical evidence showing such disability. Under these circumstances, the Committee properly denied Plaintiff's claim. *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 381 (6th Cir. 1996) (upholding denial of benefit claim where plaintiff provided only evidence of subjective complaints, rather than medical proof, of condition); *see also, Short v. UNUM Life Ins. Co.*, 2003 U.S. Dist. Lexis 22327 (D. Conn. 2003) (administrator reasonably opted to credit objective medical evidence rather than the claimant's subjective statements concerning her work capacity); *Myers v. Liberty Life Assur. Co.*, 2002 WL 1019029, *9 (E.D. Pa. 2002) ("Plan administrator does not act improperly under ERISA when it chooses to rely on ... doctor reports that ... disagree" with opinions based "almost exclusively on subjective evidence").

## II. NO EVIDENCE SUPPORTS THE CLAIMS FOR BREACH OF FIDUCIARY DUTY OR AGAINST THE DISABILITY DEPARTMENT

While Plaintiff admits that the denial of benefits is the only basis for her breach of fiduciary duty claim, *see* Opp. Mem. at 7, she asserts that *Devlin v. Empire Blue Cross and Blue Shield*, 274 F.3d 76 (2d Cir. 2001), permits her to maintain an ERISA § 502(a)(3) breach claim that rests on the same facts as a § 502(a)(1)(B) claim. In that case, however, the plaintiffs sought not only benefits, but also relief from the plan sponsor's dissemination of misleading benefits documentation to

---

[5] *See, e.g., Bunnell v. Secretary of Health and Human Services*, 947 F.2d 341 (9th Cir. 1991) (reviewing Social Security Administration decision); *Cook v. New York Times Co. Long-Term Disability Plan*, 2004 WL 203111, * (S.D.N.Y. Jan. 30, 2004) (finding that "an insistence on objective evidence, standing alone, is not arbitrary and capricious," and recognizing "it is ... perfectly reasonable to require claimants to provide clinical support for their diagnoses even where the diagnosis is difficult and subjective experience of pain and fatigue is the gravamen of the disease"); *Friedrich v. Intel Corp.*, 181 F.3d 1105, 1112 (9th Cir. 1999) (reversing decision because objective medical evidence actually presented).

employees. The alleged misrepresentation of plan terms differs substantively from an alleged wrongful denial of benefits, and the two asserted violations give rise to different remedies. While Plaintiff attempts to fit her case in the *Devlin* facts by claiming that she seeks injunctive relief and restitution, *see* Opp. Mem. at 8, she nowhere describes such relief nor does she explain under what rationale the claim for benefits could be denied but the breach claim could nonetheless survive. *Devlin* is simply not controlling under these facts. *See Monsanto v. Xerox Corp.* 256 F.3d 86, 88 (2d Cir. 2001) (finding that participant cannot simultaneously assert a claim for benefits and a claim for breach of fiduciary duty based on the benefit denial).[6]

### III. CONCLUSION

Defendants respectfully request the Court to grant Defendants' Cross-Motion for Partial Summary Judgment and to dismiss the Disability Department with prejudice.

Dated: July 26, 2004

_____
Marc L. Zaken (ct19902)
Edwards & Angell LLC
Three Stamford Plaza
301 Tresser Blvd.
Stamford, CT 06901

Nicole A. Diller (ct25573)
Morgan, Lewis & Bockius LLP
One Market, Spear Street Tower
San Francisco, CA 94105
Attorneys for Defendants

---

[6] Plaintiff's claim that the Disability Department constitutes an ERISA fiduciary also fails. *Varity Corp. v. Howe,* 516 U.S. 489 (1996), held that an employer acts in a fiduciary capacity when it exercises discretionary authority regarding the plan's management or administration. It did not address whether a department fulfilling the day-to-day administration of a plan meets that test. As the authorities set out in Defendants' Opening Brief show, the Disability Department does not exercise such authority.

## CERTIFICATION

I hereby certify that the foregoing Defendants' Reply to Plaintiff's Opposition to Cross-Motion For Partial Summary Judgment has been sent via first class mail, postage prepaid to:

> Michel Bayonne, Esq.
> Scott Lucas, Esq.
> Martin, Lucas & Chioffi
> 177 Broad Street
> Stamford, CT 06901

this 26th day of July, 2004.

_____
Marc L. Zaken