UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GERTRUDE BAYONNE, | : | 3:03CV712 |
| PLAINTIFF, | : | |
| | : | |
| V. | : | |
| | : | |
| PITNEY BOWES, INC., | : | |
| DEFENDANT. | : | |

**RULING ON CROSS MOTIONS FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Gertrude Bayonne has filed this multi-count complaint against defendant Pitney Bowes, Pitney Bowes Long Term Disability Plan ("LTD"), the Long Term Disability Administrator, and the Pitney Bowes Disability Department for violation of the Employee Retirement Income Security Act ("ERISA"), the Americans with Disability Act ("ADA"), and the Connecticut Fair Employment Practices Act (CFEPA). The parties now cross-move for summary judgment on the ERISA claims.

For the following reasons, the plaintiff's motion for summary judgment will be denied, and the defendants' motion for summary judgment will be granted.

**Background**

The parties have filed statements of undisputed facts and supporting exhibits. The defendant objects to plaintiff's citation to the revised complaint and the administrative appeal memorandum in her statement of facts. The Court has reviewed the full administrative record at issue, and includes herein only those facts that are undisputed in accordance with admissible

evidence.

<u>Facts Relevant to Denial of Long-Term Benefits</u>

Plaintiff was employed by Pitney Bowes as a cashier in its cafeteria, a sedentary position which required her to fill soda, coffee and condiment stations, wipe off counters, and complete a daily revenue report.

In 1993, plaintiff reported that she experienced headaches and later developed left-sided numbness, hand tremors, and dizziness. In 2000, an acoustic tumor was discovered and removed by Dr. John F. Kveton.

After this surgery, plaintiff continued to suffer from left-sided weakness, numbness and tremors in her hands, for which symptoms she was examined by Dr. Roslyn Einbinder, a neurologist. Plaintiff continued to work until June 24, 2002, when she filed a claim for short-term disability benefits based on left-sided weakness and numbness.

In a letter dated July 30, 2002, Dr. Einbinder wrote that plaintiff was "able only to continue with work at 32 hours per week." She indicated further that plaintiff would be reevaluated in August.

By letter dated August 12, 2002, Pitney Bowes approved a reduced work schedule based on Dr. Einbinder's recommendation.

On August 13, 2002, Dr. Einbinder wrote that plaintiff was "temporarily 100% disabled" and would be reevaluated on September 5, 2002.

Pitney Bowes granted plaintiff short-term disability benefits effective June 24, 2002.

At Pitney Bowes' request, plaintiff underwent an independent examination of her functional capacity ("FCE"), wherein a physiologist conducted a statistical analysis of test results and computerized video images to quantify a person's safe functional abilities.  During this FCE, plaintiff was asked to squeeze the grip dynamometer as firmly as possible in five different hand positions.  Based on the tension of the grasping musculature of plaintiff's hand, the physiologist determined whether she made a consistent effort throughout the test.

According to the FCE report, plaintiff demonstrated sub-consistent effort, tested positive for symptom magnification, demonstrated inconsistent efforts, tested positive for overreaction, and showed inconsistencies in her movement pattern.  The report concluded that plaintiff could perform sedentary functions.

Plaintiff was also assessed at Pitney Bowes' request by Elliot Gross, M.D.  After reviewing plaintiff's medical records and conducting a physical examination, he found tremendous symptom magnification and no correlation between plaintiff's reported symptoms and the surgical removal of the neuroma.  He concluded that plaintiff could work as a cashier without any restrictions.

In November, 2002, plaintiff's disability benefits were

discontinued, and Pitney Bowes requested that plaintiff return to work.

In a letter dated November 12, 2002, Dr. Einbinder wrote to Phawana Chaorinuea, a Registered Nurse at Pitney Bowes:

> Dr. Gross believes that Ms. Bayonne is able to work and feels that her symptoms are a result of symptom magnification and "apparent neurolgical deficits which are not anatomically correlated to the surgical removal of the acoustic". While I understand his impression it is clear that headache following posterior fossa surgery can occur and can be quite difficult to treat and worsened with fatigue as well. It is also clear that in cases with acoustic neuroma there can be persistent VII and VIII nerve dysfunction resulting in facial weakness and vertigo again which worsens with fatigue. Ms. Bayonne has a documented weakness of her face on the side of the surgery and has a documented abnormality on ENG consistent with vertigo all of which worsen when fatigued.

Dr. Einbinder further expressed her opinion that plaintiff has "objective abnormalities which result in symptons" and that defendants should not "realistically deny Ms. Bayonne disability based on Dr. Gross' IME. . . ." She recommended that defendants obtain another neurological or Ear Nose and Throat opinion or a psychiatric evaluation regarding the symptom magnification.

