UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GERTRUDE BAYONNE, | : |
| Plaintiff, | : |
| | : Civ. Action No. |
| | 3:03CV0712(WWE) |
| v. | : |
| PITNEY BOWES, INC., et al. | : |
| Defendants. | January 28, 2005 |
| | : |

**PLAINTIFF'S NUNC PRO TUNC OBJECTION TO MAGISTRATES DECISION
GRANTING MOTION TO COMPEL WITH FEES**

I.   **PRELIMINARY STATEMENT**

Plaintiff Gertrude Bayonne files the instant objection, nunc pro tunc, to the Magistrates Fitzsimmons January 14, 2005 Order granting Defendants Motion to Compel discovery and award of attorneys fees. Plaintiff is not contesting the Order granting relief, but objects to the award of attorneys fees. The Defendants have filed their Supplemental Motion for Costs and Fees requesting a whopping $11,919.00 in fees. This amount is excessive and if the Court awards such relief it is not appropriately based. An award of the amount requested by Defendants can only be viewed as a sanction against the Plaintiff, one who has exhibited no bad faith or harassing delay tactics in this case.

II.  **ARGUMENT**

Plaintiff acknowledges the Court's "inherent power to levy sanctions in response to abusive litigation practices". Roadway Express, Inc. v. Piper, 447 U.S. 752, 764 (1980). Plaintiff also acknowledges courts are "vested, by their very creation, with power

to impose silence, respect, and decorum, in the presence, and submission to their lawful mandates." Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991).

The Second Circuit has stated "because of the potency of the Court's inherent power, courts must take pains to exercise restraint and discretion when wielding it. Accordingly, this court has required a finding of bad faith for the imposition of sanctions under the inherent power doctrine." DLC Management Corp. v. Town of Hyde Park, 163 F.3d 124, 136 (2d Cir.1998). The Supreme Court has stated the fees are assessed "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Chambers, 501 U.S. at 45. "That bad faith must be shown by (1) 'clear evidence' or (2) 'harassment or delay or …other improper purposes.' Id. (citing United States v. International Brotherhood of Teamsters, 948 F.2d 1338 (2d Cir.1991). "A court must, of course, exercise caution in invoking its inherent power, and it must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees." Chambers, 501 U.S. at 50.

The Court's January 14, 2005 Order does not provide any factual determination about the character of Plaintiff's efforts in responding to Defendants interrogatories nor whether Plaintiff, or her counsel, exhibited a "conscious disregard of their discovery obligations." DLC Management Corp., 163 F.3d at 136.

In Plaintiff's memorandum of law in opposition to Defendants Motion to Compel, she was very clear that she in no way was attempting to answer the interrogatories in bad faith or cause undue delay to impede the Defendants efforts to litigate the case. If there were any errors in responding to the Defendants First Set of Interrogatories, they were not caused by intentional bad faith or gross misconduct.

As a preliminary note, on June 7, 2004, Plaintiff provided the Defendants with her initial disclosures. Plaintiff produced 594 pages of documents to the Defendants, 431 of which were already in the possession of the Defendants through her ERISA Administrative Appeal filed with the Defendant Pitney Bowes, Inc. Long Term Disability Plan Administrator on June 11, 2003. Plaintiff provided all the documents she possessed. Therefore, as of June 7, 2004, Plaintiff ensured that the Defendants had all the documents that supported her ADA and ERISA retaliation claims set forth in the Second Amended Complaint. In addition, the Defendants also received Plaintiff's Motion for Partial Summary Judgment filed on May 7, 2004, with the same documents attached as exhibits to Plaintiff's Rule 56(c) statement of facts. The same statement of facts for which the Plaintiff's ADA and ERISA retaliation claims are based.

This case presents a novel approach, and possibly first impression in this District and the Second Circuit[1], to combining both retaliation claims pursuant to the Americans

---

[1] Castellano v. The City of New York et.al., 142 F.3d 58 (2d Cir.1998) cert. denied, 525 U.S. 820 (1998)., the Court held the following:
> "An interpretation that would prevent former employees who are no longer 'qualified individuals' from bringing claims of discrimination in the provisions of post-employment fringe benefits would also undermine the plain purpose of sections 12112(a) and(b)(2): to provide comprehensive protection from discrimination in the provision of fringe benefits. See 42 U.S.C. §§ 12112(a),(b)(2). Many fringe benefits are paid out to those who no longer work and who are no longer able to work, and some fringe benefits are paid out to individuals precisely because they can no longer work. Under [Pitney Bowes'] reading, none of these individuals would be protected by the ADA. [Pitney Bowes'] reading would also undermine the ADA's broad remedial purpose to prohibit disability discrimination in all aspects of the employment relationship, leaving disabled retirees unprotected from discrimination in the provisions of pensions, health and life insurance, and other post-employment benefits. See 42 U.S.C. §§ 12101(a),(b)(1)("It is the purpose of this chapter-to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.").

With Disabilities Act and Section 510 of the Employee Retirement Income Security Act (ERISA) with a long term disability appeal to the Court on her ERISA Section 502 claims. This case is unique because it presents a direct challenge to the employer Pitney Bowes deliberate denied of Plaintiff's long term disability benefits. The simple theory presented by the Second Amended Complaint is that if the Defendants acted in an arbitrary and capricious manner in denying the short and long term disability benefits, then intentional discrimination must be found to exist by the Defendant Pitney Bowes, whose employees operate and administer the Defendant Pitney Bowes Short and Long Term Disability Plans.