On November 27, 2002, plaintiff submitted a claim for long-term disability benefits. In evaluating this claim, Dr. Peter Griffin, Pitney Bowes' physician consultant, reviewed the medical records in plaintiff's file. These records included Dr. Kveton's letter dated July, 2000, noting that he was at a loss to explain plaintiff's symptoms of tremors in relation to the tumor removal; a neurological consultation report from Dr. Louise Resor, who

found no neurological cause underlying plaintiff's complaints; the FCE; and Dr. Einbinder's letter dated November 12, 2002.

Dr. Griffin found that plaintiff likely experienced intermittent symptoms of fatigue and vertigo, but that her condition did not appear so severe as to meet the disability plan's definition of total and permanent disability. Consequently, he recommended denial of plaintiff's claim for long-term disability benefits. The Disability Department adopted Dr. Griffin's recommendation and issued a denial at the administrative level on December 16, 2002. The denial letter stated:

> This decision was based upon a review by Pitney Bowes' Physician Consultant, Dr. Peter Giffin, of medical information received from your physician. In addition to Dr. Peter Griffin, the following medical expert's advice was obtained on behalf of the Plan in connection with your claim: Dr. Elliott G. Gross, neurologist, and Edward M. Velasquez, physical therapist. The medical information received for review does not substantiate that you are totally disabled [from] your own occupation as defined in Section 2.33(a) of the Plan (copy attached). More specifically, [at] the functional Capacity Evaluation which was performed at your home on September 18, 2002, you demonstrated a sub-consistent effort and tested positive for Waddell's Non-Organic Signs of symptom magnification. Dr. Elliott G. Gross' evaluation on 10/15/02 determines that your symptoms post-operatively are primarily characterized by symptom magnification and has no bearing on any organic structural disability incurred from the operation. In addition, Dr. Gross also feels that you can continue to work as a cashier without any restrictions.

The letter notified plaintiff of her appeal rights and instructed that "[a]ny documents or records you have in support of your appeal should accompany your request" for review.

On April 17, 2003, Dr. Richard Sweet conducted a physical

examination of plaintiff.  Pitney Bowes forwarded plaintiff's medical records to him omitting Dr. Gross' evaluation.  Dr. Sweet determined that plaintiff had some left-sided facial weakness, decreased hearing on her left side, and mild ataxia (defective muscular coordination).  He stated that plaintiff's headaches and left-sided weakness could potentially affect job performance.  However, given the nature of the cashier position, he concluded that plaintiff's symptoms, even if as severe as she reported, did not disqualify her from fulfilling her job responsibilities.

Plaintiff formally appealed the denial of her long-term disability benefit claim on June 11, 2003.  With her appeal, plaintiff submitted medial records from physicians including a psychiatric evaluation report.  The psychiatric report by Dr. Carolyn M. Drazinic stated that plaintiff had no historical or current psychiatric or psychological problems, and that plaintiff did not suffer from clinical depression, anxiety disorder or substance abuse, and that her family had no history of such problems.  The report also stated that her complaints of facial nerve dysfunction, tremor and left-sided weakness did not appear to be the result of symptom magnification.

Physician consultant Dr. Arthur Broder reviewed plaintiff's appeal.  He found that the weight of medical evidence showed that the surgical procedure could not have caused the reported symptoms.  He further explained that symptom magnification is not a psychiatric diagnosis, but rather a descriptive term following

an evaluation of an individual's physical response to the performance of a physical task.

On July 28, 2003, the Plan Administrator, also known as the Employee Benefits Committee, reviewed plaintiff's appeal. The minutes of the Plan Administrator's meeting state:

> Of special interest to the Committee was Dr. Drazinic's statement that Ms. Bayonne's difficulties with her work at the Company did not appear to be due to her tremor or her mild left-sided weaknesses, because she was working through the duration of having these symptoms prior to the April 2000 surgery. The Committee interpreted that statement to mean that even if those symptoms existed, they were not disabling. Dr. Drazinic went on to state that Ms. Bayonne did not report applying for LTD on that basis, but rather on the basis of symptoms that were directly related to her acoustic neuroma and subsequent surgery. The Committee discussed that statement as well and found that Dr. Drazinic failed to address the underlying cause of Ms. Bayonne's disability.

In a portion specific to the denial of benefits, the minutes reflect that after a "thorough, independent review and debate of the medical evidence," the Committee found that many of plaintiff's symptoms had existed prior to her surgery, and that the post-operative symptoms of left facial weakness, decreased hearing in left ear, heaviness in the tongue, were not "corroborated or substantiated by any abnormalities noted by Dr. Gross and Sweet." The Committee concluded that "the FCE, the MRI of the brain and the ultrasound of the carotid all provide evidence that Ms. Bayonne is functionally and physically capable of gainful employment."