In responding to the Defendants First Set of Interrogatories and Supplemental Response, the undersigned was placed in a unique circumstance of deciding how to provide the enormous amount of facts contained in the ERISA case that would be responsive to each interrogatory in support of her novel ADA and ERISA retaliation claims.

Plaintiff has already admitted she did not provide enough detail in her first response to the interrogatories. She even acknowledged this in her Memorandum In Opposition to Defendants Motion to Compel:

> This is not a case of an evasive Plaintiff, but a very active one. She has already made attempts to speed up the efficiency of the case resolution, by filing for her motion for partial summary judgment on her ERISA claims. Plaintiff was in no way attempting to be evasive in her responses to the Defendants First Set of Interrogatories.

(Plaintiff's Memorandum in Opposition to Defendants Motion to Compel, October 31, 2004, p.3 [Doc.#84]).

---

142 F.3d at 68. The undersigned has researched extensively the law in this Circuit for similar cases, none were found.

4

In addition, Plaintiff's counsel averred in his affidavit in support of the Memorandum in Opposition:

> In responding to the Defendant's First Set of Interrogatories, I made every good faith attempt to respond to the requests and opposing counsel[s] attempts to resolve any discovery disputes. Defendant unfairly blamed the undersigned for avoiding their requests to resolve the discovery dispute in question. During such time period of opposing counsel's communications to this office, I inform[ed] each opposing counsel that I would respond but was under great pressure to deal with the cross motions for summary judgment in this case. In addition, I was also involved during the same time period with filing and responding to cross motions for summary judgment in two other cases during the same time period. Finally, my office is a one attorney practice and I routinely handle some twenty to thirty cases that involve litigation or dispute resolution.

(Id. Exhibit A: Declaration of Attorney Mark P. Carey pp.1-2).

On June 7, 2004, Plaintiff made her initial response to Defendants First Set of Interrogatories. During this time period, the undersigned was extremely taxed with filing and defendant dispositive motions in several cases.[2] The undersigned admits his responses to Defendants Interrogatories could have been better developed, but in no way was there any bad faith or conscious disregard for discovery obligations. Plaintiff would later supplement her initial responses to the Defendant, on November 20, 2004, before her deposition was taken in this case and informed the Defendants she would do so. Defendant's counsel admitted during oral argument that the undersigned telephoned him on the Friday before the Monday deposition regarding such supplementation.

The undersigned again brought these obstacles to the Court's attention during oral argument on the Defendants motion. However, the Court did not engage in a discussion on such issues. Plaintiff again admitted the responses could be further supplemented.

---

[2] Milde v. Town of Greenwich Housing Authority, 3:00CV02423 (AVC) (D.Conn.) (TitleVII/ADEA/1983) (Summary Judgment filed on May 14, 2004, Memo in Opp. Summary Judgment filed on June 14, 2004); McCurley v. Energy East et.al. 3:03CV1588(RNC)(Memo. In Opp. Motion Dismiss filed on June 1, 2004) and Boehm v. Cornell University et.al., 04CV0911(WHP)(SDNY)(ERISA)(Summary Judgment filed on June 29, 2004, Memo.)

5

Instead, the Court summarily granted Defendants Motion to Compel without explanation, and sanctioned Plaintiff with fees and costs, fees amounting to $11,919.00. Plaintiff is preparing a response to Defendants fee petition, and preliminarily notes that the fees are excessive and duplicative. It is the undersigned sincere belief that the Defendants have mounted the Motion to Compel effort in a direct attempt to force Plaintiff to settle her case. As previously stated, this case presents a novel claim combining both the ADA and ERISA, for which the Plaintiff cannot settle this case. Aside from attempting to make the Defendants pay damages for their unlawful actions, Plaintiff also seeks to create new precedent in this combined area of the law.

In responding to the Court's Order compelling further disclosure, Plaintiff provided an overwhelming 155 pages of single spaced responses. There was a discussion with the Court during oral argument about just how much detail to provide. Plaintiff attempted to clarify the amount detail to provide. In ERISA LTD cases like this one, there are typically years of medical facts and administrative records included in the administrative record. Such that the volume of material made it extremely difficult to factually and comprehensively respond to Defendants Interrogatories.

### III. CONCLUSION

Plaintiff respectfully requests that the Court overrule the January 13, 2005 Order granting fees and costs to Defendants. Plaintiff's actions in responding to discovery do no warrant a sanction.

GERTRUDE BAYONNE
Plaintiff

By:

6

Mark P. Carey(ct17828)
Carey & Associates, P.C.
71 Old Post Road, Suite One
Southport, CT 06890
(203) 255-4150 tel.
(203) 255-0380 fax.
Mcarey@capclaw.com
Her Attorney

## CERTIFICATE OF SERVICE

THIS IS TO CERTIFY, that the foregoing was delivered via first class mail, postage prepaid, this the 28th day of January, 2005 to:

John G. Stretton
Edwards & Angell, LLC
Three Stamford Plaza
301 Tresser Boulevard
Stamford, CT 06901

Mark P. Carey