On August 8, 2003, the Plan Administrator advised plaintiff of the denial of her appeal.

<u>Relevant Terms of the Long-term Disability Plan</u>

Pitney Bowes' long-term disability plan, which is subject to ERISA, affords the Plan Administrator responsibility for the general administration of the plan.  The Plan Administrator has delegated ongoing, day-to-day administration of the plan to the Disability Department, while retaining responsibility for the final determination of benefit entitlement.

The Plan provides that the Plan Administrator has "discretion. . . to interpret and construe the terms and provisions of the Plan, to apply such terms and provisions as the Committee may exclusively determine, to determine questions of eligibility and of the status and rights of Participants. . . ."

Pursuant to the terms of the plan, Pitney Bowes established a Trust Fund, which is used for the exclusive purpose of providing disability benefits to participants and defraying reasonable expenses of administering the plan.

The Plan defines "totally disabled" and "total disability" to mean that the participant is unable "to perform the material duties of his or her own occupation for a maximum period of twelve (12) months after the Qualifying Period," and is unable "to engage in any gainful occupation or profession for which he is, or could become, reasonably suited by education, experience, or training; provided, however, that the amount of earning that

the Participant would receive from engaging in such occupation or profession would be less than sixty percent of the Participant's annual or annualized earnings immediately prior to the event giving rise to the Total Disability."  The plan provides further that the "determination of whether the Participant is Totally Disabled from any occupation or profession. . . will be made without regard to. . .(i) whether such occupation or employment exists in the geographic area in which the Employee resides, (ii) whether a specific vacancy in such occupation or employment exists, and (iii) whether an employee is likely to be hired if he or she applied for such occupation or employment. . . ."

The plan requires the submission of whatever proof or documentation the Disability Department may require, "including the medical records and medical analysis of one or more duly qualified physicians. . . ."

## **Discussion**

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. American

International Group, Inc. v. London American International Corp., 664 F.2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). If a nonmoving party has failed to make a sufficient showing on an essential element of the case with respect to which the nonmoving party has the burden of proof, then summary judgment is appropriate. Celotex Corp., 477 U.S. at 323. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. Anderson, 477 U.S. at 249.

Plaintiff asserts her ERISA rights pursuant to Section 502(a)(1)(B) for wrongful denial of benefits and pursuant to Section 502(a)(3) for breach of fiduciary duties by arbitrarily and capriciously denying her long-term benefits.[1]

Denial of Benefits

"ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans, and to protect contractually defined benefits." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 113 (1989). Plans must "provide adequate

---

[1] Defendant argues that plaintiff may not maintain her Section 502(a)(3) breach of fiduciary duty claim based solely on the wrongful denial of benefits, and that the Disability Department is improperly named as a defendant. The Court need not render decisions on these arguments, since it finds that the denial of benefits was not arbitrary and capricious.

notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant." 29 U.S.C. § 1133(1). Further, the plan procedures must "afford a reasonable opportunity for a full and fair review" of adverse claim determinations. § 1133(2).

The decision of an ERISA plan administrator or fiduciary to deny a claim for benefits is subject to de novo review unless the plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, in which case the court applies the narrower arbitrary and capricious standard. Firestone Tire & Rubber Co., 489 U.S. at 115. However, if the plan grants discretion to the administrator and the administrator is in fact influenced by a conflict of interest, then the de novo standard applies. Pulvers v. First UNUM Life Ins. Co., 210 F.3d 89, 92 (2d Cir. 2000).

Here, there appears to be no dispute that the arbitrary and capricious standard applies unless plaintiff can prove the existence of a conflict of interest. Plaintiff asserts that the procedural irregularities in the administration of the claim demonstrate the influence of a conflict of interest. However, without conducting a legal analysis of plaintiff's argument, the Court finds no merit to plaintiff's claim of procedural irregularities. The asserted procedural irregularity, namely

that defendants failed to inform her of the requisite documents to perfect her claim, is belied by the record. In denying plaintiff's claim, defendant provided a letter outlining the reasons for the denial, which letter notified plaintiff of her right to appeal and to submit any documents or records in support of her appeal. Thus, plaintiff had notice of the deficiencies of her claim and her right to provide further documentation on appeal.

Accordingly, the Court applies the arbitrary and capricious standard to determine whether the decision represents an abuse of discretion. A decision or interpretation is arbitrary and capricious if it is "without reason, unsupported by substantial evidence or erroneous as a matter of law." Pagan v. NYNEX Pension Plan, 52 F.3d 438, 442 (2d Cir. 1995). "Substantial evidence" is evidence "that a reasonable mind might accept as adequate to support the conclusion reached by the decisionmaker and requires more than a scintilla but less than a preponderance." Miller v. United Welfare Fund, 72 F.3d 1066, 1072 (2d Cir. 1995). If both sides "offer rational, though conflicting, interpretations of plan provisions," the administrator's interpretation controls. O'Shea v. First Manhattan Co. Thrift Plan & Trust, 55 F.3d 109, 112 (2d Cir. 1995). In evaluating the plan administrator's decision, the court must inquire into whether the decision "was based on a consideration of the relevant factors" and whether there has been

a clear error of judgment." <u>Jordan v. Retirement Comm. of Rensselaer Polytechnic Inst.</u>, 46 F.3d 1264, 1271 (2d Cir. 1995).

Here, the administrative record reveals that the decision to deny plaintiff benefits is supported by substantial evidence. Plaintiff's doctors could establish no determinable cause for plaintiff's complaints, and the qualified independent medical professionals found symptom magnification and capacity to work a sedentary job even with the complained of symptoms.

Although the denial of long-term disability benefits runs counter to Dr. Einbinder's assessment of plaintiff as 100% disabled, plan administrators are not obliged to accord special deference to the opinions of treating physicians, although they "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." <u>Black & Decker Disability Plan v. Nord</u>, 538 U.S. 822, 834 (2003). Here, Dr. Einbinder provided no documentation for her opinion that plaintiff was 100% disabled, nor any reason for changing her prior recommendation that plaintiff could work at least 32 hours per week. She later wrote that plaintiff's had "objective abnormalities which result in symptoms." However, the plan administrator was also presented with medical opinion that plaintiff had capacity to work. Since the decision to deny benefits rests on the substantial evidence of the medical reports that plaintiff had capacity to work a sedentary job, the Court

cannot find that defendants arbitrarily and capriciously ignored Dr. Einbinder's opinion.

Plaintiff argues that it was error not to defer to the social security administration's finding of disability. However, as underscored in <u>Nord</u>, the plan administrator is not held to the same standard as the social security administrative judge who must afford special deference to the opinions of treating physicians.

Plaintiff posits that she was improperly required to provide "objective evidence" of her disability, which requirement represented the imposition of new terms into the plan. The plan document requires "whatever proof or documentation the Disabilty Department may require," which proof includes "medical records and medical analysis of one or more duly qualified physicians or clinical psychologists. . . ." The plan provides that an employee "must support his or her initial claim for benefits by submitting, in a form or manner determined by the Disability Department, written proof substantiating the occurrence, character and extent of the disability. . . ." Further, upon request from the Disability Department, "the Employee may be required to submit conclusive medical evidence of the continuance of his or her Total Disability." In accordance with these provisions requiring "conclusive" medical evidence, it was not an abuse of discretion to demand objective evidence of the disability.

Plaintiff's assertion that procedural irregularities plagued the administration of her claim so as to render it arbitrary and capricious is without merit. Specifically, she claims that defendants failed to comply with 29 C.F.R. section 2650.503-1(g). The regulation requires that written notification of a claim denial include "a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary. . . ." If an "internal rule, guideline, protocol or other similar criterion" is relied upon, the regulation requires that the written notice include the:

> specific rule, guideline, protocol, or other similar criterion; or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request.

As previously discussed, the record demonstrates that she was given notice of the reasons for the denial of her claim and of her right to submit additional supporting documentation.

Defendant did not disclose an internal rule or guideline relating to review of plaintiff's claim, but there is no evidence suggesting the defendant relied on any such rule or guideline. Accordingly, failure to provide such information not relied upon in making the claim determination cannot form the basis of a procedural violation.

Plaintiff complains that defendants took more than a month to provide her with requested documents relevant to her appeal.

Plaintiff cites to no law requiring a time limit for a fiduciary to provide such documents. Furthermore, these documents were provided at least three months prior to plaintiffs' filing of an appeal. Accordingly, the Court can find no abuse of discretion related to provision of documents.

The record reflects a decision after full and fair review of plaintiff's claim. Defendants obtained independent medical evaluations of the plaintiff's condition. Staff medical professionals reviewed the documentation relevant to plaintiff's claim. Although reasonable minds could differ on plaintiff's claim, the Court cannot find that defendants' denial of benefits was an abuse of discretion. Since there was no wrongful denial, the plaintiff's claim for breach of fiduciary duty based on that denial also fails. The plaintiff's motion for partial summary judgment will be denied and the defendants' motion for partial summary will be granted.

## Conclusion

For the foregoing reasons, the defendants' motion for partial summary judgment [#50] is GRANTED, and plaintiff's motion for partial summary judgment [#48] is DENIED.

SO ORDERED this 27th day of January, 2005, at Bridgeport, Connecticut.



_____/s/_____
WARREN W. EGINTON, SENIOR U.S. DISTRICT JUDGE